Nasser Abujbarah, Esq. (#026182)
Timothy A. LeDuc, Esq. (#037115)
**PHILLIPS LAW GROUP, P.C.**
3101 N. Central Avenue, Suite 1500
Phoenix, Arizona 85012
Telephone:   (602) 258-8900
Facsimile:   (602) 288-1663
E-Mail:  uberp@phillipslaw.com
E-Mail:  minute_entries@phillipslaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEATRICE JOHNSON, surviving sister and on the behalf of the estate of DOROTHY DALE-CHAMBERS, deceased,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF PHOENIX; CITY OF PHOENIX POLICE DEPARTMENT; ARIZONA DEPARTMENT OF TRANSPORTATION; COUNTY OF MARICOPA; MARICOPA COUNTY OFFICE OF THE MEDICAL EXAMINER; TERRAN CAMPBELL; JENNIFER MALONE; ROBERT PITTS; JOHN and JANE DOE AGENTS and EMPLOYEES 1-X; BLACK CORPORATIONS 1-X; and WHITE PUBLIC ENTITIES 1-X,<br><br>                    Defendants. | Case No.:  CV 23-00495-PHX-(GMS)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT MARICOPA COUNTY AND MARICOPA COUNTY OFFICE OF THE MEDICAL EXAMINERS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |

Defendants' Motions must be denied because Plaintiff has demonstrated in her Complaint that Defendants did not take reasonable steps to notify her or her family of her sister's death. This failure was one in a long string of failures to notify family members of homeless individuals, who are overwhelmingly black, that their family member had been found deceased by

1

Defendants. Therefore, we respectfully request that the Court deny these Motions and allow Plaintiff's justifiable claims to continue.

## I.      STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion brought under Rule 12(b)(6), Fed. R. Civ. P., tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006). The *Twombly* court further clarified that a pleading must contain a "short and plaint statement of the claim showing that the pleader is entitled to relief." *Id*. Further, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks more for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 557 (2007). The pleadings need only state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Twombly*, 550 U.S. 544, 566 (2007). In assessing the plausibility of a plaintiff's complaint, courts are permitted to "draw on [their] judicial experience and common sense and consider 'obvious alternative explanation[s].'" *Iqbal*, 556 U.S. at 664 (quoting *Twombly*, 550 U.S. at 567). The 9th Circuit has also weighed in on this standard recently, "*Iqbal* demands more of plaintiffs than bare notice pleading, …but it does not require us to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa County*, 693 F.3d 896, 924 (9th Cir. 2012). The standard for beating a motion to dismiss is purposefully low and Plaintiff's pled facts far exceed that standard.

## II.     FACTS

On April 26, 2022, at or around 8 PM, Nebojsa Petkovic struck and killed Dorothy Jean Chambers-Dale and her boyfriend, Joseph Gutierrez, as they both crossed the street on North 32nd Street and Yale Street in Phoenix, Arizona. (Phoenix Police Department Report, attached as Exhibit A).  It is unclear what part of the street of Dorothy was walking in prior to being hit by Mr. Petkovic. One eyewitness stated Dorothy and Joseph were in the crosswalk prior to being

run over. (Supplemental Police Report, attached as Exhibit A at 7). The area where Dorothy was killed had been deemed a high-density crash zone according to the City's Key Corridors Masters Plan from 2020 and the City had failed for several years to install any kind of signal at the intersection that alerted other vehicles that pedestrians were crossing.

Following the incident, Dorothy was transported to Valleywise Medical Center where she was pronounced dead at 8:34 PM. Ex B at 29. While Dorothy was still at the Hospital Officer Jennifer Malone and Detective Campbell used a portable digital fingerprint scanner to scan both of Dorothy's index fingers. Ex. B at 32. As a result of that search, the Officers were able to confirm Dorothy Jean Chambers-Dale identity. *Id*. The Officers then conducted a search of known associates of Dorothy which revealed that the other deceased individual was in fact, Joseph Gutierez. Ex. B at 33. The Officers then include in their report that they attempted to notify Joseph's next of kin he had been killed, but there is no mention in their reports that they attempted to contact Dorothy's next of kin, despite it being apparent they knew who her known associates were. Also, nowhere in the Police Report is there mention of who Joseph's next of kin was, which suggests that the officers were able to identify this information for Dorothy as well despite not including it in their report.

The Maricopa County Office of the Medical Examiner ("OME") and the various police forces here in Arizona work in conjunction with one another to determine the cause of death in a limited amount of cases. Ariz. Rev. Stat. Ann. § 11-594. OME's website outlines their purpose, "[w]e perform medical investigations of sudden, unexpected, and/or traumatic deaths to enhance the health and safety of everyone in our community." Screenshot of OME's Website, attached as Exhibit B. The Office was created and exists to investigate untimely deaths, they would be unable to do this work without working closely with the various police forces here in Arizona. Despite their public safety function, their information regarding how a death occurred is most often framed by the officer who is bringing the body to them. Currently, the Department of Justice is investigating the City of Phoenix police, who responded to this incident, for their disparate

treatment of both individuals experiencing homelessness, as well as their disparate treatment of minorities. Memo from the Department of Justice, attached as Exhibit C. (https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department) . The extent of the relationship between OME and City of Phoenix Police is impossible to determine at this juncture, but common sense and past behavior suggest that these two agencies work closely together. The closeness of these two organizations is significant in the present case because the OME has at least part of their practices and procedures being framed by an organization that is under federal investigation for routinely violating the rights of both minorities and people experiencing homelessness.

### III.   LEGAL ARGUMENT

#### a. Plaintiff's Allegations in Count One Sufficiently Allege a Violation of the Equal Protection Clause.

Plaintiff's Complaint pleads with the requisite specificity that Defendants Maricopa County and OME violated her right to equal protection. The Court may consider evidence outside of the complaint in a motion to dismiss if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2003). Further, equal protection violations can occur when a law or policy which appears neutral on his face, has a disproportionate effect upon a racial minority. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *see also Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (holding that discriminatory intent can be shown through a clear pattern of conduct, unexplainable on grounds other than race).

In Count One, Plaintiff cites to study conducted by the Department of Housing and Urban Development showing that black individuals make up nearly half the homeless population in this country, despite compromising only 13% of the total population. *See*

4

Plaintiff's Third Amended Complaint at ¶37. Plaintiff also references the AZ Central investigation that found that Maricopa County, along with the City of Phoenix Police Officers, had been handling the deaths of homeless individuals with a distinct sense of disdain, carelessness, and casualness that Plaintiff alleges violates the right of citizens to the equal protection of our laws. *Exhibit D*. This article and others led to the current investigation by the Department of Justice which is tasked with determining whether the City of Phoenix and the City of Phoenix Police engage in discriminatory practices. *Exhibit C*. The allegations in this article are not required to be treated as true, however, Plaintiff has cited evidence that demonstrates that Defendants are systematically denying due process rights to a specific group of citizens here in Arizona. This specific group of citizens is mostly black, and Plaintiff has sufficiently alleged that the purpose or motive behind the disparate treatment is racially motivated.

The allegations in Plaintiff's Complaint are required to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006). Plaintiff has a good faith belief, based on the fact that Defendants identified the other deceased individual's next of kin using the same scan used on Dorothy, that the Defendants also obtained next of kin information for Dorothy and decided not to act on it. Defendant City of Phoenix's contention that they in fact did not know the next of kin information goes to the weight of the evidence and is not appropriate grounds for dismissal. Fed. R. Civ. Proc. Rule 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Plaintiff has a good faith belief that Defendants both knew who Dorothy's next of kin was and chose not to act on the information.

Plaintiff has properly pled a class of one claim. To properly plead a class of one equal protection claim, Plaintiff must demonstrate that the they were treated differently from others who are similarly situated and that there is no rational basis for the treatment. *Vill v. Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here Plaintiff has pled properly that the

family members of Dorothy Dale-Chambers were similarly situated to other individuals who have had family members killed during the commission of the crime and their body was then discovered by the police. In all material aspects, Plaintiff was similarly situated to every other individual who has had a dead family member discovered by police, but in this case, Defendants took no steps to notify the family of Dorothy Dale Chambers. There were no extenuating circumstances present in this case; Plaintiff has a good faith belief that the Defendants knew who Dorothy's next of kin was and took zero steps to notify the family because of either her status as a homeless individual or because she was black woman, neither of which constitutes a rational basis. Defendant has identified no evidence that they made any attempts to notify Dorothy's next of kin and Plaintiff is alleging that this intentional conduct is a part of a larger pattern of conduct which Defendant City of Phoenix is currently under investigation for. The information was readily available to Defendants, and they chose not to act on it because of who they perceived the Decedent to be, therefore Plaintiff has a viable class-of-one claim, and this count must not be dismissed.

*Iqbal* requires that Plaintiff plead sufficient facts to state a claim that is plausible on its face. 556 U.S. 662, 678. Plaintiff refers to extrinsic evidence in her complaint that shows Defendants Maricopa County and OME have acted in the past out of a discriminatory purpose in these exact situations. The weight to be given this and other evidence Plaintiff will uncover in discovery is the for the finder of fact to determine, but there exists objective evidence that Defendants have acted in the past based on a discriminatory purpose and therefore Plaintiff has alleged sufficient facts to beat Defendant's Motion.

### b. Plaintiff has Pled Sufficient Facts to State a Claim for Violation of the Recognized Right of Familial Association.

The right to familial association is a constitutional right that has long been recognized by the Supreme Court and the 9th Circuit. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also*

*Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011). "A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A local government entity may also be liable if it has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Defense is correct that the conduct must "shock the conscience" or "offend the community's sense of fair play and decency." *Rochin v. California*, 342 U.S. 165, 172-73 (1952).

In order to demonstrate that there is a policy in place by key decision makers of the County to violate the rights of a protected group, Plaintiff need demonstrate that the County was deliberately indifferent to the consequences of their inaction or that they had instituted a formal policy of treating minorities differently. *Board of County Com'rs of Bryan County, Okl. V. Brown*, 520 U.S. 397, 411 (1997); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-702 (1978). Evidence of other violations in similar circumstances by the same entity being sued in this case is evidence that Defendants knew the consequences of continuing to allow their employees to behave in this manner.

These actions by Defendants do indeed "shock the conscience." Plaintiff had the reasonable expectation that when government officials found their family member dead in the street that they would take reasonable steps to notify the family of what had transpired. Plaintiff alleges in their complaint that not only did Defendants not take reasonable steps, but that their actions are a part of a larger pattern of behavior by Defendants of indifference towards to family members of deceased individuals who are experiencing homelessness. *See* Ex. E. Plaintiff was not seeking special treatment or accommodations in this case; Plaintiff merely had the reasonable expectation that she would not find out about her sister's death from strangers rather

than the Government Entity that is responsible for notifying next of kin and who was in possession of her sister's body immediately after her death.

In the Police Report, attached hereto as Exhibit A, Officer Jennifer Malone and Detective Campbell mention that they found known associates of Dorothy Dale-Chambers by running her fingerprints. Phoenix Police Department utilizes several databases to find next of kin information and the notion that they were able to identify only her boyfriend and not her family members in these searches is absurd and further discovery will no doubt reveal these databases are more than capable of finding Dorothy's family members. It stretches the bounds of imagination that Maricopa County and OME were not aware of who Dorothy Dale-Chambers's family members were when she presented to the OME on April 26, 2022.

As illustrated in Plaintiff's Complaint, Plaintiff is alleging that the disparate impact of these policies is racially motivated. City of Phoenix is currently under Federal investigation for the widespread disparate treatment of minorities here in the State. *Exhibit C*. The AZ Central investigation demonstrates a clear pattern of conduct by the City of Phoenix to treat minorities differently than others similarly situated. *Exhibit D*. One of the many purposes behind the pieces of investigative journalism into Government practices, such as the article cited to in Plaintiff's Complaint, is to provide evidence that lawyers and plaintiffs otherwise would not have access to under the heightened pleading standards enumerated in *Twombly* and *Iqbal*. The AZ Central investigation provides additional evidence that there is a widespread practice or custom by the Defendants to improperly handle the bodies of deceased minorities. Even if there is no policy or custom, Defendants meet the requirements of deliberate indifference because they knew the scale of this issue and chose to not make necessary changes. Plaintiff has provided more than "bare assertions" of an improper policy by Defendants and therefore Defendants' Motion must be denied.

### c.  Plaintiff's Allegations in Count Three Sufficiently Allege a Violation of the Right of Sepulcher.

In *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158 (2004), the Supreme Court found that the "well-established cultural tradition acknowledging a family's control over the body…has a long history at common law." Other Courts have recognized that there exists a property right in the body of the decedent, belonging to one's family members, for at least the limited purpose of burial. *Marsh v. County of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2007) ("a parent's right to control a deceased child's remains…flows from the well-established substantive due process right to family integrity."); *Melfi v. Mount Sinai Hosp.*, 877 N.Y.S.2d 300, 204 (App. Div. 2009) ("It is well established that…damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body."); *Whitney v. Cervantes*, 328 P.3d 957, 960 (Wash. Ct. App. 2014) ("the right of the next of kin to control and direct the burial of a corpse and arrange for its preservation is not only a natural right, embracing a high order of sentiment, but has become to be well recognized as a legal right.").

The family members of Dorothy Dale-Chambers had an established right to control her body and arrange for funeral arrangements, which Defense for Maricopa County conceded in their Motion. Defendants interfered with this right by instituting a policy, statement, ordinance, or regulation which either allowed or encouraged their employees to be lackadaisical in their efforts to notify the family members of individuals who were minorities. In the alternative, their employees' actions were the result of deliberate indifference by the individuals responsible for making policy for the County and OME. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). The AZ Central investigation referenced above demonstrates that there is an issue with how people experiencing homelessness are being treated, particularly when they are found dead by City or County officials. *Exhibit D*. Defendants should have taken action to ensure that

Dorothy Dale-Chambers's family received the same courtesies as anyone else going through OME would have received.

Counsel for Maricopa County cites to *Chaudry v. City of Los Angeles*, 751 F.3d 1096 (App. 2014), which is distinguishable from the case at hand. As a preliminary matter, the court in *Chaudry* held that the plaintiffs "introduced enough evidence to create a jury issue on whether the Coroner's attempts to locate Usman's family were reasonable." In the memorandum disposition filed concurrently, the Court held that the plaintiff's family did not have a right to stop the OME from performing an autopsy. In the present case, Plaintiff is not alleging that Defendants interfered with their ability to bury Dorothy Dale-Chambers by taking too long to perform an autopsy. Plaintiff is alleging that they failed to take reasonable steps to notify the decedent's known family members of her death, thereby interfering with their ability to bury Dorothy. This inquiry was held to be properly left to the jury in the *Chaudry* case and Plaintiff strongly contends that same holding is proper in this case.

Defendant City of Phoenix confuses the nature of Plaintiff's claim by stating in their motion, "Plaintiff cannot sustain a procedural due process claim as a matter of law given this short delay." *See* Defendant City of Phoenix Motion to Dismiss at 11. Plaintiff is alleging that Defendants failed to take reasonable steps to notify Dorothy's family members of her passing, thereby interfering with their ability to timely bury their loved one. Further, Dorothy's family members only found out about her death because one of Dorothy's friends made them aware of it. There is no evidence whatsoever of any steps Defendants took to notify Dorothy's family members of her passing or if they ever would have taken steps to notify them.

Defendants failed to take reasonable steps to notify Dorothy's family that they were in possession of her dead body, even though they knew who they were shortly after they found her. Information regarding Dorothy Dale-Chambers's next of kin was known to both

Defendants and they took zero steps to notify these individuals, thereby interfering with their ability to bury their loved one.

### d. Plaintiff's Allegations in Count Three Sufficiently Allege a *Monell* Claim.

In order to show liability under §1983 based on an unwritten policy or custom it must be shown that the policy or custom was so persistent and widespread that is constituted permanent and well settled policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

The weight of the evidence Plaintiff has provided in their Complaint is a question for the jury, however, Plaintiff has clearly pled well more than bare assertions of a policy of indifference towards the rights of dead black individuals here in Arizona. As detailed in Plaintiff's Complaint, these are not sporadic or isolated incidents of similar occurrences, the Department of Justice is currently investigating City of Phoenix and their practices related to homeless individuals here in the state. *Exhibit C*. Also as detailed in Plaintiff's Complaint, the majority of these individuals are black. The unwritten customs and procedures that Defendants have employed against black homeless individuals here in Arizona is pervasive enough such that it caught the attention of the Federal Government nearly a year before the events which led to this lawsuit occurred. The pattern or practice investigation is still ongoing, despite attempts from City of Phoenix to prematurely end the investigation. *Exhibit E*.  Plaintiff has shown that there is more than just this one incident at issue; there is a pattern of conduct such that it can properly be held there is an unwritten practice or custom of denying equal treatment to individuals based on their protected status by the Defendants.

This investigation by the Department of Justice, coupled with the investigation from AZ Central, were sufficient to put Defendants on notice that their policies of notifying next of kin of homeless individuals, who are largely black, were deficient well before this incident

11

occurred. Therefore, Plaintiff has properly pled that Defendants had constitutionally deficient polices or customs.

### e. Plaintiff's State Law Claims Must be Allowed to Continue.

Even if this Court agrees with Defense's arguments regarding the civil rights claims, which Plaintiff asserts would be in error, Plaintiff's state law claims must be allowed to continue. Should the Court grant Defendant's Motion regarding the civil rights claims, Plaintiff will ensure an estate is set up within 30 days of that ruling.

The notice of claim statute has the following requirements, "shall contain facts sufficient to permit the public entity…to understand the basis upon which liability is claimed" and "shall also contain a specific amount for which the claim can be settled and the facts supporting that amount." A.R.S. § 12-821.01(A). "The statutory requirements serve several important functions: they 'allow the public entity to investigate and assess liability, … permit the possibility of settlement prior to litigation, and … assist the public entity in financial planning and budgeting." *Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 (2007) (citing *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527 (2006) (quoting *Martineau v. Maricopa County*, 207 Ariz. 332, 335-36 (App. 2004)).

The intent of the notice of claim statute is clearly stated in 1984 Ariz. Sess. Laws, ch. 285 § 1 (2d Reg. Sess):

> "[i]t is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state. All of the provisions of this act should be construed with a view to carry out this purpose"

*See also Stone v. Arizona Highway Commission*, 93 Ariz. 384, 392 (1963) (holding "the rule is

12

[governmental] liability and immunity is the exception."). The intent of the legislature is frustrated by rigid adherence to formulaic requirements in the notice of claim as immunity was intended to be the exception, not the rule. *See Backus v. State*, 220 Ariz. 101, 105-07 (2009). "The approach that best furthers legislative intent is to allow a claimant to decide what facts support the amount claimed and to disclose those facts as part of the notice of claim." *Id*. at 106. The *Backus* court further held:

> "[w]we hold, therefore, that a claimant complies with the supporting-facts requirement of § 12-821.01A by providing the factual foundation that the claimant regards as adequate to permit the public entity to evaluate the specific amount claimed. This standard does not require a claimant to provide an exhaustive list of facts; as long as a claimant provides facts to support the amount claimed, he has complied with the supporting-facts requirement of this statute, **and courts should not scrutinize the claimant's description of acts to determine the 'sufficiency' of the factual disclosure**."

(emphasis added).

There are three requirements outlined in A.R.S. § 12-821.01 that courts have held the failure to comply with, is fatal to a plaintiff's case; first that Plaintiff provide a statement of facts that permit Defendant to understand the basis of liability, second that Plaintiff provide a specific amount that the case can be settled for, and third the notice must be served on the proper agent. *See* A.R.S. § 12-821.01(A); *Lee v. State*, 218 Ariz. 235, 237 (2008). Plaintiff's Notice of Claim strictly complies with all of these requirements.

Defendant's contention that Plaintiff lacked standing or authority to assert these claims is simply not true. There is no case law that Plaintiff is aware of, and Defense cites to none, that

Plaintiffs are required to set up an estate within the narrow 6 month time frame which the statute allows for. The purposes of the statute are to help the municipality understand the basis of their liability and assist the public entity in financial planning and budgeting." *Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 (2007) (citing *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527 (2006) (quoting *Martineau v. Maricopa County*, 207 Ariz. 332, 335-36 (App. 2004)).

Nowhere in Defendant's Motion do they assert they did not understand the basis of their liability for Plaintiff's claims. Indeed, no reasonable objection could exist as Plaintiff provided an explicitly clear description of the basis for Defendant's liability. *See Exhibit F* – Notice of Claim. Further, Defense makes no argument that the Notice was served on an improper party. *See Exhibit G* – Affidavits of Service. Should Defense raise either of these issues at argument or in their Reply we respectfully request the opportunity to further brief the Court.

Defendant's contention that Plaintiff failed to present facts to support the claimed damages also is not accurate. Even if Defendant, or the Court, disagrees with the Claimant's settlement offer, there is no requirement in the notice of claim statute that the proffered settlement amount be objectively reasonable. *See Donovan v. Yavapai Community College District*, 244 Ariz. 608, 611 (App. 2018).

The second prong of this element is that the claimant provide, "facts supporting that amount." A.R.S. § 12-821.01(A). "[T]he supporting facts requirement is intended to be a relatively light burden on claimants, just enough to facilitate the government's investigation. *Yollin v. City of Glendale*, 219 Ariz. 24, 32 (App. 2008) (citing *Deer Valley*, 214 Ariz. at 296). Further,

"The approach that best furthers legislative intent is to allow a claimant to decide what facts support the amount claimed and to disclose those facts as part of the notice of

claim…[c]ourts should not scrutinize the claimant's description of facts to determine the 'sufficiency' of the factual disclosure."

*Backus v. State*, 220 Ariz. 101, 106-07 (2009). In a wrongful death action such as this the jury is permitted to award damages it deems "fair and just." *See* A.R.S. § 12-613. Surviving heirs are also entitled to damages which compensate them for the "decedent's prospective earning capacity; the loss of companionship, comfort, and guidance caused by the death; **and the survivor's emotional suffering**." *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 196 (2012) (citing *Summerfield v. Superior Court*, 144 Ariz. 467, 472 (1985); *Mullen v. Posada Del Sol Health Care Ctr.*, 169 Ariz. 399, 400 (App. 1991)) (emphasis added). In the present case, Plaintiff provided the following justifications for the $10 million settlement offer which included,

> "[a]s a direct and proximate result of the negligence and carelessness of Defendants, and a direct and proximate result of the decedent, the estate of Plaintiff has forever been deprived of the love, care, attention, companionship, guidance, counseling, services, common benefit of Decedent Ms. Chambers Dale and have, thereby, been damaged in an amount to be proven at trial. As a further direct and proximate result of the death of decedent, the estate of Plaintiff has incurred expenses associated with decedent's death including, but not limited to, funeral and burial expenses and has, thereby, suffered special damages in an amount to be proven at trial."

All of these items listed above are compensable in a wrongful death action such as this. The burden of providing facts to support the amount claimed is intended to be a light one. *Yollin v. City of Glendale*, 219 Ariz. 24, 32 (App. 2008) (citing *Deer Valley*, 214 Ariz. at 296). Further,

it is often the case in wrongful death actions that itemizing specific amounts is difficult as the amount to be awarded is meant to compensate for the priceless qualities of life such as love, care, and guidance. Providing the specificity that Defense is requesting is simply not what the statute requires.

Plaintiff more than adequately complied with the notice of claim requirements and the purposes of that statute were met. The Notice was served on a proper agent, provided more than ample facts regarding Defendant's liability, and stated the basis for the amount claimed. The purpose of the statute was complied with as Defendant cannot reasonably assert that they were unaware of the claims against them or the basis thereof which is the extent of what A.R.S. § 12-821.01 requires.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court denies Defendants' Motion. All of the Defendants knew or should have known who Dorothy Dale-Chambers's relatives and next of kin were the day she came into their office. Whether through an explicit policy or deliberate indifference in the face of a recurring issue, Defendants violated the rights of Dorothy Dale-Chambers's family to know the whereabouts of their deceased relative. Plaintiff respectfully requests that the Court deny Defendant's Motion in full as the allegations in Plaintiff's Complaint are more than sufficient, when accepted as true, to establish a claim pursuant to § 1983 and 1985, as well as constitutional violations by Defendants.

**EXHIBITS**

A. Phoenix Police Department Incident Report

B. Screenshot of OME's website

C. DOJ Memo

D. AZ Central Article

E. Letter from City of Phoenix

F.  Notice of Claim

G.  Affidavits of Service for Notice of Claim


**DATED** this 17th day of April, 2024.


                              **PHILLIPS LAW GROUP, P.C.**

                              By <u>/s/ *Timothy LeDuc, Esq.*</u>
                                 Nasser Abujbarah, Esq.
                                 Timothy LeDuc, Esq.
                                 *Attorney for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this 17 day of April, 2024, I caused the foregoing document to

3 be filed electronically with the Clerk of the Court through the CM/ECF System for filing.

4

By: /s/Hannah Dustin

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT A

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| | |
|---|---|
| Incident Number 20220000630667 - 015 | CFS Incident # 202200630667 |
| Report Type Incident Supplement | Page **1** of **1** |
| Date / Time Occurred 04/26/2022 20:05 to | Date / Time Reported 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| Arson Related | Arson Code | | | Damage Value | Bias Crime | Gang Involved | Domestic Violence |
|---|---|---|---|---|---|---|---|

Incident Details

| Squad T21 | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|

| Situation Found RESULTED IN BODY CAMERA ACTIVATION | Status |
|---|---|

| Location Given By Dispatcher N 32ND ST & E YALE ST | Cargo Theft NO |
|---|---|

Incident Address

| Street Address N 32ND ST & E YALE ST | | | |
|---|---|---|---|
| City PHOENIX | State ARIZONA | Zip 85008 | Country Code UNITED STATES OF AMERICA (USA) |

Administrative Info

| Reporting Officer MARQUEZ, GABRIEL | Serial # 10127 |
|---|---|

Narrative Information
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RESPONSE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON TUESDAY, APRIL 26, 2022 AT 2049 HOURS, I WAS CONTACTED BY SERGEANT PITTS #5707, WHO REQUESTED MY ASSISTANCE IN THE INVESTIGATION OF A FATAL TRAFFIC COLLISION WHICH OCCURRED AT 2500 NORTH 32ND STREET.

I ARRIVED AT THE SCENE FROM THE NORTH AT 2124 HOURS, PARKING OUTSIDE OF THE COLLISION SCENE, AND ENTERED THE SCENE ON FOOT.  THE SCENE WAS SECURED BY PATROL OFFICERS FROM THE MOUNTAIN VIEW PRECINCT.  OFFICERS WERE USING YELLOW CRIME SCENE TAPE AND MARKED PATROL VEHICLES TO RE-DIRECT VEHICULAR AND PEDESTRIAN TRAFFIC FROM THE AREA OF THE SCENE.

I OBSERVED DETECTIVE REED CONDUCT AN INTERVIEW OF NEBOJSA PETKOVIC, THE DRIVER OF THE DODGE RAM PICKUP INVOLVED IN THE COLLISION.  DURING THE INTERVIEW DETECTIVE READ EXPLAINED WHAT THE EVENT DATA RECORDER IS AND WHAT DATA IT CONTAINS. DETECTIVE READ ASKED NEBOJSA FOR PERMISSION FOR US TO IMAGE THE EVENT DATA RECORDER AND NEBOJSA CONSENTED STATING, "OF COURSE, YEAH".

WITH CONSENT AUTHORIZATION I IMAGED THE AIRBAG CONTROL MODUL.  I PROVIDED THE DATA TO DETECTIVE DAVIDSON TO AID HIM IN HIS RECONSTRUCTION OF THE COLLISION.

 WHEN DOCUMENTATION OF THE SCENE WAS COMPLETE I COLLECTED, WITH THE ASSISTANCE OF PATROL OFFICERS, THE PROPERTY OF THE TWO PEDESTRIANS STUCK DURING THE COLLISION AND IMPOUNDED THE PROPERTY FOR SAFEKEEPING.

THIS CONCLUDES MY INVOLVEMENT IN THIS INCIDENT.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| Incident Number | | CFS Incident # |
|---|---|---|
| 20220000630667 - 002 | | 202200630667 |
| Report Type | | |
| Incident Supplement | | Page 1 of 2 |
| Date / Time Occurred | | Date / Time Reported |
| to | | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| ☐ Arson Related | Arson Code | | | Damage Value | | ☐ Bias Crime | ☐ Gang Involved | ☐ Domestic Violence |
|---|---|---|---|---|---|---|---|---|

**Incident Details**

| Squad | Clearance Disposition | | Cleared by Exception | | Exceptional Clearance Date |
|---|---|---|---|---|---|
| 72F | | | | | |

| Situation Found | | Status | |
|---|---|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | | | |

| Location Given By Dispatcher | | Cargo Theft |
|---|---|---|
| | | NO |

**Incident Address**

| Street Address | | | | |
|---|---|---|---|---|
| City | State | | Zip | Country Code |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| WOOD, HUNTINGTON | 11202 |

Narrative Information

THIS SUPPLEMENT IS BEING GENERATED TO DOCUMENT MY INVOLVEMENT IN THIS INCIDENT.

****** CALL DETAILS *****
OFFICER GALLOVICH #10151 AND I WERE RIDING AS A TWO MAN UNIT WHEN WE WERE DISPATCHED TO A CALL OF A VEHICLE COLLISION WITH INJURIES. DETAILS ON THE CALL STATED TWO PEDESTRIANS WERE HIT BY A TRUCK AND WERE ON THE GROUND.

****** NARRATIVE ******

I ARRIVED ON SCENE AT APPROXIMATELY 2009 HOURS. UPON ARRIVAL, I OBSERVED TWO SUBJECTS LYING ON THE GROUND NEXT TO THE CURB ON THE NORTHBOUND SIDE OF NORTH 32ND STREET. BOTH SUBJECTS APPEARED TO HAVE INJURIES. BOTH INDIVIDUALS HAD ONE EMERGENCY MEDICAL TECHNICIAN ASSISTING THEM. I ASKED THE MORE NORTHERN MEDICAL TECHNICIAN HOW I COULD ASSIST. I WAS TOLD TO GET THE GURNEY FROM THE AMBULANCE THEY HAD PARKED JUST NORTH OF THE SCENE.
AFTER BRINGING THE GURNEY OVER TO ONE OF THE SUBJECTS ON THE GROUND, ONCE PHOENIX FIRE BEGAN TO ASSIST THE INDIVIDUAL I MADE CONTACT WITH THE DRIVER OF THE VEHICLE THAT WAS INVOLVED IN THE COLLISION.
****** INTERVIEW WITH NEBOJSA PETKOVIC ******
I SPOKE WITH NEBOJSA ON SCENE OF THE VEHICLE COLLISION. HE IDENTIFIED HIMSELF WITH HIS ARIZONA DRIVERS LICENSE. HE STATED THE FOLLOWING.
HE WAS TRAVELLING NORTH BOUND ON NORTH 32ND STREET IN THE NUMBER THREE LANE. WHILE TRAVELLING NORTHBOUND, HE FELT HIS TRUCK HIT SOMETHING IN THE AREA OF EAST YALE AND NORTH 32ND STREET, BUT DID NOT SEE ANYTHING. HE LOOKED BACK AND SAW A SHOPPING CART IN THE ROAD. HE PARKED HIS TRUCK IN A PARKING LOT JUST NORTH EAST OF THE SCENE AND CALLED EMERGENCY SERVICES. HE WENT TO THE PEDESTRIANS IN THE ROADWAY AND ATTEMPTED TO ASSIST THEM.
HE STATED THAT HE WAS COMING FROM WORK AND WAS HEADING TO HIS GIRLFRIEND'S HOUSE.

*****SFST*****

AT APPROXIMATELY 2030 HOURS I CONDUCTED FIELD SOBRIETY TESTS WITH NEBOJSA PETKOVIC. NEBOJSA DENIED HAVING ANY PHYSICAL DISABILITIES OR MEDICAL CONDITIONS THAT WOULD PROHIBIT HIM FROM CONDUCTING THE TEST. THE TEST WERE CONDUCTED ON A FLAT LEVEL CONCRETE SURFACE THAT WERE ILLUMINATED BY MOON LIGHT, FLASHLIGHT, STREET LIGHTS AND MULTIPLE POLICE OVER HEAD LIGHTS. NEBOJSA WAS WEARING CLOSED TOE SHOES. WHILE I EXPLAINED THE TEST TO NEBOJSA IT WAS READ VERBATIM FROM MY CITY OF PHOENIX ISSUED SFST CARD. ALL OF NEBOJSA QUESTIONS WERE ANSWERED PRIOR TO HIM CONDUCTING THE TEST. LASTLY, NEBOJSA WAS EXTREMELY EMOTIONAL WHILE CONDUCTING THE TEST AND HAD TO BE STOP TO ALLOW HIM TO REGAIN HIS BREATH.

NEBOJSA SHOWED THE FOLLOWING SIGNS AND SYMPTOMS OF IMPAIRMENT WHILE CONDUCTING THE ONE LEG



PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| CFS Incident # |
|---|
| 202200630667 |

| Incident Number |
|---|
| 202200000630667 - 002 |

| Report Type |
|---|
| Incident Supplement |

| Page **2**  of **2** |
|---|

| Date / Time Occurred |
|---|
| to |

| Date / Time Reported |
|---|
| 04/26/2022 20:06 |

STAND.
ARMS GREATER THAN SIX INCHES FROM HIS BODY.
WHILE CONDUCTING THE TEST NEBOJSA HOPPED ONE TIME AT APPROXIMATELY 15 SECONDS INTO THE TEST.

NEBOJSA SHOWED THE FOLLOWING SIGNS AND SYMPTOMS OF IMPAIRMENT WHILE CONDUCTING THE WALK AND TURN.

DURING THE INITIAL NINE STEPS NEBOJSA STEPPED OFF THE LINE ON THE SIX STEP.

*****CONCLUSION******

NOTHING FURTHER TO REPORT AT THIS TIME.

THIS IS THE END OF MY INVOLVEMENT IN THIS INCIDENT.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 20220000630667 - 008 | 202200630667 |
| Report Type | Page 1 of 3 |
| Incident Supplement | |
| Date / Time Occurred | Date / Time Reported |
| to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons 2 | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code

Damage Value ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

### Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

Situation Found
RESULTED IN BODY CAMERA ACTIVATION   Status

Location Given By Dispatcher
N 32ND ST & E YALE ST   Cargo Theft

### Incident Address

Street Address
N 32ND ST & E YALE ST

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | | |

### Administrative Info

| Reporting Officer | Serial # |
|---|---|
| TORNGREN, BENJAMIN | 1121B |

**OTHER PERSON**   Person Type
WITNESS   Suffix

Name (Last, First Middle)
CARTER, BRITTANY

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|
| | | WHITE | FEMALE | | 95 | 27 | to |

| Height | Weight | Driver's License # | DL State | | Can Identify Suspect? | |
|---|---|---|---|---|---|---|

| Place of Birth | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|
| | | NON-HISPANIC | |

ICE Contact Date   ICE Phone #   ICE Response

Home Phone   Cell Phone   Email Address   Additional Email or Social Media Handle   Social Media Types

### Other Person Home Address

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85018 | |

### Employment Information

☐ Student   ☐ Homeless   Employer / School   Occupation
HOSTESS

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | | |

### Details

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|

Resident   Teeth

### Gang Information

☐ Primary Gang   Primary Gang Name   Primary Gang Membership Info

Primary Gang Location Info   Rival Gang Name

Colors/Logos

☐ Secondary Gang   Secondary Gang Name   Secondary Gang Membership Info

Secondary Gang Location   Rival Gang Name

Colors/Logos



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 008 | 202200630667 |
| Report Type | Page 2 of 3 |
| Incident Supplement | |
| Date / Time Occurred to | Date / Time Reported 04/26/2022 20:06 |

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclomation | ☐ Witness Testimony/Statement | ☐ Written/Electonic Correspondance |
|---|---|---|---|---|---|

Other

### Guardian Information

| Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|
| ☐ Guardian Notified | | |

Guardian Of — Guardian Relationship

---

### OTHER PERSON

**Person Type:** WITNESS    Suffix

**Name (Last, First Middle):** TORRES, ALAN

| Primary Language | Nickname | Race WHITE | Sex FEMALE | SSN | Date of Birth 01 | Age 21 | Age Range to |
|---|---|---|---|---|---|---|---|

| Height | Weight | Driver's License # D068 | DL State ARIZONA | | Can Identify Suspect? |
|---|---|---|---|---|---|

| Place of Birth | Citizenship | Ethnicity HISPANIC | Marital Status |
|---|---|---|---|

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

Street Address

| City PHOENIX | State ARIZONA | Zip 85008 | Country Code UNITED STATES OF AMERICA (USA) |
|---|---|---|---|

### Employment Information

| ☐ Student | ☐ Homeless | Employer / School | Occupation SERVICE TECHNICIAN |
|---|---|---|---|

Street Address

| City PHOENIX | State ARIZONA | Zip 85008 | Country Code UNITED STATES OF AMERICA (USA) |
|---|---|---|---|

### Details

| Work Phone | Hours of Employment | Hair Color BLACK | Hair Length SHORT | ☐ Glasses |
|---|---|---|---|---|

| Eye Color | Build THIN | Facial Hair | Voice | Complexion |
|---|---|---|---|---|

| Resident | Teeth |
|---|---|

### Gang Information

| ☐ Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|

| Primary Gang Location Info | Rival Gang Name |
|---|---|

Colors/Logos

| ☐ Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|

| Secondary Gang Location | Rival Gang Name |
|---|---|

Colors/Logos

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclomation | ☐ Witness Testimony/Statement | ☐ Written/Electonic Correspondance |
|---|---|---|---|---|---|

Other

### Guardian Information

| Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|
| ☐ Guardian Notified | | |



PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| Incident Number | | CFS Incident # |
|---|---|---|
| 202200000630667 - 008 | | 202200630667 |
| Report Type | | Page **3** of **3** |
| Incident Supplement | | |
| Date / Time Occurred | to | Date / Time Reported |
| | | 04/26/2022 20:06 |

| Guardian Of | Guardian Relationship |
|---|---|

Narrative Information
*************

NARRATIVE
*************

ON APRIL 26, 2022 AT APPROXIMATELY 2007 HOURS I WAS ON PATROL WITH OFFICER ZWEMKE #10887 AND RESPONDED TO A CALL FOR AN ACCIDENT WITH INJURIES AT THE INTERSECTION OF E YALE ST AND N 32ND ST. WHEN I FIRST ARRIVED, I TURNED ON MY LIGHTS AND PARKED MY VEHICLE ON THE SOUTH END OF THE INTERSECTION FOR TRAFFIC CONTROL.

I CONTACTED A NEARBY WITNESS WHO IDENTIFIED HERSELF AS BRITTANY CARTER, AND WAS VERIFIED FROM HER MOTOR VEHICLE DEPARTMENT PHOTOGRAPH. SHE ADVISED THAT SHE WAS A PASSENGER IN THE VEHICLE BEHIND THE DRIVER INVOLVED IN THE COLLISION. SHE STATED THE DRIVER WAS DRIVING NORTH ON N 32ND ST, AND WAS IN THE LANE CLOSEST TO THE SIDEWALK. SHE BELIEVED HE WAS DRIVING APPROXIMATELY FIFTY FIVE MILES PER HOUR, AND SHE SAW HIS BRAKE LIGHTS COME ON, ALTHOUGH DID NOT BELIEVE THAT HE HAD APPLIED HARD PRESSURE TO HIS BRAKES. SHE SAW THE PEDESTRIANS COMING INTO THE ROADWAY, WALKING WEST, BEFORE SEEING HIS BRAKE LIGHTS COME ON, AND RECALLED HIM ATTEMPTING TO SWERVE OUT OF THE WAY TO AVOID COLLISION, HOWEVER WAS UNABLE TO AVOID COLLIDING WITH THE PEDESTRIANS.

I CONTACTED ANOTHER WITNESS WHO IDENTIFIED HIMSELF AS ALAN TORRES, AND WAS VERIFIED FROM HIS MOTOR VEHICLE DEPARTMENT PHOTOGRAPH. HE ADVISED HE SAW TWO PEDESTRIANS WALKING INTO THE ROADWAY, WALKING EAST, AND THAT HE STOPPED IN THE ROADWAY AS THE PEDESTRIANS CROSSED IN THE CROSSWALK. HE ADVISED THERE WERE OTHER VEHICLES IN THE ROADWAY THAT ALSO SAW THE PEDESTRIANS AND STOPPED IN THE ROADWAY. THEN HE SAW THE DRIVER INVOLVED IN THE COLLISION DRIVING NORTH ON N 32ND ST, IN THE MIDDLE LANE, AND THAT HE DID NOT STOP FOR THE PEDESTRIANS. ALAN STATED HE DID NOT BELIEVE THE DRIVER HAD EVEN ATTEMPTED TO SLOW DOWN BEFORE THE COLLISION, AND ORIGINALLY THOUGHT THE DRIVER MIGHT HAVE LEFT THE SCENE OF THE ACCIDENT.

THIS CONCLUDES MY INVOLVEMENT IN THIS INCIDENT.

Public Narrative



**PHOENIX POLICE DEPARTMENT (0723)**

**Incident Report**

| Incident Number | | CFS Incident # |
|---|---|---|
| 202200000630667 | | 202200630667 |
| Report Type | | Page 1 of 9 |
| Incident Report | | |
| Date / Time Occurred | | Date / Time Reported |
| 04/26/2022 20:05 to | | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons 6 | Vehicles 1 | Items | Evidence Count 2 | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code                 Damage Value        ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

**Incident Details**

| Squad | Clearance Disposition | | Cleared by Exception | | Exceptional Clearance Date |
|---|---|---|---|---|---|
| T21 | | | | | |

| Situation Found | | Status | |
|---|---|---|---|

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| N 32ND ST & E YALE ST | |

**Incident Address**

| Street Address | | | | |
|---|---|---|---|---|
| 2550 N 32ND ST | | | | |
| City | State | | Zip | Country Code |
| PHOENIX | ARIZONA | | 85008 | |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| CAMPBELL, TERRAN | 09614 |

**OFFENSE**

☑ Primary Offense          Offense Description
                           **FATAL TRAFFIC COLLISION**

| Offense/Statute Code | Severity | Attempted/Completed | Premise Type |
|---|---|---|---|
| COLLISION 020 | NOT APPLICABLE | COMPLETED | STREET / ROADWAY / SIDEWALK |

| Circumstances | Bias | Bias 2 |
|---|---|---|
| NONE | NONE | |

| Bias 3 | Bias 4 | Bias 5 |
|---|---|---|

| Criminal Activity 1 | Criminal Activity 2 | Criminal Activity 3 |
|---|---|---|

| Offender Using 1 | Offender Using 2 | Offender Using 3 |
|---|---|---|
| NOT APPLICABLE | | |

| # Premise Entered   Home Invasion | Domestic Violence | Gang Activity |
|---|---|---|

| Primary Gang Type | Primary Gang Name |
|---|---|

| Secondary Gang Type | Secondary Gang Name |
|---|---|

| Drug Related | Drug Type | Drug Origin | Drug Precursors |
|---|---|---|---|

**MO Panel**

| Entry Type | Entry Area | Entry Method |
|---|---|---|

| Entry Point 1 | Entry Point 2 | Exit Point 1 |
|---|---|---|

| Exit Point 2 | Target Area | Property Target 1 |
|---|---|---|

| Property Target 2 | Property Target 3 | Victim Target |
|---|---|---|

| Time of Day | Victim Activity | Action 1 to Premises |
|---|---|---|

| Action 2 to Premises | Action 3 to Premises | Action 1 on Victim |
|---|---|---|

| Action 2 on Victim | Action 3 on Victim | Other Action 1 |
|---|---|---|

| Other Action 2 | Other Action 3 | Solicited Offered 1 |
|---|---|---|

| Solicited Offered 2 | Solicited Offered 3 | Weapon 1 |
|---|---|---|

| Weapon 1 Auto | Weapon 2 | Weapon 2 Auto |
|---|---|---|

| Weapon 3 | Weapon 3 Auto | Arson |
|---|---|---|

| Precipitating Circumstance | Instrument Used |
|---|---|

Comments



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| | |
|---|---|
| Incident Number 202200000630667 | CFS Incident # 202200630667 |
| Report Type Incident Report | Page 2 of 9 |
| Date / Time Occurred 04/26/2022 20:05 to | Date / Time Reported 04/26/2022 20:06 |

---

**OTHER PERSON** — Person Type **PEDESTRIAN**

| | | Suffix |
|---|---|---|

Name (Last, First Middle)
**GUTIERREZ, JOSEPH A**

| Primary Language | Nickname | Race **WHITE** | Sex **MALE** | SSN | Date of Birth 62 | Age 60 | Age Range to |
|---|---|---|---|---|---|---|---|

| Height 5'07" | Weight 170 | Driver's License # D073 | DL State **ARIZONA** | | Can Identify Suspect? | | |

| Place of Birth | Citizenship | | Ethnicity **HISPANIC** | Marital Status |
|---|---|---|---|---|

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

| Street Address | | | | |
|---|---|---|---|---|
| City | State | | Zip | Country Code |

### Employment Information

| | | | Occupation |
|---|---|---|---|
| ☐ Student | ☐ Homeless | Employer / School | |

| Street Address | | | | |
|---|---|---|---|---|
| City | State | | Zip | Country Code |

### Details

| Work Phone | Hours of Employment | Hair Color **BROWN** | Hair Length | ☐ Glasses |
|---|---|---|---|---|
| Eye Color **BROWN** | Build | Facial Hair | Voice | Complexion |
| Resident **PHOENIX RESIDENT** | | Teeth | | |

### Gang Information

| ☐ Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|
| Primary Gang Location Info | Rival Gang Name | |

Colors/Logos

| ☐ Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|
| Secondary Gang Location | Rival Gang Name | |

Colors/Logos

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclamation | ☐ Witness Testimony/Statement | ☐ Written/Electonic Correspondance |
|---|---|---|---|---|---|

Other

### Guardian Information

| | Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|---|
| ☐ Guardian Notified | | | |
| Guardian Of | | Guardian Relationship | |

---

**OTHER PERSON** — Person Type **PEDESTRIAN**

| | | Suffix |
|---|---|---|

Name (Last, First Middle)
**CHAMBERS, DOROTHY JEAN**



**PHOENIX POLICE DEPARTMENT (0723)**

# Incident Report

| Incident Number | | CFS Incident # |
|---|---|---|
| 202200000630667 | | 202200630667 |

| Report Type | | Page 3 of 9 |
|---|---|---|
| Incident Report | | |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| Primary Language | Nickname | Race | | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|---|
| | | BLACK | | FEMALE | | 54 | 67 | to |

| Height | Weight | Driver's License # | DL State | | | | |
|---|---|---|---|---|---|---|---|
| 5'02" | 120 | T5C | ARIZONA | | Can Identify Suspect? | | |

| Place of Birth | | Citizenship | | Ethnicity | Marital Status |
|---|---|---|---|---|---|
| | | | | NON-HISPANIC | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|
| | | |

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|
| | | | | |

**Other Person Home Address**

| Street Address | | | | |
|---|---|---|---|---|
| City | State | | Zip | Country Code |
| | | | | UNITED STATES OF AMERICA (USA) |

**Employment Information**

| ☐ Student | ☐ Homeless | Employer / School | Occupation |
|---|---|---|---|

| Street Address | | | | |
|---|---|---|---|---|
| City | State | | Zip | Country Code |
| | | | | |

**Details**

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|
| | | BLACK | SHORT | |

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|
| BROWN | THIN | | | |

| Resident | Teeth |
|---|---|
| PHOENIX RESIDENT | |

**Gang Information**

| ☐ Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|

| Primary Gang Location Info | Rival Gang Name |
|---|---|

Colors/Logos

| ☐ Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|

| Secondary Gang Location | Rival Gang Name |
|---|---|

Colors/Logos

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclamation | ☐ Witness Testimony/Statement | ☐ Written/Electronic Correspondance |
|---|---|---|---|---|---|

Other

**Guardian Information**

| ☐ Guardian Notified | Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|---|

| Guardian Of | Guardian Relationship |
|---|---|

| OTHER PERSON | Person Type |
|---|---|
| | DRIVER |

| Name (Last, First Middle) | | Suffix |
|---|---|---|
| PETKOVIC, NEBOJSA | | |

| Primary Language | Nickname | Race | | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|---|
| | | WHITE | | MALE | | 86 | 35 | to |

| Height | Weight | Driver's License # | DL State | | | | |
|---|---|---|---|---|---|---|---|
| 5'09" | 180 | D02 | ARIZONA | | Can Identify Suspect? | | |

| Place of Birth | | Citizenship | | Ethnicity | Marital Status |
|---|---|---|---|---|---|
| | | | | NON-HISPANIC | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|
| | | |



**PHOENIX POLICE DEPARTMENT (0723)**

## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 | 202200630667 |
| Report Type | Page 4 of 9 |
| Incident Report | |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| Home Phone | Cell Phone | Email Address | | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|---|

**Other Person Home Address**

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85024 | UNITED STATES OF AMERICA (USA) |

**Employment Information**

☐ Student   ☐ Homeless   Employer / School   Occupation

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

**Details**

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|
| | | BROWN | SHORT | |

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|
| BLUE | | | | |

| Resident | Teeth |
|---|---|
| PHOENIX RESIDENT | |

**Gang Information**

☐ Primary Gang   Primary Gang Name   Primary Gang Membership Info

Primary Gang Location Info   Rival Gang Name

Colors/Logos

☐ Secondary Gang   Secondary Gang Name   Secondary Gang Membership Info

Secondary Gang Location   Rival Gang Name

Colors/Logos

☐ Clothing or Colors   ☐ Gang Tattoos   ☐ Paraphernalia or Photographs   ☐ Self Proclamation   ☐ Witness Testimony/Statement   ☐ Written/Electronic Correspondance

Other

**Guardian Information**

☐ Guardian Notified   Guardian Notified By   Notified Method   Guardian Notified On

Guardian Of   Guardian Relationship

---

| OTHER PERSON | Person Type | | | | | | | Suffix |
|---|---|---|---|---|---|---|---|---|
| | WITNESS | | | | | | | |

| Name (Last, First Middle) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| HEBRANK, JOHN PACE | | | | | | | | |

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|
| | | WHITE | MALE | | 94 | 27 | to |

| Height | Weight | Driver's License # | DL State | | Can Identify Suspect? |
|---|---|---|---|---|---|
| 6'01" | 185 | D09 | ARIZONA | | |

| Place of Birth | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|
| | | NON-HISPANIC | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|---|

**Other Person Home Address**

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85016 | |



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 | 202200630667 |

| Report Type | Page |
|---|---|
| Incident Report | 5 of 9 |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 04/26/2022 20:05 to | 04/26/2022 20:06 |

### Employment Information

☐ Student   ☐ Homeless   Employer / School    Occupation

Street Address

City    State    Zip    Country Code

### Details

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|
| | | BLOND OR STRAWBERRY | | |

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|
| BLUE | | | | |

| Resident | Teeth |
|---|---|
| PHOENIX RESIDENT | |

### Gang Information

☐ Primary Gang    Primary Gang Name    Primary Gang Membership Info

Primary Gang Location Info    Rival Gang Name

Colors/Logos

☐ Secondary Gang    Secondary Gang Name    Secondary Gang Membership Info

Secondary Gang Location    Rival Gang Name

Colors/Logos

☐ Clothing or Colors   ☐ Gang Tattoos   ☐ Paraphernalia or Photographs   ☐ Self Proclamation   ☐ Witness Testimony/Statement   ☐ Written/Electonic Correspondance

Other

### Guardian Information

☐ Guardian Notified   Guardian Notified By    Notified Method    Guardian Notified On

Guardian Of    Guardian Relationship

---

| OTHER PERSON | Person Type |
|---|---|
| | WITNESS |

| Name (Last, First Middle) | | | | | Suffix |
|---|---|---|---|---|---|
| TORRES, ALAN | | | | | |

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|
| | | WHITE | FEMALE | | 01 | 21 | to |

| Height | Weight | Driver's License # | DL State | Can Identify Suspect? | | |
|---|---|---|---|---|---|---|
| 5'07" | 152 | D064 | ARIZONA | | | |

| Place of Birth | | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|---|
| | | | HISPANIC | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85008 | UNITED STATES OF AMERICA (USA) |

### Employment Information

☐ Student   ☐ Homeless   Employer / School    Occupation

Street Address

City    State    Zip    Country Code

### Details



## PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 20220000630667 | 202200630667 |

| Report Type | Page **6** of **9** |
|---|---|
| Incident Report | |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| Work Phone | Hours of Employment | | Hair Color **BLACK** | Hair Length **SHORT** | ☐ Glasses |
|---|---|---|---|---|---|

| Eye Color **BLACK** | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|

| Resident **PHOENIX RESIDENT** | Teeth |
|---|---|

### Gang Information

| ☐ Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|

| Primary Gang Location Info | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|

| ☐ Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|

| Secondary Gang Location | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclamation | ☐ Witness Testimony/Statement | ☐ Written/Electronic Correspondance |
|---|---|---|---|---|---|

| Other |
|---|

### Guardian Information

| ☐ Guardian Notified | Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|---|

| Guardian Of | Guardian Relationship |
|---|---|

| OTHER PERSON | Person Type **WITNESS** | | Suffix |
|---|---|---|---|

| Name (Last, First Middle) **CARTER, BRITTANY JUNE** |
|---|

| Primary Language | Nickname | Race **WHITE** | Sex **FEMALE** | SSN | Date of Birth ██95 | Age **27** | Age Range to |
|---|---|---|---|---|---|---|---|

| Height **5'05"** | Weight **120** | Driver's License # **D07█** | DL State **ARIZONA** | Can Identify Suspect? | | |
|---|---|---|---|---|---|---|

| Place of Birth | | Citizenship | Ethnicity **NON-HISPANIC** | Marital Status |
|---|---|---|---|---|

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

| Street Address |
|---|

| City **TEMPE** | State **ARIZONA** | Zip **85283** | Country Code |
|---|---|---|---|

### Employment Information

| ☐ Student | ☐ Homeless | Employer / School | Occupation |
|---|---|---|---|

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|

### Details

| Work Phone | Hours of Employment | | Hair Color **BROWN** | Hair Length | ☐ Glasses |
|---|---|---|---|---|---|

| Eye Color **GREEN** | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|

| Resident **NOT PHOENIX RESIDENT** | Teeth |
|---|---|

### Gang Information



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| | |
|---|---|
| Incident Number<br>202200000630667 | CFS Incident #<br>202200630667 |
| Report Type<br>Incident Report | Page **7** of **9** |
| Date / Time Occurred<br>04/26/2022 20:05   to | Date / Time Reported<br>04/26/2022 20:08 |

---

☐ Primary Gang    Primary Gang Name                Primary Gang Membership Info

Primary Gang Location Info                      Rival Gang Name

Colors/Logos

---

☐ Secondary Gang    Secondary Gang Name            Secondary Gang Membership Info

Secondary Gang Location              Rival Gang Name

Colors/Logos

---

☐ Clothing or Colors   ☐ Gang Tattoos   ☐ Paraphernalia or Photographs   ☐ Self Proclomation   ☐ Witness Testimony/Statement   ☐ Written/Electonic Correspondance

Other

---

### Guardian Information

☐ Guardian Notified    Guardian Notified By          Notified Method                Guardian Notified On

                                        Guardian Relationship

Guardian Of

---

### VEHICLE

| Vehicle Year | Make | Model | VIN | Plate # |
|---|---|---|---|---|
| 2021 | RAM | RAM 1500 | 1C6SRFU97MN903501   ☐ V N Validation Off | 9A59DL |

| State | Plate Type | Plate Month | Plate Year |
|---|---|---|---|
| ARIZONA | DEALER | | |

| Vehicle Type | Body Style | Color | Secondary Color |
|---|---|---|---|
| TRUCK | PICKUP | BLACK | |

| Decal # | NIC | Involvement |
|---|---|---|

Other Identifiers

---

### Registered Owner Info

| Registered Owner Name (Last, First, MI)   ☐ Business | Sex | Race | DOB |
|---|---|---|---|
| NEBOJSA, PETKOVIC | MALE | WHITE | |

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85024 | UNITED STATES OF AMERICA (USA) |

| Insurance Company | Policy Number | Insurance Expiration | Financed By/Titleholder |
|---|---|---|---|
| STATE FARM | 344561303 | | |

---

### Vehicle Elements

☐ Stolen   ☐ Recovered

| Keys in Ignition | Rec'D Affidavit | Windows Closed | Ignition Locked | Trunk Locked | Radio In Car | Repo. Check | Tow List Check | Stolen Value |
|---|---|---|---|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | |

How Vehicle Entered          How Vehicle Taken

| Recovered By | Recovery Date | Recovery Value | Recovery Code |
|---|---|---|---|

| Disposition | Battery in Car | Spare Tire in Car | Owner Notified By Recovering Officer |
|---|---|---|---|
| | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

---

### Recovery Address

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

| ☐ Impounded   ☐ Towed | Tow Report Number | Wrecker Service | Date Reported | Time Reported |
|---|---|---|---|---|



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 | 202200630667 |

| Report Type | | |
|---|---|---|
| Incident Report | Page **8** of **9** | |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| Location Towed From | Location Towed To | Reason for Removal | |
|---|---|---|---|
| Impounded By | Mileage | Tow Operator | Tow Truck Operator Signature |

| Boat Information | | | |
|---|---|---|---|
| Propulsion | Length | Engine Power | Hull Mat | Hull Shape |

### EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001241070 | ITEM | EVIDENCE |

**Description**
LATENT PRINTS COLLECTED BY #A5755 FROM JOSEPH GUTIERREZ

| Property Type | Qty/Unit | Unit of Measure | Brand | |
|---|---|---|---|---|
| OTHER | 2 | DOSAGE UNIT / ITEMS | | |
| Model | Color | Serial Number | | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

NCIC Type

NCIC Code                                                      NCIC Number

Comment

| Impounded Site | Impounded By |
|---|---|
| ANNEX | CAMPBELL,THELMA |

Summary

### EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001241076 | ITEM | SAFEKEEPING |

**Description**
BIOHAZARD BAG CONTAINING:
YELLOW NECKLACE WITH PINK STONES
GRAY RING
BROWN RING

| Property Type | Qty/Unit | Unit of Measure | Brand | |
|---|---|---|---|---|
| JEWELRY / PRECIOUS METALS | 3 | DOSAGE UNIT / ITEMS | | |
| Model | Color | Serial Number | | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

NCIC Type

NCIC Code                                                      NCIC Number

Comment

| Impounded Site | Impounded By |
|---|---|
| ANNEX | CAMPBELL,TERRAN ANDREW |

Summary

**Narrative Information**

## REPORT INFORMATION:

REPORT NUMBER: 2022-630667
DATE: APRIL 26, 2022
TIME RECEIVED: 2006 HOURS
TIME DISPATCHED: 2007 HOURS



PHOENIX POLICE DEPARTMENT (0723)

**Incident Report**

| | |
|---|---|
| Incident Number 202200000630667 | CFS Incident # 202200630667 |
| Report Type Incident Report | Page 9 of 9 |
| Date / Time Occurred 04/26/2022 20:05    to | Date / Time Reported 04/26/2022 20:06 |

TIME ARRIVED: 2009 HOURS
LOCATION: 2550 N 32ND ST

PATROL OFFICERS:

SERGEANT VAZQUEZ #7143
OFFICER RUSSELL #11200- BRIEFING
OFFICER GALLOVICH #10151
OFFICER WOOD #11202

VCU DETECTIVES INVOLVED:

SERGEANT PITTS #5707- VCU SERGEANT
DETECTIVE CAMPBELL #9614- CASE
DETECTIVE MALONE #9687- CASE ASSIST
DETECTIVE DAVIDSON #7038- SCENE
DETECTIVE REED #8859- DRE
DETECTIVE MARQUEZ #10127- ASSIST

FIRE DEPARTMENT UNITS INVOLVED:

PHOENIX FIRE DEPARTMENT
INCIDENT NUMBER 2022-180257
CAPTAIN PETRUCCI
CAPTAIN MARTIN
"B" SHIFT
ENGINE 12
RESCUE 11
RESCUE 13

***SYNOPSIS***

ON APRIL 26, 2022, AT APPROXIMATELY 2005 HOURS, A FATAL TRAFFIC COLLISION OCCURRED IN THE AREA OF 2550 NORTH 32ND STREET. NEBOJSA PETKOVIC WAS DRIVING HIS BLACK 2021 RAM 1500 NORTHBOUND ON 32ND STREET AND STRUCK BOTH DOROTHY CHAMBERS AND JOSEPH GUTIERREZ WHO WERE WALKING EASTBOUND ACROSS 32ND STREET JUST SOUTH OF THE YALE STREET INTERSECTION.

THE PHOENIX FIRE DEPARTMENT RESPONDED AND TRANSPORTED DOROTHY TO THE VALLEYWISE MEDICAL CENTER AND JOSEPH TO THE BANNER UNIVERSITY MEDICAL CENTER WITH LIFE THREATENING INJURIES. DOROTHY WAS PRONOUNCED DECEASED AT 2034 HOURS AND JOSEPH WAS PRONOUNCED DECEASED AT 2130 HOURS.

AT THE TIME OF THIS REPORT, NO NEXT OF KIN HAS BEEN NOTIFIED.

NEBOJSA REMAINED AT THE SCENE AND WAS INTERVIEWED BY DETECTIVES FROM THE VEHICULAR CRIMES UNIT. DURING THE INTERVIEW, AN IMPAIRMENT EVALUATION WAS ADMINISTERED AND NEBOJSA WAS FOUND TO NOT BE IMPAIRED BY ALCOHOL OR DRUGS. NEBOJSA GAVE HIS CONSENT FOR THE EVENT DATA RECORDER IN HIS VEHICLE TO BE IMAGED. NEBOJSA'S VEHICLE WAS RELEASED TO HIM AT THE CONCLUSION OF THE SCENE INVESTIGATION.

AT THE TIME OF THIS REPORT, A RECONSTRUCTION OF THE COLLISION IS UNDERWAY AND THIS CASE IS PENDED UNTIL THE RESULTS OF THE RECONSTRUCTION CAN BE REVIEWED. A DECISION REGARDING ANY CRIMINAL OR CIVIL CHARGES WILL BE MADE AT THE CONCLUSION OF THE INVESTIGATION.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| | |
|---|---|
| Incident Number | CFS Incident # |
| 20220000630667 - 006 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 1 of 1 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code            Damage Value            ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

### Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| T21 | | | |

| Situation Found | Status |
|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | |

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| 2550 N 32ND ST | NO |

### Incident Address

| Street Address |
|---|
| 2550 N 32ND ST |

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85008 | UNITED STATES OF AMERICA (USA) |

### Administrative Info

| Reporting Officer | Serial # |
|---|---|
| DAVIDSON, MICHAEL | 07038 |

Narrative Information

ON APRIL 27, 2022, I WAS ASKED TO CORRECT AN ITEM THAT WAS IMPOUNDED UNDER BARCODE 5101240982. THIS ITEM WAS A SUITCASE FULL OF PERSONAL PROPERTY BELONGING TO ONE OF THE VICTIMS IN THE COLLISION. IT WAS DISCOVERED THE SUITCASE WAS FULL OF PERISHABLE ITEMS TO INCLUDE MEAT AND OTHER FOOD ITEMS. I DISCARDED THOSE ITEMS PURSUANT TO OPERATIONS ORDERS. THE SUITCASE WAS THEN IMPOUNDED.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)
# Incident Report

| | |
|---|---|
| Incident Number 202200000630667 - 013 | CFS Incident # 202200630667 |
| Report Type Incident Supplement | Page 1 of 2 |
| Date / Time Occurred 04/26/2022 20:05 to | Date / Time Reported 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count 2 | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related  Arson Code   Damage Value   ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

## Incident Details

| Squad T21 | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|

| Situation Found RESULTED IN BODY CAMERA ACTIVATION | Status |
|---|---|

Location Given By Dispatcher
N 32ND ST & E YALE ST    Cargo Theft NO

### Incident Address

Street Address
N 32ND ST & E YALE ST

| City PHOENIX | State ARIZONA | Zip 85008 | Country Code UNITED STATES OF AMERICA (USA) |
|---|---|---|---|

### Administrative Info

| Reporting Officer DAVIDSON, MICHAEL | Serial # 07038 |
|---|---|

## EVIDENCE

| Barcode # 51001241896 | Category ITEM | Action SAFEKEEPING |
|---|---|---|

Description
BLACK WALLET AND MISC PAPERS BELONGING TO JOSEPH

| Property Type BACKPACK | Qty/Unit 1 | Unit of Measure EACH | Brand |
|---|---|---|---|

| Model | Color BLACK | Serial Number | Owner Applied Number |
|---|---|---|---|

| Value Per Unit | Total Value | Registration Number | Registration State | Year |
|---|---|---|---|---|

NCIC Type

NCIC Code    NCIC Number

Comment

| Impounded Site ANNEX | Impounded By DAVIDSON,MICHAEL G |
|---|---|

Summary

## EVIDENCE

| Barcode # 51001241897 | Category DRUGS | Action EVID NO AUTO LAB REQUESTS AT THIS TIME |
|---|---|---|

Description
CLEAR BAGGY CONTAINING SUSEPCTED METHAMPHETAMINE

| Type AMPHETAMINES/METHPHETAMINES | Schedule | Form POWDER | Packaging Type PLASTIC BAGS |
|---|---|---|---|

| Package Quantity 1 | Units 8 | Measurement GRAM | Value Per Unit | Total Value 0 |
|---|---|---|---|---|

☐ Clandestine Lab   ☐ Indoor Recovery   Plant Size

Comments
WEIGHT INCLUDES EVIDENCE PACKAGING.  IMPOUND FOR DESTRUCTION

### CSO Details

| Field Drug Test Type | Field Test Date / Time | Instrument Type | Serial Number |
|---|---|---|---|

Field Test Instrument Information

| Scan Number | Field Test / Scan Evidence Date | ☐ Positive |
|---|---|---|

| Impounded Site ANNEX | Impounded By DAVIDSON,MICHAEL G |
|---|---|

Summary

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 013 | 202200630667 |
| Report Type | |
| Incident Supplement | Page **2**    of **2** |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05      to | 04/26/2022 20:06 |

Narrative Information

THIS SUPPLEMENT IS GENERATED TO IMPOUND THE LISTED ITEMS.

Public Narrative

PHOENIX POLICE DEPARTMENT (0723)

**Incident Report**

| Incident Number | | CFS Incident # |
|---|---|---|
| 20220000630667 - 007 | | 202200630667 |
| Report Type | | Page 1 of 3 |
| Incident Supplement | | |
| Date / Time Occurred | | Date / Time Reported |
| 04/26/2022 20:05 to | | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| ☐ Arson Related | Arson Code | | | Damage Value | | ☐ Bias Crime | ☐ Gang Involved | ☐ Domestic Violence |
|---|---|---|---|---|---|---|---|---|

**Incident Details**

| Squad | Clearance Disposition | | Cleared by Exception | | Exceptional Clearance Date |
|---|---|---|---|---|---|
| T21 | | | | | |
| Situation Found | | | Status | | |
| RESULTED IN BODY CAMERA ACTIVATION | | | - | | |
| Location Given By Dispatcher | | | | Cargo Theft | |
| 2550 N 32ND ST | | | | NO | |

**Incident Address**

| Street Address | | | | | |
|---|---|---|---|---|---|
| 2500 N 32ND ST | | | | | |
| City | State | | Zip | Country Code | |
| PHOENIX | ARIZONA | | 85008 | | |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| REED, RAYMOND | 08859 |

**Narrative Information**

ON TUESDAY, APRIL 26, 2022 AT 2049 HOURS, I WAS CONTACTED AT HOME BY SERGEANT PITTS #5707 AND WAS DIRECTED TO ASSIST IN THE INVESTIGATION OF A FATAL TRAFFIC COLLISION WHICH OCCURRED AT 2500 NORTH 32ND STREET.

I ARRIVED AT THE SCENE AT 2133 HOURS FROM THE SOUTH. WHILE WAITING FOR ALL OF THE VEHICULAR CRIMES UNIT (VCU) PERSONNEL TO ARRIVE, I SPOKE WITH THE INVOLVED DRIVER, NEBOJSA PETKOVIC, WHO WAS SEATED IN THE REAR SEAT OF A PATROL VEHICLE, NOT IN HANDCUFFS. AT THAT POINT, IT WAS STILL UNKNOWN WHETHER OR NOT THE INCIDENT WOULD INVOLVE CRIMINAL OR CIVIL CHARGES AGAINST MR. PETKOVIC. AFTER SPEAKING BRIEFLY WITH OFFICERS ON SCENE, I DID LEARN THAT A PRELIMINARY BREATH TEST (PBT) CONDUCTED BY OFFICER BOHATIR #6681 INDICATED MR. PETKOVIC'S BREATH-ALCOHOL CONTENT WAS .031.

*** INTERVIEW WITH NEBOJSA PETKOVIC ***

AT 2141 HOURS, I CONDUCTED AN AUDIO-RECORDED INTERVIEW WITH MR. PETKOVIC IN WHICH HE RELATED THE FOLLOWING INFORMATION:

MR. PETKOVIC WAS THE DRIVER AND SOLE OCCUPANT OF THE INVOLVED BLACK 2021 RAM 1500 TRX PICKUP AND HAD OWNED IT FOR APPROXIMATELY 12 MONTHS. THE TRUCK HAD NO PRE-EXISTING BODY DAMAGE OR MECHANICAL ISSUES. THE TRUCK HAD AFTERMARKET TIRES AND MR. PETKOVIC INDICATED THE SPEEDOMETER WAS CALIBRATED WHEN THE TIRES WERE PUT ON. HE INDICATED THE SPEEDOMETER APPEARED TO ACCURATELY REFLECT THE SPEED AT WHICH HE WAS DRIVING, IN GENERAL. THE TRUCK HAD NO RECENT TRANSMISSION WORK.

THAT EVENING, MR. PETKOVIC HAD JUST EXITED THE LOOP 202 FREEWAY AT 32ND STREET. HE WAS WEARING HIS SEATBELT, THE WINDOWS WERE DOWN SLIGHTLY, AND THE RADIO WAS ON AT A LOW VOLUME. THE TRUCK WAS EQUIPPED WITH AUTOMATIC HEADLIGHTS AND THEY WERE ON. IT WAS DARK OUT AND HE INDICATED THE LIGHTING WAS SIMILAR TO THE LIGHTING AT THE TIME OF OUR INTERVIEW (DARK, SUN FULLY SET, WITH AMBIENT LIGHT FROM STREET AND COMMERCIAL LIGHTING). HE WAS HEADED NORTH ON 32ND STREET, GOING TOWARDS HIS GIRLFRIEND'S HOUSE WHERE HE LIVES. HE DESCRIBED TRAFFIC ON 32ND STREET AS "BUSY", IN GENERAL. HE STATED HIS CELL PHONE WAS CHARGING AND HE WAS NOT USING IT WHILE DRIVING.

MR. PETKOVIC WAS TRAVELING NORTH IN THE CURB LANE. HE INDICATED HE WAS TRAVELING WITH THE FLOW OF TRAFFIC AT APPROXIMATELY 35-40 MILES PER HOUR WHEN HE SUDDENLY NOTICED A SHOPPING CART GOING UP IN THE AIR NEAR HIS PASSENGER SIDE FRONT BUMPER. HE INDICATED HE NEVER SAW THE PEDESTRIANS PRIOR TO THE IMPACT AND THAT THE FIRST INDICATION HE HAD OF THE COLLISION OR AN IMPENDING COLLISION WAS THE SHOPPING CART GOING UP INTO THE AIR. HE IMMEDIATELY PULLED OVER INTO THE PARKING LOT WHERE HIS TRUCK CURRENTLY WAS, AND CALLED 911.

I EXPLAINED TO MR. PETKOVIC THE TYPE OF DATA CONTAINED WITHIN HIS VEHICLE'S EVENT DATA RECORDER. WHEN ASKED FOR HIS PERMISSION TO ALLOW US TO RETRIEVE THIS INFORMATION, HE REPLIED, "OF COURSE.



PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 007 | 202200630667 |
| Report Type | Page 2 of 3 |
| Incident Supplement | |
| Date / Time Occurred 04/26/2022 20:05 to | Date / Time Reported 04/26/2022 20:08 |

YEAH."

MR. PETKOVIC STATED HE HAD NOT HAD ANY ALCOHOL TO DRINK THAT DAY. HE ADDED THAT HE HAD TAKEN DAY-QUIL AT APPROXIMATELY NOON THAT DAY, BUT HAD NO OTHER ALCOHOL TO DRINK. HE DOES NOT USE DRUGS AND WAS NOT TAKING ANY MEDICATION. WHEN I ASKED MR. PETKOVIC WHY THE PBT WOULD INDICATE HE HAD DRANK MORE ALCOHOL THAN SIMPLY A DOSE OF DAY-QUIL SEVERAL HOURS PRIOR, HE STATED HE HAD TAKEN TWO DOSES, AND STILL DENIED ANY OTHER ALCOHOL USE.

HGN: I ADMINISTERED THE HORIZONTAL GAZE NYSTAGMUS (HGN) FIELD SOBRIETY TEST (FST) TO MR. PETKOVIC AT 2151 HOURS AND DID NOT NOTICE ANY CUES OF NYSTAGMUS.

LOC: I ADMINISTERED THE LACK OF CONVERGENCE FST AT 2151 HOURS. BOTH EYES CONVERGED.

WALK AND TURN: I ADMINISTERED THE WALK AND TURN FST TO MR. PETKOVIC AT 2152 HOURS. HE COUNTED THE INSTRUCTIONAL POSITION AS STEP 1 AND THUS ONLY TOOK 8 STEPS OF THE FIRST 9 (INCORRECT NUMBER OF STEPS). HE PERFORMED THE REMAINDER OF THE TEST AS INSTRUCTED.

ROMBERG MODIFIED: I ADMINISTERED THE ROMBERG MODIFIED FST TO MR. PETKOVIC AT 2154 HOURS. HE ESTIMATED THE PASSAGE OF 30 SECONDS IN 26 ACTUAL SECONDS AND EXHIBITED NO CUES.

FOLLOWING MY CONTACT WITH MR. PETKOVIC, I CONCLUDED HE WAS NOT IMPAIRED.

*** INTERVIEW WITH AMIT DONENFELD-PELED ***

AT 2305 HOURS, I CONDUCTED AN INTERVIEW WITH ONE OF THE WITNESSES STILL ON SCENE, MR. DONENFELD-PELED, IN WHICH HE RELATED THE FOLLOWING INFORMATION:

MR. DONENFELD-PELED WAS THE DRIVER OF A MAROON MINIVAN PARKED JUST OUTSIDE THE SCENE. THE ONLY OTHER OCCUPANT OF THE VAN WAS THE FRONT SEAT PASSENGER, BRITTANY CARTER. IT WAS DARK OUT WHEN THE COLLISION OCCURRED. MR. DONENFELD-PELED WAS HEADED NORTH ON 32ND STREET IN THE MIDDLE LANE AT APPROXIMATELY 40 MILES PER HOUR WHEN THE INVOLVED BLACK TRUCK PASSED HIM ON THE RIGHT (CURB LANE) AT WHAT HE ESTIMATED TO BE 55-60 MILES PER HOUR. PRIOR TO THAT, MR. DONENFELD-PELED NOTICED THE TRUCK WAS "ZIG-ZAGGING" BETWEEN CARS.

AS HE APPROACHED THE AREA WHERE THE COLLISION ULTIMATELY OCCURRED, THE VEHICLE TO MR. DONENFELD-PELED'S LEFT, IN THE #1 LANE, BEGAN SLOWING DOWN. MR. DONENFELD-PELED COULD NOT SEE WHY THE VEHICLE WAS SLOWING DOWN, BUT MR. DONENFELD-PELED BEGAN SLOWING DOWN HIMSELF IN RESPONSE TO THAT VEHICLE SLOWING. AS HE MOVED FORWARD, HE INDICATED THAT THE VEHICLE IN THE #1 LANE HAD BEEN BLOCKING HIS VIEW OF WHAT HE COULD NOW SEE WERE TWO PEDESTRIANS CROSSING THE STREET FROM WEST TO EAST. MR. DONENFELD-PELED BEGAN SLOWING HIS VEHICLE, WHICH HAD BEEN SET AT 40 MPH ON CRUISE CONTROL AND IT WAS AT APPROXIMATELY THIS TIME THAT THE BLACK TRUCK PASSED BY HIM IN THE CURB LANE. WHEN ASKED IF THE PEDESTRIANS WERE WALKING, JOGGING, RUNNING, ETC., HE INDICATED THEY WERE WALKING, SOMEWHAT SLOWLY. HE DID NOT SEE WHETHER OR NOT THE PEDESTRIANS WERE LOOKING FOR ONCOMING TRAFFIC.

I ASKED MR. DONENFELD-PELED, IN HIS OPINION, IF HE FELT AS THOUGH THE DRIVER OF THE BLACK TRUCK SHOULD HAVE BEEN ABLE TO SEE THE PEDESTRIANS AFTER HE PASSED BY HIS MINIVAN. HE REPLIED THAT HAD THE DRIVER BEEN GOING A NORMAL SPEED, HE WOULD HAVE BEEN ABLE TO SEE THEM. HE COULD NOT RECALL IF THE HEADLIGHTS OF THE TRUCK WERE ON.

*** INTERVIEW WITH BRITTANY CARTER ***

AT 2312 HOURS, I CONDUCTED AN AUDIO-RECORDED INTERVIEW WITH MS. CARTER IN WHICH SHE RELATED THE FOLLOWING INFORMATION:

MS. CARTER WAS A PASSENGER IN THE MAROON MINIVAN MR. DONENFELD-PELED WAS DRIVING. IT WAS DARK

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 007 | 202200630667 |

| Report Type | | |
|---|---|---|
| Incident Supplement | Page 3 | of 3 |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 04/26/2022 20:05     to | 04/26/2022 20:06 |

OUT WHEN THE COLLISION OCCURRED. THEY WERE HEADED NORTH ON 32ND STREET IN THE CURB LANE. THE INVOLVED BLACK TRUCK WAS ALSO TRAVELING NORTH, AHEAD OF THE MINIVAN, IN THE SAME LANE. MS. CARTER DID NOT THINK THE BLACK TRUCK EVER PASSED THEM. MS. CARTER ESTIMATED THEIR OWN SPEED TO BE 40-45 MILES PER HOUR AND THE SPEED OF THE TRUCK TO BE 50-55 MILES PER HOUR. MS. CARTER DID NOT RECALL ANY VEHICLES BEING IN THE #1 OR #2 LANES. SHE NOTICED THE INVOLVED PEDESTRIANS APPROXIMATELY 5 SECONDS PRIOR TO THE IMPACT. THIS WAS ABOUT THE TIME SHE TOOK NOTICE OF THE BLACK TRUCK AS WELL AND RECALLED THINKING TO HERSELF THE TRUCK WAS GOING TOO FAST TO STOP IN TIME. SHE ADDED THAT THE TRUCK APPEARED TO BREAK AND ATTEMPT TO SWERVE SHORTLY BEFORE IMPACT, BUT WAS NOT ABLE TO AVOID STRIKING THE PEDESTRIANS. SHE NEVER SAW THE TRUCK SWERVING OR WEAVING IN AND OUT OF TRAFFIC PRIOR TO THAT POINT. MS. CARTER BELIEVED THE PEDESTRIANS WERE CROSSING 32ND STREET FROM EAST TO WEST.

WHEN ASKED WHAT SHE WAS DOING WHEN SHE OBSERVED WHAT HAPPENED, MS. CARTER INDICATED SHE WAS TALKING WITH MR. DONENFELD-PELED AND THAT SHE MIGHT HAVE MADE HER OBSERVATIONS OUT OF HER PERIPHERAL VISION.

THIS CONCLUDED MY INVOLVEMENT IN THIS INCIDENT.

Public Narrative



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 - 005 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 1 of 4 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:06 to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 9 | | |

☐ Arson Related  Arson Code    Damage Value   ☐ Bias Crime  ☐ Gang Involved  ☐ Domestic Violence

| Incident Details | | |
|---|---|---|
| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
| 72F | | | |
| Situation Found | | Status |
| RESULTED IN BODY CAMERA ACTIVATION | | |
| Location Given By Dispatcher | | Cargo Theft |
| N 32ND ST AND E YALE STREET | | NO |

| Incident Address | | |
|---|---|---|
| Street Address | | |
| N 32ND ST AND E YALE STREET | | |
| City | State | Zip   Country Code |
| PHOENIX | | |

| Administrative Info | |
|---|---|
| Reporting Officer | Serial # |
| MARQUEZ, GABRIEL | 10127 |

## EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001240979 | CURRENCY | SAFEKEEPING |

Description
CURENCY FOUND IN PEDESTRIAN'S PROPERTY

| Denomination | Quantity | Value | Counting Officer |
|---|---|---|---|
| 20 DOLLAR BILL | 4 | $80.00 | MARQUEZ,GABRIEL MICHAEL |
| Verifying Officer | | Date Counted On | Date Verified On |
| DAVIDSON,MICHAEL G | | 4/27/2022 | 4/27/2022 |
| Remarks | | | |

| Denomination | Quantity | Value | Counting Officer |
|---|---|---|---|
| 5 DOLLAR BILL | 8 | $40.00 | MARQUEZ,GABRIEL MICHAEL |
| Verifying Officer | | Date Counted On | Date Verified On |
| DAVIDSON,MICHAEL G | | 4/27/2022 | 4/27/2022 |
| Remarks | | | |

| Denomination | Quantity | Value | Counting Officer |
|---|---|---|---|
| 1 DOLLAR BILL | 7 | $7.00 | MARQUEZ,GABRIEL MICHAEL |
| Verifying Officer | | Date Counted On | Date Verified On |
| DAVIDSON,MICHAEL G | | 4/27/2022 | 4/27/2022 |
| Remarks | | | |

| Impounded Site | Impounded By |
|---|---|
| ANNEX | MARQUEZ,GABRIEL MICHAEL |

Summary

## EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001240982 | ITEM | SAFEKEEPING |

Description
SUITCASE BLACK

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| LUGGAGE | 1 | | |
| Model | Color | Serial Number | Owner Applied Number |
| | | | |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |
| | | | | |

| NCIC Type | | |
|---|---|---|
| NCIC Code | | NCIC Number |

Comment



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| | |
|---|---|
| Incident Number 20220000630667 - D05 | CFS Incident # 202200630667 |
| Report Type Incident Supplement | Page **2** of **4** |
| Date / Time Occurred 04/26/2022 20:06    to | Date / Time Reported 04/26/2022 20:06 |

| Impounded Site ANNEX | Impounded By MARQUEZ,GABRIEL MICHAEL |
|---|---|

**Summary**

**EVIDENCE**

| Barcode # 51001240983 | Category ITEM | Action SAFEKEEPING |
|---|---|---|

**Description**
BLUE LUGAGE

| Property Type LUGGAGE | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

**NCIC Type**

| NCIC Code | | NCIC Number |
|---|---|---|

**Comment**

| Impounded Site ANNEX | Impounded By MARQUEZ,GABRIEL MICHAEL |
|---|---|

**Summary**

**EVIDENCE**

| Barcode # 51001240984 | Category ITEM | Action SAFEKEEPING |
|---|---|---|

**Description**
BLACK TRASHBAG CONTAINING MISCELANIOUS CLOTHING PROPERTY OF PEDESTRIAN

| Property Type OTHER | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

**NCIC Type**

| NCIC Code | | NCIC Number |
|---|---|---|

**Comment**

| Impounded Site ANNEX | Impounded By MARQUEZ,GABRIEL MICHAEL |
|---|---|

**Summary**

**EVIDENCE**

| Barcode # 51001240985 | Category ITEM | Action SAFEKEEPING |
|---|---|---|

**Description**
BLACK TRASHBAG CONTAINING MISCELANIOUS CLOTHING PROPERTY OF PEDESTRIAN

| Property Type OTHER | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

**NCIC Type**



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 – 005 | 202200630667 |
| Report Type | Page **3** of **4** |
| Incident Supplement | |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:06   to | 04/26/2022 20:06 |

| NCIC Code | NCIC Number |
|---|---|

| Comment | |
|---|---|

| Impounded Site | Impounded By |
|---|---|
| ANNEX | MARQUEZ,GABRIEL MICHAEL |

Summary

**EVIDENCE**

| Barcode # | Category | Action |
|---|---|---|
| 51001240986 | ITEM | SAFEKEEPING |

| Description |
|---|
| BLACK TRASHBAG CONTAINING MISCELANIOUS CLOTHING PROPERTY OF PEDESTRIAN |

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| OTHER | | | |
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

| NCIC Type | |
|---|---|
| NCIC Code | NCIC Number |

| Comment | |
|---|---|

| Impounded Site | Impounded By |
|---|---|
| ANNEX | MARQUEZ,GABRIEL MICHAEL |

Summary

**EVIDENCE**

| Barcode # | Category | Action |
|---|---|---|
| 51001240987 | ITEM | SAFEKEEPING |

| Description |
|---|
| BLACK TRASHBAG CONTAINING MISCELANIOUS CLOTHING PROPERTY OF PEDESTRIAN |

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| OTHER | | | |
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |

| NCIC Type | |
|---|---|
| NCIC Code | NCIC Number |

| Comment | |
|---|---|

| Impounded Site | Impounded By |
|---|---|
| ANNEX | MARQUEZ,GABRIEL MICHAEL |

Summary

**EVIDENCE**

| Barcode # | Category | Action |
|---|---|---|
| 51001240988 | ITEM | SAFEKEEPING |

| Description |
|---|
| BLACK TRASHBAG CONTAINING MISCELANIOUS CLOTHING PROPERTY OF PEDESTRIAN |

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| OTHER | | | |
| Model | Color | Serial Number | Owner Applied Number |
| Value Per Unit | Total Value | Registration Number | Registration State | Year |



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| Incident Number | CFS Incident # |
| --- | --- |
| 202200000630667 – 005 | 202200630667 |

| Report Type | Page 4 of 4 |
| --- | --- |
| Incident Supplement | |

| Date / Time Occurred | Date / Time Reported |
| --- | --- |
| 04/26/2022 20:06    to | 04/26/2022 20:06 |

| NCIC Type | |
| --- | --- |
| NCIC Code | NCIC Number |
| Comment | |

| Impounded Site | Impounded By |
| --- | --- |
| ANNEX | MARQUEZ,GABRIEL MICHAEL |
| Summary | |

**EVIDENCE**

| Barcode # | Category | Action |
| --- | --- | --- |
| 51001240989 | ITEM | SAFEKEEPING |

| Description |
| --- |
| UMBRELLA |

| Property Type | Qty/Unit | Unit of Measure | Brand |
| --- | --- | --- | --- |
| OTHER | | | |

| Model | Color | Serial Number | Owner Applied Number |
| --- | --- | --- | --- |

| Value Per Unit | Total Value | Registration Number | Registration State | Year |
| --- | --- | --- | --- | --- |

| NCIC Type | |
| --- | --- |
| NCIC Code | NCIC Number |
| Comment | |

| Impounded Site | Impounded By |
| --- | --- |
| ANNEX | MARQUEZ,GABRIEL MICHAEL |
| Summary | |

**Narrative Information**

SUPPLEMENT GENERATED TO IMPOUND FOR SAFEKEEPING THE PROPERTY OF THE PEDESTRIANS STRUCK IN THE COLLISION.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| Incident Number | | CFS Incident # |
|---|---|---|
| 202200000630667 - 011 | | 202200630667 |
| Report Type | | Page 1 of 2 |
| Incident Supplement | | |
| Date / Time Occurred | | Date / Time Reported |
| 04/26/2022 20:05 to | | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code       Damage Value   ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

**Incident Details**

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

| Situation Found | Status |
|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | |

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| N 32ND ST & E YALE ST | NO |

**Incident Address**

| Street Address |
|---|
| N 32ND ST & E YALE ST |

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85008 | UNITED STATES OF AMERICA (USA) |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| GALLOVICH. AREN | 10151 |

**Narrative Information**

THIS SUPPLEMENT IS BEING GENERATED TO DOCUMENT MY INVOLVEMENT WITH THIS INCIDENT.

***NARRATIVE***

ON APRIL 26, 2022, OFFICER WOOD #11202 AND I WERE RIDING AS A TWO MAN UNIT. AT APPROXIMATELY 2006 HOURS WE WERE DISPATCHED TO THE AREA OF 3200 EAST YALE STREET IN REFERENCE TO A VEHICLE COLLISION WITH INJURIES. WHILE EN-ROUTE TO THE CALL WE WERE INFORMED THAT A TRUCK HAD COLLIDED WITH TWO PEOPLE AND THAT BOTH PEOPLE WHERE DOWN IN THE ROADWAY AND NOT GETTING UP. AT APPROXIMATELY 2018 HOURS WE ARRIVED AT 3200 EAST YALE STREET. UPON OUR ARRIVAL I NOTICED THAT THERE WAS A BLACK IN COLOR SEDAN PARKED DIRECTLY NEXT TO A UNKNOWN BLACK FEMALE WHO WAS LAYING PARTIALLY IN THE ROADWAY AND PARTIALLY ON THE SIDEWALK JUST NORTH OF 3200 EAST YALE STREET. WE THEN PARKED OUR VEHICLE AT 3200 EAST YALE IN ATTEMPT TO STOP TRAFFIC FROM TRAVELING NORTH BOUND ON 32ND STREET. AS I EXITED OUR VEHICLE I WAS ABLE TO SEE THAT THERE WAS ANOTHER UNKNOWN WHITE OR HISPANIC MALE LAYING PARTIALLY IN THE ROADWAY AND PARTIALLY ON THE SIDEWALK APPROXIMATELY 50 FEET NORTH OF THE UNKNOWN FEMALE. AT THIS POINT I DIRECT OFFICER WOOD TO ASSIST THE UNKNOWN MALE WHILE I ASSISTED THE UNKNOWN FEMALE. AS I APPROACHED THE FEMALE I NOTICED SHE IN THE FETAL POSITION ON HER SIDE. I SAW THAT THERE WAS LARGE POOL OF BLOOD THAT APPEARED TO BE THICK AND BRIGHT RED WITH YELLOW CHUNKS (WHICH APPEARED TO BE BRAIN MATTER) IN IT. AT THIS POINT I BEGAN TO CHECK FOR SIGNS OF LIFE AND WAS UNABLE TO FEEL A PULSE WHILE CHECKING THE SUBJECT. ONCE BEING UNABLE TO FIND A PULSE ON THE FEMALE I PLACED HER ON HER BACK AND BEGAN LIFE SAVING MEASURES UNTIL PHOENIX FIRE ARRIVED.

UPON PHOENIX FIRE RENDERING AID I ATTEMPTED TO LOCATE POSSIBLE WITNESS.

***INTERVIEW WITH CHRISTINE JONES***

CHRISTINE STATED THE FOLLOWING INFORMATION;

CHRISTINE STATED THAT ON APRIL 27, 2022, AT APPROXIMATELY 2005 HOURS SHE WAS DRIVING NORTHBOUND ON 32ND STREET PASSING YALE STREET WHEN SHE NOTICED THAT THERE WAS MULTIPLE SHOPPING CARTS IN THE ROADWAY. AT THIS POINT CHRISTINE BEGAN TO SLOW DOWN TO ASSIST WITH PICKING UP BELONGINGS. ONCE SHE EXITED HER VEHICLE SHE NOTICED THAT SHE HAD CAME TO STOP DIRECTLY NEXT TO A BLACK FEMALE WHO LOOKED LIKE SHE WAS IN NEED OF EMERGENCY MEDICAL SERVICES.

***CONCLUSION***

NOTHING FURTHER TO REPORT AT THIS TIME.

Public Narrative

PHOENIX POLICE DEPARTMENT (0723)

# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 20220000630667 - 011 | 202200630667 |
| **Report Type** | |
| Incident Supplement | Page **2** of **2** |
| **Date / Time Occurred** | **Date / Time Reported** |
| 04/26/2022 20:05 to | 04/26/2022 20:06 |



PHOENIX POLICE DEPARTMENT (0723)
## Incident Report

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 – 004 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 1 of 1 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:06 to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 1 | | |

☐ Arson Related   Arson Code

Damage Value    ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

### Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

Situation Found    Status
RESULTED IN BODY CAMERA ACTIVATION

Location Given By Dispatcher    Cargo Theft
N 32ND ST AND E YALE STREET    NO

### Incident Address

Street Address
N 32ND ST AND E YALE STREET

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | | | |

### Administrative Info

| Reporting Officer | Serial # |
|---|---|
| DAVIDSON, MICHAEL | 07038 |

### EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001240978 | ITEM | EVIDENCE |

Description
MISC BLACK CLOTHING ITEMS FOUND AT THE VICTIM'S POINT OF REST AND WITHIN THE DEBRIS FIELD.

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| CLOTHES / FURS | 1 | | |

| Model | Color | Serial Number | Owner Applied Number |
|---|---|---|---|
| | | | |

| Value Per Unit | Total Value | Registration Number | Registration State | Year |
|---|---|---|---|---|
| | | | | |

| NCIC Type | | |
|---|---|---|
| NCIC Code | | NCIC Number |

Comment

| Impounded Site | Impounded By |
|---|---|
| ANNEX | DAVIDSON,MICHAEL G |

Summary

Narrative Information
SUPPLEMENT GENERATED TO IMPOUND THE LISTED ITEMS OF EVIDENCE

Public Narrative

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 - 009 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 1 of 1 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05   to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code    Damage Value   ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

**Incident Details**

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

| Situation Found | Status |
|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | |

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| N 32ND ST & E YALE ST | NO |

**Incident Address**

| Street Address | | | |
|---|---|---|---|
| N 32ND ST & E YALE ST | | | |
| City | State | Zip | Country Code |
| PHOENIX | ARIZONA | 85008 | UNITED STATES OF AMERICA (USA) |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| SCROGGINS, TIEQUON | 11215 |

Narrative Information

THIS SUPPLEMENT IS IN REFERENCE TO INCIDENT NUMBER 202200000630667.

ON 04/26/2022 AT APPROXIMATELY 2020 HOURS WHILE RIDING AS THE TWO MAN UNIT OF 726I, OFFICER HITZEL #10879 RESPONDED TO THE VALLEYWISE HOSPITAL LOCATED AT 2601 EAST ROOSEVELT PHOENIX ARIZONA IN ORDER TO PROVIDE AN UPDATE ON LIFE THREATENING INJURIES FOR THE UNKNOWN FEMALE SUBJECT TRANSPORTED BY RESCUE #11. THE UNKNOWN AFRICAN AMERICAN FEMALE SUBJECT WAS PRONOUNCED DECEASED AT APPROXIMATELY 2034 HOURS, BY DR. MCCABE MRN#0106355712.

I THEN ADVISED MY SUPERVISOR SERGEANT VASQUEZ #7143.

WE THEN HEADED TO BANNER GOOD SAMARITAN HOSPITAL LOCATED AT 1111 EAST MCDOWELL ROAD PHOENIX ARIZONA TO RELIEVE OFFICERS HYNES #09029 AND MIKAC #09351, UPON OUR ARRIVAL WE WERE ADVISED THAT THE SUBJECT TRANSPORTED TO BANNER GOOD SAMARITAN BY PATROL #13 WAS PRONOUNCED DECEASED AT APPROXIMATELY 2130 HOURS. WE WAITED WITH THE BODY UNTIL IT WAS TRANSPORTED TO THE MORGUE.

THIS CONCLUDES MY INVOLVEMENT IN THIS INCIDENT.

Public Narrative



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 014 | 202200630667 |
| Report Type | Page 1 of 2 |
| Incident Supplement | |
| Date / Time Occurred | Date / Time Reported |
| to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons 1 | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related | Arson Code | Damage Value | ☐ Bias Crime | ☐ Gang Involved | ☐ Domestic Violence

### Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| T21 | | | |

| Situation Found | Status |
|---|---|

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| N 32ND ST & E YALE ST | |

### Incident Address

| Street Address |
|---|
| N 32ND ST & E YALE ST |

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | | |

### Administrative Info

| Reporting Officer | Serial # |
|---|---|
| CAMPBELL, TERRAN | 09614 |

**OTHER PERSON** | Person Type: **NEXT OF KIN**

| Name (Last, First Middle) | | | Suffix |
|---|---|---|---|
| DALE, ROBERT LOUIS | | | |

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|
| | | BLACK | MALE | | 53 | 69 | to |

Can Identify Suspect?

| Height | Weight | Driver's License # | DL State | | | |
|---|---|---|---|---|---|---|
| 9'06" | 165 | | ARIZONA | | | |

| Place of Birth | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|
| | | NON-HISPANIC | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|
| SURPRISE | ARIZONA | 85388 | |

### Employment Information

| Employer / School | Occupation |
|---|---|

☐ Student | ☐ Homeless

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|

### Details

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|
| | | BLACK | | |

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|
| BROWN | | | | |

| Resident | Teeth |
|---|---|
| NOT PHOENIX RESIDENT | |

### Gang Information

| ☐ Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|

| Primary Gang Location Info | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|

| ☐ Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|

| Secondary Gang Location | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| | |
|---|---|
| Incident Number<br>20220000630667 - 014 | CFS Incident #<br>202200630667 |
| Report Type<br>Incident Supplement | Page 2 of 2 |
| Date / Time Occurred<br>to | Date / Time Reported<br>04/26/2022 20:06 |

| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclamation | ☐ Witness Testimony/Statement | ☐ Written/Electronic Correspondance |
|---|---|---|---|---|---|

Other

**Guardian Information**

| ☐ Guardian Notified | Guardian Notified By | Notified Method | Guardian Notified On |
|---|---|---|---|

| Guardian Of | Guardian Relationship |
|---|---|

Narrative Information

THIS SUPPLEMENT IS BEING GENERATED TO LIST NEXT OF KIN FOR DOROTHY CHAMBERS.

ON MAY 6, 2022, AT APPROXIMATELY 0729 HOURS, I SPOKE WITH A MALE WHO IDENTIFIED HIMSELF AS ROBERT DALE. ROBERT STATED THAT HE IS DOROTHY'S BROTHER AND WAS NOTIFIED OF THE INCIDENT FROM PEOPLE AT THE PARK THAT KNEW DOROTHY. ROBERT'S CONTACT INFORMATION WAS PROVIDED TO THE OFFICE OF THE MEDICAL EXAMINER.

NOTHING FURTHER.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 012 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 1 of 2 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05 to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| ☐ Arson Related | Arson Code | | | Damage Value | | ☐ Bias Crime | ☐ Gang Involved | | ☐ Domestic Violence |
|---|---|---|---|---|---|---|---|---|---|

| Incident Details | | | | |
|---|---|---|---|---|
| Squad | Clearance Disposition | | Cleared by Exception | Exceptional Clearance Date |
| T21 | | | | |
| Situation Found | | | Status | |
| RESULTED IN BODY CAMERA ACTIVATION | | | | |
| Location Given By Dispatcher | | | Cargo Theft | |
| N 32ND ST & E YALE ST | | | NO | |

| Incident Address | | | | |
|---|---|---|---|---|
| Street Address | | | | |
| N 32ND ST & E YALE ST | | | | |
| City | State | | Zip | Country Code |
| PHOENIX | ARIZONA | | 85008 | UNITED STATES OF AMERICA (USA) |

| Administrative Info | |
|---|---|
| Reporting Officer | Serial # |
| MALONE, JENNIFER | 09687 |

**Narrative Information**

****NOTIFICATION TO RESPOND****

ON APRIL 26, 2022 AT 2049 HOURS, VEHICULAR CRIMES UNIT SUPERVISOR, SERGEANT PITTS #5707, CONTACTED ME AND REQUESTED I ASSIST IN THE INVESTIGATION OF A FATAL TRAFFIC COLLISION IN THE AREA OF 2550 NORTH 32ND STREET.

I ARRIVED AT THE SCENE FROM THE SOUTH AT 2130 HOURS AND OBSERVED THE SCENE BLOCKED OFF BY FULLY MARKED PATROL UNITS AND UNIFORMED PATROL OFFICERS. OFFICERS WERE USING YELLOW CRIME SCENE TAPE, FLARES, AND CONES TO RE-DIRECT VEHICULAR AND PEDESTRIAN TRAFFIC FROM THE SCENE.

I PARKED MY CITY VEHICLE ON THE SOUTH SIDE OF THE SCENE AND ENTERED ON FOOT.

****BRIEFING****

WE WERE BRIEFED BY OFFICER IN TRAINING RUSSELL #11200, WHO PROVIDED US WITH BIOGRAPHICAL INFORMATION FOR THE PEOPLE INVOLVED, VEHICLE INFORMATION, AND WHAT WAS KNOWN AT THE TIME.

DURING BRIEFING I LEARNED THAT TWO PEDESTRIANS WERE STRUCK BY A TRUCK IN THE ROADWAY. BOTH PEDESTRIANS WERE TRANSPORTED TO SEPARATE HOSPITALS AND PRONOUNCED DECEASED.

SERGEANT PITTS ASSIGNED ME TO ASSIST DETECTIVE CAMPBELL #9614 WITH THE RESPONSIBILITY OF CASE AGENT.

AT THE CONCLUSION OF THE BRIEFING I WENT TO MARICOPA COUNTY HOSPITAL WITH DETECTIVE CAMPBELL TO PERFORM FOLLOW UP.

****MARICOPA COUNTY HOSPITAL****

UPON ARRIVAL TO THE HOSPITAL WE CONTACTED SECURITY WHO ESCORTED US TO THE MORGUE. THE FEMALE PEDESTRIAN INVOLVED IN THE COLLISION HAD BEEN MOVED DOWN THERE AND WAS STILL UNIDENTIFIED. USING THE PORTABLE DIGITAL FINGER PRINT SCANNER, WE SCANNED BOTH INDEX FINGERS. A HIT CAME BACK TO THE NAME, DOROTHY JEAN DALE. I CONDUCTED A RECORDS SEARCH USING THIS NAME AND DID NOT LOCATE A MVD WITH THAT NAME. USING KNOWN DATABASES I LEARNED THAT DOROTHY'S HAD ANOTHER LAST NAME OF "CHAMBERS". I DID A RECORD SEARCH ON THIS NAME AND LOCATED A MVD PHOTOGRAPH. I VIEWED THE PHOTOGRAPH WITH DETECTIVE CAMPBELL AND WE BOTH CONFIRMED THE DECEASED PEDESTRIAN WAS DOROTHY JEAN CHAMBERS, AKA DOROTHY JEAN DALE.

AFTER IDENTIFYING THE FEMALE AT THE MARICOPA COUNTY HOSPITAL, WE WENT TO BANNER UNIVERSITY MEDICAL CENTER TO IDENTIFIED THE INVOLVED MALE PEDESTRIAN.



PHOENIX POLICE DEPARTMENT (0723)

**Incident Report**

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 - 012 | 202200630667 |
| Report Type | |
| Incident Supplement | Page 2 of 2 |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:05    to | 04/26/2022 20:06 |

****BANNER UNIVERSITY MEDICAL CENTER****

UPON ARRIVAL TO THE HOSPITAL WE CONTACTED SECURITY WHO ESCORTED US TO THE MORGUE WHERE THE MALE PEDESTRIAN WAS. USING THE PORTABLE DIGITAL FINGER PRINT SCANNER, WE SCANNED BOTH INDEX FINGERS, THERE WAS NO HIT ON THE FINGERPRINTS.

USING KNOWN DATABASES, I CONDUCTED A RECORD SEARCH OF ASSOCIATES OF DOROTHY CHAMBERS. I LOCATED A MALE BY THE NAME OF JOSEPH GUTIEREZ, I VIEWED THE MVD PHOTOGRAPH AND OBSERVED THE DECEASED MALE RESEMBLED JOSEPH.

DETECTIVE CAMPBELL CALLED A CRIME SCENE TECHNICIAN TO RESPOND TO THE HOSPITAL TO INK PRINT THE UNKNOWN DECEASED MALE TO CONFIRM HIS IDENTITY.

AFTER THE CRIME SCENE TECH PRINTED THE MALE WE TOOK THE PRINTS TO SOUTHERN COMMAND STATION TO BE EXAMINED BY A FINGERPRINT TECHNICIAN. THE TECHNICIAN CONFIRMED THE DECEASED MALE WAS JOSEPH GUTIEREZ, SHE PROVIDED THIS INFORMATION TO DETECTIVE CAMPBELL.

****NEXT OF KIN****

AFTER IDENTIFYING THE PEDESTRIANS, WE ATTEMPTED TO CONTACT A NEXT OF KIN. WE WENT TO JOSEPH'S LISTED ADDRESS, BUT WERE UNABLE TO LOCATE ANYONE.

USING KNOWN DATABASES I DID A RECORD SEARCH ON JOSEPH. I LOCATED A POSSIBLE NEXT OF KIN AND PROVIDED THIS INFORMATION TO DETECTIVE CAMPBELL.

THIS CONCLUDED MY INVOLVEMENT IN THIS CASE

#9687
Public Narrative



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202200000630667 - 010 | 202200630667 |

| Report Type | Page |
|---|---|
| Incident Supplement | 1 of 2 |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| to | 04/25/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons 1 | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| Arson Related | Arson Code | | Damage Value | Bias Crime | Gang Involved | Domestic Violence |
|---|---|---|---|---|---|---|

## Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|

| Situation Found | | Status |
|---|---|---|

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| N 32ND ST & E YALE ST . | NO |

## Incident Address

| Street Address |
|---|
| N 32ND ST & E YALE ST |

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | | |

## Administrative Info

| Reporting Officer | Serial # |
|---|---|
| GARCIA, FRANCISCO | 09705 |

| OTHER PERSON | Person Type |
|---|---|
| | WITNESS |

| Name (Last, First Middle) | | | | | Suffix |
|---|---|---|---|---|---|
| SANCHEZ, ABRYENNA DESIREE | | | | | |

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range |
|---|---|---|---|---|---|---|---|
| | | BLACK | FEMALE | | 98 | 24 | to |

| Height | Weight | Driver's License # | DL State | | Can Identify Suspect? | |
|---|---|---|---|---|---|---|
| 5'08" | 185 | N731 | ARIZONA | | | |

| Place of Birth | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|
| | | UNKNOWN | |

| ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

## Other Person Home Address

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85019 | |

## Employment Information

| Student | Homeless | Employer / School | Occupation |
|---|---|---|---|
| | | | AMBULANCE DRIVER |

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|

## Details

| Work Phone | Hours of Employment | Hair Color | Hair Length | Glasses |
|---|---|---|---|---|
| | | BROWN | | |

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|
| BROWN | | | | |

| Resident | Teeth |
|---|---|

## Gang Information

| Primary Gang | Primary Gang Name | Primary Gang Membership Info |
|---|---|---|

| Primary Gang Location Info | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|

| Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|

| Secondary Gang Location | Rival Gang Name |
|---|---|

| Colors/Logos |
|---|



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 - 010 | 202200630667 |
| Report Type | |
| Incident Supplement | Page **2** of **2** |
| Date / Time Occurred | Date / Time Reported |
| to | 04/26/2022 20:06 |

| | | | | | |
|---|---|---|---|---|---|
| ☐ Clothing or Colors | ☐ Gang Tattoos | ☐ Paraphernalia or Photographs | ☐ Self Proclomation | ☐ Witness Testimony/Statement | ☐ Written/Electonic Correspondance |

Other

### Guardian Information

| | | | |
|---|---|---|---|
| ☐ Guardian Notified | Guardian Notified By | Notified Method | Guardian Notified On |
| Guardian Of | | Guardian Relationship | |

Narrative Information

THIS SUPPLEMENT WAS GENERATED TO DOCUMENT MY INVOLVEMENT IN THE INCIDENT. ALSO TO ATTACH MY WITNESS, ABRYENNA DESIREE SANCHEZ.

ON APRIL 26, 2022, AT APPROXIMATELY 2007 HOURS, OFFICER LARA 10101 AND I RESPONDED TO EMERGENCY RADIO CALL FOR SERVICE REFERENCE AN ACCIDENT WITH INJURIES IN THE AREA OF N 32NS STREET AND E YALE STREET.

INFORMATION ON THE CALL RELATED VEHICLE STRUCK TWO PEDESTRIANS AND WERE LYING ON THE GROUND.

WE ARRIVED AND CONDUCTED TRAFFIC CONTROL BY BLOCKING SOUTHBOUND TRAFFIC. OFFICER LARA AND I RAN TOWARDS THE A WHITE MALE WHO WAS LYING ON THE GROUND. A FEMALE, WHO WAS AN ARM AMBULANCE DRIVER, ABRYENNA DESIREE SANCHEZ WAS ON SCENE AND STATED HE HAD VITALS. I APPROACHED THE MALE AND OBSERVED HIM MORNING.

FIRE NGINE 12, CAPTAIN SMITCH, B SIFT INCIDENT # 22180257 ARRIVED. RESCUE 13 TRANSPORTED THE MALE TO GOOD SAMARATIN HOSPITAL FOR HIS INJURIES.

I LATER SPOKE TO ABRYENNA DESIREE SANCHEZ, WHO RELATED THE FOLLOW:

SHE AND HER CO-WORKER WERE EXITING THE KING WONG RESTAURANT LOCATED IN ▮▮▮▮▮▮▮▮▮▮▮, AT APPROXIMATELY 2015 HOURS. WHEN SHE OBSERVED A VEHICLE WITH THEIR HAZARDS ON AND TWO PEOPLE LYING ON THE GROUND. SHE APPROACHED THE MALE SUBJECT AND CHECKED HIS VITALS. SHE STATED HE HAD A PULSE AND THE MALES PUPILS WHERE WERE NOT REACTING.

HER ABULANCE UNIT NUMBER WAS 421.

NO FURTHER INFORMATION.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| | |
|---|---|
| Incident Number | CFS Incident # |
| 202200000630667 - 001 | 202200630667 |
| Report Type | Page 1 of 1 |
| Incident Supplement | |
| Date / Time Occurred | Date / Time Reported |
| 04/26/2022 20:06   to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

| Arson Related | Arson Code | | Damage Value | | Bias Crime | Gang Involved | Domestic Violence |
|---|---|---|---|---|---|---|---|

**Incident Details**

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

| Situation Found | | Status | |
|---|---|---|---|

| Location Given By Dispatcher | | Cargo Theft |
|---|---|---|
| | | NO |

**Incident Address**

| Street Address | | | |
|---|---|---|---|
| 3200 E YALE ST | | | |
| City | State | Zip | Country Code |
| PHOENIX | ARIZONA | 85008 | |

**Administrative Info**

| Reporting Officer | Serial # |
|---|---|
| WESSON, ANDRE | 09696 |

Narrative Information

THIS SUPPLEMENT IS BEING GENERATED REGARDING MY INVOLVEMENT DURING THIS INVESTIGATION.

ON 04/26/2022, APPROXIMATELY 2010 HOURS, I RESPONDED TO EMERGENCY TRAFFIC OF A REPORTED ACCIDENT WITH INJURIES AT 32ND STREET AND YALE.

WHILE EN ROUTE, THE DETAILS OF THE CALL STATED THERE WAS TWO PEDESTRIANS HIT BY A TRUCK.

WHILE EN ROUTE, I OBSERVED TWO PEOPLE NOT MOVING IN THE CURB LANE. DURING THIS TIME I ASSISTED OFFICER GALLOVICH #10151 WITH CPR WITH AN AFRICAN AMERICAN FEMALE. MYSELF AND OFFICER GALLOVICH PERFORMED CPR (TAKING TURNS) UNTIL PHOENIX FIRE DEPARTMENT ARRIVED ON SCENE AND TOOK OVER.

SHORTLY AFTER I ASSISTED WITH SCENE SECURITY AND BEGAN PUTTING UP POLICE TAPE.

I STAYED ON SCENE UNTIL I WAS RELIEVED BY THIRD SHIFT.

CURRENTLY I HAVE NO FURTHER INFORMATION.

Public Narrative



PHOENIX POLICE DEPARTMENT (0723)

## Incident Report

| CFS Incident # |
|---|
| 202200630667 |

| Incident Number | |
|---|---|
| 202200000630667 - 003 | |

| Report Type | |
|---|---|
| Incident Supplement | |

| Page 1 | of 1 |
|---|---|

| Date / Time Occurred | Date / Time Reported |
|---|---|
| to | 04/26/2022 20:06 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|

☐ Arson Related   Arson Code

Damage Value   ☐ Bias Crime   ☐ Gang Involved   ☐ Domestic Violence

### Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| 72F | | | |

| Situation Found | Status |
|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | |

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| | NO |

### Incident Address

| Street Address |
|---|
| N 32ND ST AND E YALE STREET |

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | | | |

### Administrative Info

| Reporting Officer | Serial # |
|---|---|
| RUSSELL, FELICIA | 11200 |

Narrative Information

ON APRIL 26, 2022 AT APPROXIMATELY 20:06 HOURS OFFICER OLMOS AND I RESPONDED TO AN ACCIDENT WITH INJURIES LOCATED AT NORTH 32ND STREET AND EAST YALE STREET. WHEN WE ARRIVED I SAW TWO PEDESTRIANS ON THE ROAD HAVING LIFESAVING PROCEDURES PERFORMED ON THEM. I CONTACTED A WITNESS JOHN HEBRANR WHO WAS IDENTIFIED BY HIS ARIZONA MVD PHOTO. HE STATED THE FOLLOWING INFORMATION. JOHN STATED THAT HE WAS TRAVELING NORTHBOUND ON 32ND STREET IN THE CENTER LANE WHEN HE SAW TWO PEDESTRIANS CROSSING THE STREET GOING FROM WEST TO EAST. JOHN STOPPED HIS VEHICLE AND WAITED FOR THE PEDESTRIANS TO PASS IN FRONT OF HIS VEHICLE. ACCORDING TO JOHN, THE PEDESTRIANS WERE WALKING APPROXIMATELY 45 FEET SOUTH OF THE DESIGNATED CROSS WALK. AS THEY WALKED PAST HIM HE LET OFF HIS BREAK AND AS HE WAS DOING SO, HE SAW A VEHICLE GOING NORTHBOUND ON 32ND STREET IN THE NUMBER THREE LANE APPROACH. HE STATED THE VEHICLE WAS GOING APPROXIMATELY 45 MILES PER HOUR OR MORE. HE SAID THE OTHER VEHICLE HIT THE TWO PEDESTRIANS CAUSING THEM TO "FLY DOWN THE STREET". JOHN SAID THE TRUCK THEN PULLED INTO A PARKING LOT. JOHN THEN STOPPED HIS VEHICLE, TURNED ON HIS HAZARD LIGHTS AND CALLED THE POLICE.
AFTER SPEAKING WITH JOHN, I IDENTIFIED THE VEHICLE WHO WAS INVOLVED WITH IN THE ACCIDENT AND STAYED BY IT AS DETECTIVES PROCESSED THE SCENE.
NOTHING FURTHER TO REPORT.

Public Narrative

# EXHIBIT B



I Want To...          Services          Departments          Search 

Home › Departments › Medical Examiner

# MEDICAL EXAMINER

In order to provide the best customer service, the Office of the Medical Examiner strongly encourages appointments to ensure a staff member is available and prepared to meet with members of the public. Please contact OME at 602-506-3322 for assistance. Note that family members cannot view decedents at OME; viewing arrangements should be made with the selected funeral home.

If you need assistance with Death Certificates, please contact Maricopa County Office of Vital Registration at 602-506-6805.

**We perform medical investigations of sudden, unexpected, and/or traumatic deaths to enhance the health and safety of everyone in our community.**

EXHIBIT C

6/20/23, 7:05 PM       Justice Department Announces Investigation of the City of Phoenix and the Phoenix Police Department | Department of Jus…

Case 2:23-cv-00485-GMS  Document 53  Filed 04/17/24  Page 60 of 147

 An official website of the United States government

<u>Here's how you know</u> ⌄

 THE UNITED STATES

**Department of Justice**

Office of Public Affairs

---

FOR IMMEDIATE RELEASE                                                          Thursday, August 5, 2021

## Justice Department Announces Investigation of the City of Phoenix and the Phoenix Police Department

Attorney General Merrick B. Garland and Assistant Attorney General Kristen Clarke for the Civil Rights Division announced today that the Justice Department has opened a pattern or practice investigation into the City of Phoenix and the Phoenix Police Department (PhxPD).

This investigation will assess all types of use of force by PhxPD officers, including deadly force. The investigation will also seek to determine whether PhxPD engages in retaliatory activity against people for conduct protected by the First Amendment; whether PhxPD engages in discriminatory policing; and whether PhxPD unlawfully seizes or disposes of the belongings of individuals experiencing homelessness. In addition, the investigation will assess the City and PhxPD's systems and practices for responding to people with disabilities. The investigation will include a comprehensive review of PhxPD policies, training, supervision, and force investigations, as well as PhxPD's systems of accountability, including misconduct complaint intake, investigation, review, disposition, and discipline.

Department of Justice officials informed Phoenix Mayor Kate Gallego, PhxPD Chief Jeri Williams, and other City officials of the investigation. As part of this investigation, the Department of Justice will reach out to community groups and members of the public to learn about their experiences with PhxPD.

"When we conduct pattern or practice investigations to determine whether the Constitution or federal law has been violated, our aim is to promote transparency and accountability," said Attorney General Merrick Garland. "This increases public trust, which in turn increases public safety. We know that law enforcement shares these goals."

"One of the highest priorities of the Civil Rights Division is to ensure that every person in this country benefits from policing that is lawful, effective, transparent, and free from discrimination," said Assistant Attorney General Kristen Clarke. "Police officers across the country must use their authority in a manner that adheres to the Constitution, complies with federal civil rights laws and respects human dignity."

The investigation is being conducted pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the Department of Justice to remedy such misconduct through civil litigation. This is the seventy-third investigation of a law enforcement agency conducted pursuant to this statute since it was enacted in 1994. The department will be assessing law enforcement practices under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under the Safe Streets Act of 1968; Title VI of the Civil Rights Act of 1964; and Title II of the Americans with Disabilities Act.

The Special Litigation Section of the Department of Justice Civil Rights Division, in Washington, D.C., will conduct this investigation. Individuals with relevant information are encouraged to contact the Department of Justice via email at Phoenix.Community@usdoj.gov or by toll free phone at (866) 432-0335. Individuals can also report civil rights violations regarding this or other matters using the Civil Rights Division's new reporting portal, available at <u>https://civilrights.justice.gov/</u>.

6/20/23, 7:05 PM          Justice Department Announces Investigation of the City of Phoenix and the Phoenix Police Department | Department of Jus…

Case 2:23-cv-00495-GMS   Document 53   Filed 04/17/24   Page 61 of 147

Information specific to the Civil Rights Division's Police Reform Work can be found here: https://www.justice.gov/crt/file/922421/download. View the Spanish translation of this press release here.

**Component(s):**

Civil Rights Division

Civil Rights - Special Litigation Section

Office of the Attorney General

**Press Release Number:**

21-743

*Updated August 24, 2021*

# EXHIBIT D

Case 2:23-cv-00495-GMS   Document 58   Filed 04/17/24   Page 63 of 147

**az**central.



# 'A wake-up call': 500 homeless people died in metro Phoenix in first 9 months of 2020

Nearly all of the people who died on the streets were found outside — in tents, on sidewalks, in a Porta Potty, under freeway tunnels and in dry river bottoms. Most of their deaths were preventable. Nearly all of them were caused or expedited by the conditions in which they lived.

**Jessica Boehm** Arizona Republic

Published 8:42 AM MST Dec. 17, 2020 **| Updated 2:53 PM MST Dec. 18, 2020**

ore than 500 people experiencing homelessness in metro Phoenix died in the first nine months of 2020.

The unexpected and deadly COVID-19 virus — which ravaged the world this year and killed more than 7,000 Arizonans —  was known to be responsible for only four of those deaths.

The rest were caused by the same concerns that killed hundreds of homeless people last year and, in all likelihood, will kill hundreds more next year.

Drug overdoses. Heatstroke. Malnutrition. Treatable illnesses. Vehicle collisions.

Nearly all of the people who died were not staying at a shelter at the time of their death. Their bodies were found outside — in tents, on sidewalks, in a Porta Potty, under freeway tunnels and in dry river bottoms.

Advertisement

Most of their deaths were preventable. Nearly all of them were caused or expedited by the conditions in which they lived, according to an Arizona Republic analysis of medical examiner reports.

A surefire way to prolong their lives would be to provide stable housing, and, in the interim, safe and accessible shelter.

Metro Phoenix does not have enough of either of those resources, which is reflected in the record number of street deaths recorded this year.

"This number of people who died on the streets, it needs to be a wake-up call to our policymakers and our leaders," said Lisa Glow, CEO of Central Arizona Shelter Services.

Most of those who died perished alone on metro Phoenix streets. They were buried only with government employees and a single clergy member to bear witness.

Some had hobbies and college degrees, memorable senses of humor and artistic talents.

They had families and people who cared about them — some of whom learned weeks or months later that their loved one had passed.



Tents housing people experiencing homelessness are seen near downtown Phoenix in early 2020.
ELI IMADALI/THE REPUBLIC

## 2020 brought more challenges, more death

Homelessness is increasing in Maricopa County, but the number of deaths appears to be increasing at a much higher rate.

2020 likely saw a record number of homeless deaths in Maricopa County, although it's impossible to say for sure since the Maricopa County Office of the Medical Examiner only began tracking the data consistently this year.

Previously, investigators would write "transient" in the address box on their reports if they believed people were homeless at the time of their death. But that wasn't always done consistently, according to Chief Medical Examiner Jeffrey Johnston.

The office started using a new system in December 2019 that requires investigators to check "yes" or "no" as to whether the person who died was homeless before death. Johnston said

investigators now have been trained to ask questions about the person's housing status during an investigation.

"We probably have undercounted (in the past) and unfortunately we don't really know by how much," Johnston said.

Even with the old, less-scientific way of capturing housing information, homeless deaths were increasing exponentially each year between 2017-2019, according to The Republic's analysis.

And this year, the death rate was significantly higher than in years past, according to Dr. Christopher Pexton, medical director of Circle the City's downtown family health center. Circle the City is the provider of health care for the homeless in Maricopa County.

"This summer was exceptionally hard and was exceptionally deadly. We saw a flare in medical and mental conditions that resulted in a lot of really preventable deaths," Pexton said.

## Help support quality local journalism like this.

### $1 for the first 3 months.

Subscribe!

Though the COVID-19 virus itself was not significantly lethal in the homeless population, the virus' impact on services, shelter and psyche likely played a role in the increased death rate, Pexton said.

COVID-19 hit its first peak in Arizona during the summer. Many fast-food restaurants, libraries, community centers, homeless service providers and other places where people living on the streets would congregate and take respite closed to the public in an attempt to slow the spread of the virus.

Homelessness is already isolating, but with gathering places closed, people spent even more time alone, leading to more symptoms of mental illness, less willingness to seek help and more self-medicating with drugs and alcohol, Pexton said.

The closures also meant fewer indoor spaces to cool down from the extreme summer heat. Heat deaths of people experiencing homelessness more than doubled between 2019 and 2020, according to Maricopa County data.

**HOMELESSNESS IN THE PHOENIX AREA:** <u>Meet 16 people and hear their stories</u>

Pexton said the economic consequences of the pandemic also pushed more people into homelessness this year. Those people had less knowledge about services available to them. And some services stopped operating altogether because of COVID-19.

More people are expected to become homeless after the first of the year when the U.S. Centers for Disease Control and Prevention's eviction moratorium expires. Providers are preparing for more deaths unless there is a significant influx of housing and shelter.

There is no such influx planned.



**28 PHOTOS**

## Maricopa County conducts annual Point-in-Time homelessness count

People Valley-wide who are experiencing homelessness talk to Arizona Republic reporters about their experiences.

## Who are the people who died on the streets of metro Phoenix?

The average person experiencing homelessness who died in the first nine months of 2020 in Maricopa County was older than 45, white and male, according to The Republic's analysis.

The average age at the time of death was 49, and almost one-quarter were over the age of 60 when they died, illustrating a troubling trend of increasing senior homelessness.

### Homeless deaths by age (January-August 2020)

| Age group | Number of deaths |
|-----------|------------------|
| 0-9 | 2 |
| 10-19 | 3 |
| 20-29 | 45 |
| 30-39 | 96 |
| 40-49 | 105 |
| 50-59 | 148 |
| 60-69 | 96 |
| 70-79 | 25 |
| 80-89 | 6 |
| 90-99 | 1 |

Source: Maricopa County Medical Examiner's Office

Share

More than 80% of the people who died were men.

The races and ethnicity of the people who died do not align with Maricopa County population numbers, but they do match up with the homeless population demographics in the county.

Homeless deaths for White, Black and Native American people occurred at higher rates than their representation in the general Maricopa County population. Homeless deaths of Latino

and Asian people occurred at rates significantly lower than their representation in the greater population.

## Homeless deaths by race and ethnicity (January-August 2020)

| Race/ethnicity | Number of deaths | % of deaths | % of Maricopa |
|---|---|---|---|
| White (not Latino) | 334 | 63.4% | 54.5% |
| White (Latino) | 84 | 15.9% | 31.4% |
| Black or African American | 72 | 13.7% | 6.4% |
| American Indian/Alaska Native | 25 | 4.7% | 2.8% |
| Native Hawaiian or Pacific Islander | 2 | 0.4% | 0.3% |
| Asian | 1 | 0.2% | 4.6% |

Source: Maricopa County Office of the Medical Examiner

Share

People experiencing homelessness died in nearly every ZIP code in metro Phoenix, but clusters occurred in downtown Phoenix, midtown Phoenix, Sunnyslope, downtown Tempe and downtown Mesa.



Map created by leahtrinidad

## Why did they die? 'The perfect storm'

Of the 484 deaths where the cause of death has been determined:

- Almost 300 were accidental deaths involving drugs or alcohol.
- The medical examiner confirmed that heat was a primary or contributing cause of death in 146 deaths. The medical examiner listed another 10 deaths as suspected heat deaths, but the final reports were not yet ready for release.
- One person died of frostbite, and another died of hypothermia.
- At least 143 deaths were caused at least in part by treatable diseases or illnesses such as diabetes, heart disease, pneumonia or malnutrition.
- Sixteen people were hit and killed by vehicles.

Most deaths were a combination of several factors.

"The things that I saw consistently were some combination of heat, chronic illness and either an acute illness or substance abuse that just resulted in the perfect storm that resulted in a lot

Case 2:23-cv-00495-GMS Document 58 Filed 04/17/24 Page 71 of 147

of people dying," Pexton said.

## Drugs, alcohol: Major contributors to deaths

John Spence was a hyperactive child. He would construct booby traps in his childhood bedroom that would trigger if anyone opened his door without permission. He was worried about intruders, he said.

His mother, Sandy Browne, said the paranoia seemed like a normal, imaginative childhood trait until he got older. He eventually was diagnosed with bipolar disorder and later schizophrenia.

Browne and her husband took three months of classes from the National Alliance on Mental Illness to understand their son's diagnosis. When Spence served time at the Maricopa County Tent City jail after a DUI conviction, Browne, who lived in Gilbert, would pick him up and drive him to jobs for his work release program.

No matter how severe his mental illness symptoms became, or how many run-ins he had with the legal system, to Browne, he was still John.

Handsome. Funny. An involved son who never missed her birthday.



An undated photo shows John Spence in his 30s. Spence died while experiencing homelessness in February 2020 at age 55.

COURTESY OF SANDRA BROWNE

Spence's condition got worse when he refused to take his medication. He told his mother it made him feel "flat," like he had no emotions, and it made him gain weight. Instead he started self-medicating, first with alcohol and eventually with illegal drugs.

Two years ago, Spence told his mother he wasn't going to call her anymore. Browne thought he was exaggerating.

But after two Christmases and a birthday without a phone call, she started to fear that she may never hear from him again.

"He knew he was loved. I know he knew he was loved. I don't think there was a doubt in his mind he was loved," Browne said. "The only thing I can think of is he did it to protect us because he was going on a downward spiral."

Browne began checking obituaries in the newspaper for his name and recently subscribed to a website to search graves.

She didn't know John had died in February until a Republic reporter called her in December. The county never contacted her after her son's death.

Spence died of methamphetamine toxicity and pneumonia, according to the medical examiner. He was 55.

Drugs and alcohol — most often meth and fentanyl — were factors in more than half of the deaths in the homeless population in the first nine months of 2020, according to The Republic's analysis.

Pexton said there is a significant meth addiction problem in Maricopa County, and illicit drug makers have started lacing their product with fentanyl in an attempt to get users addicted to opioids as well.

"It's just a horrific manipulation of human vulnerability," Pexton said.

He said he sees two different types of drug users in his patients. There are people who have "a genetic code" that makes them susceptible to addiction. And then there are those who use drugs because they feel like they have to.

Pexton said he hears from older women especially who say they use meth to stay awake all night so they can protect their tent and themselves. Over time, they develop an addiction.

"We see a lot of people who use substances to survive being homeless who have no desire to use," Pexton said.

## Environmental deaths: Heat exposure and more

Andre Frison, 65, was found unresponsive outside a gas station in Phoenix. Emergency medical personnel transported him to a hospital, where his core body temperature was measured at 108.5 degrees Fahrenheit. He died the next day.

According to the medical examiner's report, Frison was dehydrated, and multiple organs had failed because of his extremely elevated body temperature.

The high temperature on July 3, the day Frison was found outside, was 102 degrees.

Exposure to the heat, combined with a common form of heart disease, killed him, according to the medical examiner.

More than 30% of the deaths in the homeless population were caused by heat.

Maricopa County senior epidemiologist Vjollca Berisha said the county has seen 285 confirmed heat deaths this year, with 50 additional suspected heat deaths still under investigation.

Last year, there were a total of 199 heat deaths.

**TOO HOT:**  More people are dying from heat in Maricopa County, data shows

According to The Republic's analysis, 146 of the confirmed heat deaths in the first nine months of 2020 were of people experiencing homelessness, compared with 67 confirmed heat deaths for all of last year.

Berisha said she suspects COVID-19 played a role in the increase in heat deaths because fewer air-conditioned places were open to the public this year to prevent the spread of the virus.

In years past, the county and its partners offered hundreds of indoor cooling stations. That number was significantly reduced because of COVID-19.

"This year we didn't have that (same) number of cooling station available. So that may have been a reason, not having a cool place to go," Berisha said.

Heat is often not the sole cause of death, according to The Republic's analysis. Often, heat exacerbates chronic health conditions or side effects of drug use.

According to the analysis, 110 of the heat deaths also involved drugs or alcohol.

"We have a huge crystal meth problem, and in the summer it's that much more deadly because it causes dehydration," Pexton said.



**19 PHOTOS**

### Homeless camps across Phoenix brace for heat wave amid pandemic

As Phoenix prepares for its first excessive heat warning, people experiencing homelessness have limited options for relief because of COVID-19.

## Deaths from chronic illnesses hard to manage on the street

A Phoenix police detective came to Florentine Moran's house on March 9 with news that officers found her son Robin Moran, 53, dead in the dry Salt River bottom at 19th Avenue.

It was a year and nine days after her husband of 59 years died.

Robin was a bright child. Florentine worked as a cook at Maie Bartlett Heard Elementary School to get him into the west Phoenix school, which was regarded as offering a better education than their neighborhood school. Robin's job was to raise and lower the American flag each day.

He graduated from Alhambra High School and Glendale Community College. He worked for several car dealerships and spent some time as a long-distance truck driver.



An undated photo shows Robin Moran at his graduation from Alhambra High School. Moran died of dehydration and malnutrition in March 2020.

COURTESY OF FLORENTINE MORAN

His passion was with wood carving, though. He belonged to three clubs and loved to carve owls to pass out to kids at the Desert Botanical Garden.

A few years ago Robin met a woman on the internet. He fell in love.

Florentine said she lived out of state and was always in need of money for some reason or another. Florentine and her husband tried to warn him that it sounded like a scam, but he wouldn't listen, she said.

He traveled to Chicago and New York to try to meet her, but she never showed, Florentine said. By the time he realized she wasn't real, he'd already spent all of his money on her.

Robin moved in with Florentine and his father but he became violent. His parents told him he had to leave. Florentine said she wasn't sure where he was staying after that.

He would still stop by their house occasionally. The last time Florentine saw him he came by to pick up his mechanics toolbox to sell for extra money. She remembered he looked skinny.

Moran had to wait until the summer for the medical examiner's report that showed how Robin died: malnutrition and chronic dehydration.

"But yet he had (gift) cards for McDonald's in his wallet," Moran said.

Much like with Robin, although many homeless deaths are listed as natural in medical examiner's reports, they're often a byproduct of their living conditions.

About 30% of homeless deaths between January-September 2020 had a treatable disease or illness listed as the primary or secondary cause of death, according to The Republic's analysis. Diabetes and cardiovascular issues were the most common.



Much like with Robin Moran, although many homeless deaths are listed as natural in medical examiner's reports, they're often a byproduct of their living conditions.

COURTESY OF FLORENTINE MORAN

Pexton said that although diabetes and heart disease are extremely common among people who are homeless and housed, it's much more difficult for someone living on the street to care for their conditions properly.

With diabetes, for example, patients are often prescribed insulin, which is supposed to be refrigerated. People living outside don't have access to a fridge.

Advertisement

It's also much more difficult to control diet and exercise when you don't have a safe place to stay, he said.

In addition to a medical center and respite center for people experiencing homelessness who are ill, Circle the City has expanded its mobile medicine units to treat people who don't have the ability to transport themselves to downtown or midtown Phoenix for medical care.

"A lot of people we know that's the only medical care they receive. I think it's one of the most valuable services we do because it's truly trying to get to people where they're at," Pexton said.

## Vehicle dangers: Excessive speed, inattention

Almost 3% of people experiencing homelessness who died in 2020 were killed in motor vehicle collisions. In the total Arizona population, pedestrian fatalities make up less than one-tenth of a percent of all deaths.

In March, David Allen, 32, was crossing the street in west Phoenix when he was hit by one driver who fled, and then run over by another driver who also fled, according to the medical examiner's report. He was pronounced dead on the street.

Two months later, Michael Groth, 61, was riding his bike and was hit by a vehicle traveling at 40 mph after failing to stop at a stop sign. He was transported to a hospital and died three hours later.

Arizona has one of the highest pedestrian fatality rates in the country.

Most people experiencing homelessness don't have a motor vehicle and use walking or biking as a primary mode of transportation, increasing their likelihood of getting hit or killed by a vehicle.

Stacey Champion, who advocates for pedestrian safety and homeless solutions, lobbied Phoenix to install two crosswalks on Jefferson Street across from the Human Services Campus.

"You have a high pedestrian population and you have like highway streets running through our urban core with people driving at excessive speeds, not even slowing down, yet alone yielding to pedestrians," Champion said.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS   Document 58   Filed 04/17/24   Page 81 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

Even with the new crosswalks, drivers still speed through, putting people experiencing homelessness who are trying to access the Human Services Campus at risk, she said.

Champion said it's particularly dangerous for seniors who use wheelchairs or walkers and don't have the ability to jump out of the road if a driver ignores the crosswalk.

Two of the people who died in vehicle collisions this year were using a wheelchair or walker when they were hit, according to The Republic's analysis.

Vehicles also posed a threat to people experiencing homelessness when they were sleeping.

A semitruck driver in west Phoenix did not realize Rickie Sorensen, 28, was sleeping underneath his trailer and ran him over, killing him, according to the medical examiner's report.

A Scottsdale garbage truck driver was collecting trash in an alley way when he ran over Freddy Tombo, 34, who had been sleeping there. The driver told police he thought he had driven over trash scattered in the alley until he looked back and saw something move.

The man was pronounced dead in the alley.

**'WE'RE REALLY THE DUMPING GROUND':** Phoenix neighbors, service providers clash after decades of inaction on homelessness

## Metro Phoenix lacks shelter, housing

To many homeless service providers, there's a simple solution to preventing the vast majority of premature homeless deaths: Put a roof over everyone's head.

"You aren't healthy as a person physically or mentally if you're not housed," said Amy Schwabenlender, executive director of the Human Services Campus. "It's this spiraling, compounding effect when you're living in toxic stress and making decisions moment to moment, day to day, just to stay alive."

While the solution is simple, implementing it is not.

Maricopa County is short on emergency shelter beds and short on housing that is affordable for people in middle- and lower-income groups.

According to the last point-in-time count in late January, at least 7,419 people were experiencing homelessness. The point-in-time count is widely believed to be an undercount of the true number of people without a home in Maricopa County.

The county has about 1,700 emergency shelter beds, which means the only option for thousands of people experiencing homelessness is to sleep outside or in their vehicles.

The Human Services Campus, which is home to the 425-bed CASS shelter, is asking Phoenix to allow an additional 375 permanent shelter beds on the campus near downtown Phoenix.

The City Council was supposed to weigh in on the request by the summer, but a series of mostly political delays has left the fate of the new beds in limbo.

"It is frustrating to have a proposal for part of the solution and for it to be so difficult and challenging and to watch homelessness get politicized. It's frustrating. We don't give up, though," Schwabenlender said.

Phoenix City Council member Michael Nowakowski, who opposes the bed increase and has pushed for the delays to the Human Services Campus' request, did not return a call for an interview but sent a statement saying he is "concerned with all deaths, including the deaths of individuals experiencing homelessness."

He said crises "deserve thoughtful, comprehensive, solution-driven plans," which is why he supports "smaller, specialized shelters shared equitably across Maricopa County."

"Data shows that mega shelters hurt rather than help those experiencing homelessness and I encourage city leaders, neighborhoods and nonprofit providers to join in an effort to support the work of Mayor Gallego and the city approved homeless strategies plan," Nowakowski said. "Our residents and neighborhoods deserve a long-term solution rather than band-aids to temporarily fix."

The neighborhood surrounding the Human Services Campus does not want more beds because business owners and residents believe it will draw more people experiencing homelessness to the area. Right now, between 400-500 sleep on the streets outside the campus because they either can't get or don't want a shelter bed on the campus. The shelter is full virtually every night.

Even if Phoenix approves an additional 400 beds on the campus, it won't be nearly enough to serve the thousands of people without a bed now.

The city of Phoenix recently approved a homelessness plan that calls for smaller shelters scattered throughout Maricopa County. City leaders have put pressure on the state, county and other cities to do more to house people experiencing homelessness.

There have been some conversations about new shelters, but little to show for it so far. Homeless shelters are hard to fund and even harder to get neighborhoods to support.

**'STEPPING UP TO DO MORE':** Phoenix council approves broad plan to address homelessness, affordable housing

## Transitional housing: A bridge to a longer-term solution

People experiencing homelessness often aren't able to quickly move into permanent housing because there's a shortage of affordable options. In Phoenix alone, city staff estimated that an additional 100,000 units of subsidized housing are needed to shelter all the people in need of housing now.

This keeps people experiencing homelessness longer, either in an emergency shelter or on the streets.

"We can't build affordable housing fast enough," Glow said.

She's forming an alliance with other nonprofits and agencies to come up with interim housing solutions that can come online in the next 2-3 years while local cities, counties and the state implement long-term plans on permanent housing and shelter.

Phoenix recently provided CASS with funds to rent 85 rooms in a hotel in north Phoenix for homeless seniors so they had a safe place to isolate during the COVID-19 pandemic.

Glow said she'd like to see more programs like that continue past the pandemic to give people places to stay after they've been in an emergency shelter but before a housing unit is available.

This type of housing, typically called "gap housing" or "transitional housing," used to be fairly common. But in 2016, the U.S. Department of Housing and Urban Development cut funding from those programs to focus more attention on permanent housing, a strategy federal officials said was cheaper and more effective.

Nancy Marion of House of Refuge, one of the few remaining transitional housing programs in metro Phoenix, said her organization lost about 75% of its funding overnight when the change went into effect.

House of Refuge maintains 80 two-bedroom single-family homes in Mesa for families experiencing homelessness. The housing program allows people who recently stayed in shelter or on the streets to gain independence, set financial goals and get ready for reintroduction into traditional housing.

Local donors stepped in to keep House of Refuge running, but other transitional housing programs weren't as lucky.

Now, some local agencies want to reintroduce transitional housing on a larger scale. The federal government is still not providing significant funding for transitional programs, so local governments or nonprofits will have to find ways to finance it without federal assistance.

Marion said the filling the "gap in the middle," between emergency shelter and permanent housing, is essential to help most people succeed in the transition out of homelessness.

## More compassion: 'These people are really no different than you'

Ash Uss, who has worked with the homeless population in Phoenix for several years, said that while housing and shelter is an obvious way to save lives, there's another obvious solution, too.

More compassion.

Uss reviewed the medical examiner's reports for people who died on the streets for the past two years and was struck by the number of reports that cited passersby seeing people in distress but not calling for help until it was too late.

"How could we have intervened before that (death) happened?" Uss said.

She said she's working with a task force to try to form a crisis response hotline specifically for people experiencing homelessness so people who see someone on the sidewalk in extreme heat or another dangerous situation can call and get that person help.

Uss said she's also working to re-educate the community on homelessness to break down stigmas associated with people living on the streets.

"These people are really no different than you," she said.

**WHAT CAN BE DONE?:** There are 7,419 homeless people in metro Phoenix. Here's the best way to help them

## Mother's search ends at a final resting place

The White Tanks Cemetery can't be seen from Camelback Road, the main road leading to the cemetery.

There's a tan-colored fence surrounding the vast, mostly empty, cemetery. The public is not allowed to visit without an appointment.

It's surrounded by farmland, and on a Thursday morning in September, just before 8 a.m., workers on tractors were stirring up dirt that carried into the cemetery.

This is where Maricopa County buries the indigent — people whose families can't afford to pay for their final disposition or people whose next of kin can't be located. Often, the people buried here were experiencing homelessness before they died.



Father Dan Ponisciak and Julia Blois bothwith AndreHouse, a organization that serves the homeless and poor populations in Phoenix, participate in the burial of 18 homeless people at the White Tanks Cemetery in Goodyear on Sept. 10, 2020.

THOMAS HAWTHORNE/THE REPUBLIC

Local faith leaders take turns giving the service before county employees bury the remains. It was the Rev. Dan Ponisciak's turn. Ponisciak is a Catholic priest and the executive director of Andre House, which provides meals, showers and other services for people experiencing homelessness.

Ponisciak stood before a row of 18 black boxes, containing cremated remains. He wore a short-sleeve button down with a priest collar and black jeans, a religious chain hanging from his neck.

He flipped through the pages of a blue book titled "Order of Christian Funerals" and recited the cremation rites for each of the deceased.

"Our brother, Pedro, has gone to his rest in the peace of Christ. May the Lord now welcome him to the table of God's children in heaven. With faith and hope in eternal life, let us assist him with our prayers."



Local faith leaders such as Father Dan Ponisciak of Andre House take turns giving the services for the indigent before county employees bury the remains.

THOMAS HAWTHORNE/THE REPUBLIC

When he finished with Pedro's burial rites, Ponisciak pulled out a small bottle of holy water from his breast pocket and with four flicks of his wrist watched the water droplets fall on and around the box of remains.

Then he stepped six inches to his left and started again.

"Our sister, Louise, has gone to her rest in the peace of Christ. May the Lord now welcome her to the table of God's children in heaven. With faith and hope in eternal life, let us assist her with our prayers."

Occasionally, Ponisciak paused as the deafening sound of military jets from nearby Luke Air Force Base filled the cemetery,

When he got to the black box marked "Robert," he took a deep breath and shook his head slightly. He was 10 in and still had eight to go.

"There's nobody here but us," Ponisciak said. It's not common for family members to attend the indigent services.

Then he continued.



Father Dan Ponisciak sprinkles holy water during the burial rites for indigent people as Julia Blois looks on.
THOMAS HAWTHORNE/THE REPUBLIC

When he got to the last black box, the remains of a man named John, he recited the burial rites one last time and made the sign of the cross.

"We ask this in the name of the Father, the Son and the Holy Spirit," Ponisciak said.

An employee from Maricopa County thanked Ponisciak for volunteering his time.

"We walk with people through their journey at Andre House. And so in that way it is a privilege to walk with them to the end of their journey," he said, looking around at the hundreds of bricks affixed to the dirt, each with a name, birth date and age.

This is where the county buried Spence earlier this year without alerting his parents to his death.

Maricopa County spokesperson Fields Moseley said typically law enforcement would provide next of kin contacts to the county, and county officials would pass along that information to the funeral home, which would be responsible for contacting the family. However, no next of kin information was provided to the county for Spence, he said.



The remains of a man who was experiencing homelessness are laid to rest with the remains of 17 other indigent people at the White Tanks Cemetery in Goodyear.

THOMAS HAWTHORNE/THE REPUBLIC

Chirstina Vollaro, indigent decedent manager for Legacy Funeral Home, said that when Spence's remains were sent to the funeral home, the county did not have a Social Security number for Spence. If the funeral home had that information, it would have mailed a notice to his family, she said.

Vollaro and Moseley said the county and the funeral home used search tools like Accurint, Truepeople.com and FamilyTreeNews.com to try to locate Spence's family. But it appears somewhere along the way, Spence's birth date was typed incorrectly, which made the process more difficult. The county also published an obituary for Spence trying to find his family but again used the wrong birth date.

"Maricopa County agencies work hard to connect families to their lost loved ones, and they regret not being able to do that in this case," Moseley said.

Browne is now trying to come up with $8,500 to have her sons body exhumed so he can be cremated. She plans to separate his ashes so that she, her ex-husband and daughter can each have some.

Browne is angry that no county or police official was able to locate her after Spence's death and that she had to learn about his death 10 months later from a reporter writing a story about homeless deaths.

"You found us, so why couldn't they?" she asked.

Browne has asked the funeral home and county to lower the price of exhuming his body, since they should not have buried him in the indigent burial ground.

Moseley said the county will not seek reimbursement of the $350 incurred by the county to bury Spence. The rest of the cost will depend on which funeral home Browne selects for disinterment.

Browne faces another challenge as well. Spence married before he died, making his wife his next-of-kin, not his mother. Browne has been trying to find her since she learned of Spence's death, with no luck.

Regardless, she will find a way to get her son home, she said.

"I'd want him to know that I'm far prouder of him than he realized. That I could see only his good points, how funny and smart and how kind he was," Browne said.



Father Dan Ponisciak and Julia Blois, both staff with Andre House, leave the White Tanks Cemetery in Goodyear after performing the burial rites of 18 indigent people.

THOMAS HAWTHORNE/THE REPUBLIC

## How to help people experiencing homelessness in metro Phoenix

There were at least 7,419 people experiencing homelessness in metro Phoenix at the start of 2020 when providers conducted the annual point-in-time count in Maricopa County.

That number likely has increased over the course of the year as COVID-19-related job loss has forced even more Arizonans into homelessness.

More than half of the people experiencing homelessness in the county are living "unsheltered" — sleeping on the streets, in desert washes, vehicles or another place not meant for habitation.

People experiencing this type of homelessness have significant needs, from food and water to blankets and clothing.

If you're interested in helping, <u>dozens of nonprofits in metro Phoenix are accepting donations of goods and money</u> to help care for our community's most vulnerable.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS   Document 58   Filed 04/17/24   Page 92 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

*Coverage of housing insecurity on azcentral.com and in The Arizona Republic is supported by a grant from the Arizona Community Foundation.*

*Reach Jessica Boehm at [jessica.boehm@gannett.com](mailto:jessica.boehm@gannett.com). Follow her on Twitter @jboehm_NEWS.*

Published 8:42 AM MST Dec. 17, 2020 | **Updated 2:53 PM MST Dec. 18, 2020**

Advertisement





# Homeless and profoundly at risk: Older people make up a growing number of deaths on the streets

Almost 40% of the 527 people experiencing homelessness who died in metro Phoenix during the first nine months of 2020 were 55 or older.

**Jessica Boehm** Arizona Republic

Published 7:48 pm UTC Dec. 18, 2020 | Updated 4:35 pm UTC Dec. 21, 2020



**A**growing number of metro Phoenix's older residents are living out their final years without a home — and ultimately dying on the streets where they've been sleeping.

Almost 40% of the 527 people experiencing homelessness who died in metro Phoenix during the first nine months of 2020 were 55 or older, according to an Arizona Republic analysis of Maricopa County medical examiner's data.

Forty-five of those who died were between the ages of 65 and 75. Fifteen people were 75 to 85 years old. An 88-year-old man and a 95-year-old woman also were among the deceased.

The fatalities are a consequence of a troubling spike in senior homelessness in metro Phoenix.

Justa Center, a resource center for people experiencing homelessness who are 55 or older, has seen a 30% increase in people seeking service each year for the past several years, according to Executive Director Wendy Johnson.

Advertisement

On any given night, people 55 or older take up about 40% of the 450 emergency shelter beds at Central Arizona Shelter Services, the largest shelter in Arizona, according to CEO Lisa Glow.

The increase in senior homelessness is spurred by a combination of forces.

A portion of the population has chronic mental health, physical health or addiction issues or a combination of the three, has experienced homelessness since they were younger and has aged into the senior category while living on the streets.

There's also a newer — and growing — phenomenon of people over the age of 55 becoming homeless for the first time because they've been priced out of housing and either can't find employment or have retired and rely on a Social Security benefit that is not enough to keep up with metro Phoenix's rising housing costs.

Older people are more susceptible to excessive heat, more likely to have serious health issues and less likely to survive the conditions on the street.

"We've had more of our seniors die this year than ever before," Johnson said.

And it's more than just the 202 deaths labeled as homeless deaths by the Maricopa County medical examiner, Johnson said.



**15 PHOTOS**

## Justa Center in Phoenix offers a helping hand to seniors experiencing homelessness

Justa Center, a resource center for people experiencing homelessness who are 55 or older, has seen a 30% increase in people seeking service each year for the past several years, according to Executive Director Wendy Johnson.

Justa Center tracks the seniors in its program who get housing after experiencing homelessness, so it can provide food and needed essentials like toothpaste and shampoo.

Johnson said she's seen many seniors get housing this year only to die a few months later because of the health conditions they racked up while experiencing homelessness. Housing came too late for them, she said.

"We comfort ourselves by saying, 'At least they died in housing,'" Johnson said. "But, no. They could have had a much richer, longer life with housing."



5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS   Document 58   Filed 04/17/24   Page 97 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area



5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS Document 58 Filed 04/17/24 Page 98 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area



Justa Center, a resource center in Phoenix for seniors experiencing homelessness, has seen the need for services grow, according to Executive Director Wendy Johnson.
DAVID WALLACE/THE REPUBLIC

## 'They don't have enough money to live on'

Experts say that seniors will continue to face homelessness for the next several decades because of rising housing costs and an unsustainable reliance on Social Security benefits.

Retirees who paid into the Social Security system through payroll taxes while they were working qualify for a monthly benefit from the federal government that is designed to supplement retirement income and keep poverty at bay.

Though the Social Security Administration cautions on its website that the monthly retirement benefit was "never meant to be the only source of income for people when they retire," many workers rely on it as such.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS  Document 58  Filed 04/17/24  Page 99 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

About 20% of retired married couples and 45% of retired single people rely on Social Security for 90% or more of their income, according to the Social Security Administration.

The average monthly Social Security benefit for retired Americans is $1,514, according to the Social Security Administration. But because the monthly benefit is determined by how much an employee made while they were working, many low-wage workers receive a significantly lower monthly benefit.

Rental prices have soared in metro Phoenix in the past few years. The current average rent for a one-bedroom apartment is about $1,250, according to national apartment research firm Yardi Matrix — a price that's out of reach for seniors solely dependent on Social Security.



Central Arizona Shelter Services CEO Lisa Glow says on any given night, people 55 or older take up about 40% of the agency's 450 emergency shelter beds.

ELI IMADALI/THE REPUBLIC

"Seniors continue to come into the system because they don't have enough money to live on," Glow said.

Glow said she's concerned this trend will continue at a quicker pace after the New Year when the U.S. Centers for Disease Control and Prevention eviction moratorium expires and seniors

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS    Document 53    Filed 04/17/24    Page 100 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

who failed to pay their rent during the COVID-19 pandemic can be kicked out of their homes.

Most retirees right now are part of the Boomer generation — a generation thought to be more financially stable than the ones succeeding it.

If Boomers are struggling, Generation X, saddled with housing debt caused by the Great Recession, and the Millennial generation, saddled with student loan debt, likely will have an even more difficult time affording retirement, Johnson said.

"Conservatively, we're looking at 100 years of elders who won't be able to afford to live," Johnson said.

## Help support quality local journalism like this.

### $1 for the first 3 months.

Subscribe!

When seniors become homeless, providers have limited options to help get them back into housing, Johnson said.

The federal government funds a program for people experiencing homelessness called "Rapid Re-housing" that covers a person's move-in costs and rent for about six months and then requires the person to take over the rent payments.

While that can be effective for someone who recently lost a job and only needs temporary assistance, seniors who can't find work or are unable to work because of disability won't be able to take over the rent after six months. It ends up creating a "revolving door to homelessness," Johnson said.

"I am livid that this is our choice," Johnson said. "We need a better spectrum (of choices)."

The "revolving door" leaves many seniors on the streets for longer than their bodies can handle, ultimately bringing about their premature deaths. This year likely saw a record number of senior homeless deaths.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS Document 53 Filed 04/17/24 Page 101 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area



5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS Document 53 Filed 04/17/24 Page 102 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area



Living outdoors in extreme weather can take a toll on the health of older adults such as Kyle Holloway, 57 (left), as well as leave them vulnerable to dangerous conditions.

DAVID WALLACE/THE REPUBLIC

## Most deaths health-related

Of the 202 senior homeless deaths in the first nine months of 2020, the Maricopa County Medical Examiner's Office found:

- Almost 90 were caused at least in part by treatable diseases or illnesses such as diabetes, heart disease, pneumonia or malnutrition. Another 31 were not medical examiner cases, meaning theirs was deemed a "natural" death by a doctor who was treating them before death.
- About 80 were were accidental deaths involving drugs or alcohol.
- Heat was a primary or contributing cause of death in 59 deaths. The medical examiner listed another four deaths as suspected heat deaths, but the final reports were not yet ready for release.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS Document 53 Filed 04/17/24 Page 103 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

- One person died of frostbite, and another died of hypothermia.

Advertisement

Living outside in extreme weather takes a physical toll on all bodies and a mental toll on all minds. But older people are even more likely to fall victim to the dangerous conditions, Johnson said.

"(It's) normal aging, then you add exposure. You add hard surfaces that they're sleeping on. Bone issues. Heat issues. Victimization," she said.

Johnson said there hasn't been a day in the past six months that one of the seniors at Justa Center hasn't been robbed, beat up or raped on the streets.

"Because they're older, they're seen as easy," Johnson said.

And if they have a Social Security check, they have more to steal.

**'A WAKE-UP CALL':** 500 homeless people died in metro Phoenix in first 9 months of 2020

## Separate senior shelter

Glow has been pushing for a separate shelter for seniors experiencing homelessness that can better serve the needs of older people, get them away from the dangerous street conditions faster and protect them from the elements and people who take advantage of them.

She got the chance to pilot the idea with COVID-19 relief funding provided by Phoenix earlier this year.

5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS Document 52 Filed 04/17/24 Page 104 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area



# (It's) normal aging, then you add exposure. You add hard surfaces that they're sleeping on. Bone issues. Heat issues. Victimization.

Wendy Johnson, executive director of Justa Center, on why experiencing homelessness takes a toll on older adults

COPY TEXT          TWEET          FACEBOOK          LINKEDIN

REDDIT          SHARE

CASS rented 65 rooms in a north Phoenix hotel and began placing the most vulnerable seniors in private rooms with their own bathrooms.

Caseworkers and medical professionals check in with residents weekly. CASS staff checks in daily and delivers meals.

As of December, the hotel program, dubbed "Project Haven," had served 152 people. Almost 70% of them have left the hotel for permanent housing, Glow said.

CASS recently expanded the program with 20 additional rooms. The program is funded through July 2021.

Robert Brassuel, 62, was one of the first people to land at Project Haven. He fled Mississippi and headed for the West Coast after a bad divorce about two years ago. He split his time between Phoenix and Las Vegas, depending on homeless shelters for a place to sleep.

That's been a disaster, Brassuel said.

In the shelters, he was around mostly younger people who were involved in drugs, alcohol and violence.

"Here, I feel perfectly safe and I feel like I have another chance to try to get my life back together," he said.



"My hopes and dreams have all changed. The direction of my life has actually changed," says Robert Brassuel, 62, about Project Haven, which places the most vulnerable seniors in housing at a north Phoenix hotel.
CATHERINE RAFFERTY/THE REPUBLIC

Staying at Project Haven allowed him the time and space to weigh his permanent housing options — something he'd all but given up on before coming to the hotel.

He said he hopes more people have the opportunity to experience the security and personal attention the hotel program has afforded him.

"My hopes and dreams have all changed. The direction of my life has actually changed," Brassuel said.

Glow said CASS is working through the state Legislature and the Arizona Department of Housing to try to find funding to move Project Haven to a permanent location where the organization can continue to care for homeless seniors indefinitely.



Registered nurse Ali Chrapczynski goes over medical paperwork with Salvador Muñoz, 65, at the Justa Center in Phoenix. Muñoz has been experiencing homelessness for more than a decade, but just existing on the streets is harder than it used to be, he says.

DAVID WALLACE/THE REPUBLIC

### 'I'm not really scared of dying'

Salvador Muñoz sat on the Justa Center patio in early December, an oversize gray hoodie hugging his small frame. A turquoise face mask adorned with cacti — a gift from one of his daughters — covered most of his face, but his tired eyes peeked out from under his black baseball cap.

Muñoz has been experiencing homelessness for more than a decade, but just existing on the streets is harder than it used to be, he said. Right now, he's living out of a tent in a parking lot near the Human Services Campus south of downtown Phoenix.



5/18/23, 11:35 AM
Case 2:23-cv-00495-GMS  Document 53  Filed 04/17/24  Page 107 of 147
Exceptionally deadly 2020 for homeless people in Phoenix area

## You get to that age when you're homeless and you don't have anything to show for it. And it gets depressing, you know.

Salvador Muñoz, 65, who has been experiencing homelessness over the past decade

COPY TEXT          TWEET          FACEBOOK          LINKEDIN

REDDIT          SHARE

"I guess you're like a car. The more miles you put on it, the more worn out it gets," he said.

Muñoz said he was hospitalized for heatstroke three or four times during the past few summers. Since then, his body can't handle the heat or the cold as well. And it was starting to get very cold at night, he said.

Muñoz said he's seen people his age and even younger die on the streets while he's been experiencing homelessness. He knows he may eventually share their fate, but it doesn't worry him.

"I guess I'm not really scared of dying. If it happens, it happens," Muñoz said.

Muñoz struggles with depression and said he's tried to take his own life multiple times. Each time he "snapped out of it," he said.

"I guess it wasn't meant to be. But when the time comes, it's time. You get to that age when you're homeless and you don't have anything to show for it. And it gets depressing, you know," Muñoz said.

### How to help people experiencing homelessness in metro Phoenix

There were at least 7,419 people experiencing homelessness in metro Phoenix at the start of 2020 when providers conducted the annual point-in-time count in Maricopa County.

That number likely has increased over the course of the year as COVID-19-related job loss has forced even more Arizonans into homelessness.

More than half of the people experiencing homelessness in the county are living "unsheltered" — sleeping on the streets, in desert washes, vehicles or another place not meant for habitation.

People experiencing this type of homelessness have significant needs, from food and water to blankets and clothing.

If you're interested in helping, dozens of nonprofits in metro Phoenix are accepting donations of goods and money to help care for our community's most vulnerable.

*Coverage of housing insecurity on azcentral.com and in The Arizona Republic is supported by a grant from the Arizona Community Foundation.*

*Reach the reporter at jessica.boehm@gannett.com or 480-694-1823. Follow her on Twitter @jboehm_NEWS.*



Zachery Walker, 60 (center), stands in the yard at the Justa Center, a day center for homeless people aged 55 and over, in Phoenix on Dec. 9, 2020.

DAVID WALLACE/THE REPUBLIC

Published 7:48 pm UTC Dec. 18, 2020 | **Updated 4:35 pm UTC Dec. 21, 2020**

Advertisement

Help  ·  Terms of Service  ·  Subscription Terms and Conditions  ·

Your California Privacy Rights/Privacy Policy  ·  Privacy Policy  ·  Site Map  ·  Accessibility  ·

Ethical Principles  ·  **Your Privacy Rights**

   

© 2023www.azcentral.com. All rights reserved.

# EXHIBIT E

Michael R. Bromwich
202 429 8167
mbromwich@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com



January 11, 2024

BY EMAIL

Honorable Vanita Gupta
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania, NW
Washington, DC 20530

Honorable Kristen Clarke
Assistant Attorney General
Civil Rights Division

Steven Rosenbaum
Chief, Special Litigation Section
Civil Rights Division

Re:   Department of Justice Pattern-or-Practice Investigation of City of Phoenix

Dear Ms. Gupta, Ms. Clarke, and Mr. Rosenbaum:

As you know, on August 5, 2021, Attorney General Garland announced that the Civil Rights Division was launching a pattern-or-practice investigation of the City of Phoenix (the City) and the Phoenix Police Department (PPD), pursuant to 34 U.S.C. § 12601.  That section authorizes the United States Department of Justice (DOJ) to conduct such investigations to determine whether a city and its police department are "engag[ing] in a pattern or practice of conduct by law enforcement officers…that deprives persons of rights, privileges or immunities secured or protected by the Constitution or laws of the United States."[1]  As you well know, if the DOJ makes such a finding, it is authorized to file a civil lawsuit seeking remedies designed to "eliminate the pattern or practice."[2]  Over the almost 30 years that the statutory authority has

---

[1]  34 U.S.C. § 12601(a).

[2]  34 U.S.C. § 12601 (b)

Letter to Ms. Gupta, Ms. Clarke, and Mr. Rosenbaum
January 11, 2024
Page 2



existed, the Civil Rights Division has conducted scores of pattern-or-practice investigations.  In the vast majority of cases, the matters have been resolved without resort to litigation.[3]

The DOJ's Phoenix investigation was announced several months after similar pattern-or-practice investigations were announced for Minneapolis, Minnesota (April 21, 2021), and Louisville, Kentucky (April 26, 2021).  Minneapolis was the site of the murder of George Floyd on May 25, 2020, by officers of the Minneapolis Police Department.  Louisville was the site of the fatal shooting of Breonna Taylor by officers of the Louisville Metro Police Department.  The deaths of Mr. Floyd and Ms. Taylor spurred protests throughout the country and undoubtedly served to some extent as the predicates for the DOJ pattern-or-practice investigations of those cities and those police departments.  No similar event triggered the Phoenix investigation. Despite repeated requests by City of Phoenix representatives and members of the Phoenix community for the DOJ to provide the factual predicates for the investigation, no meaningful response has been provided.  This lack of transparency has caused substantial frustration and growing resistance to the prospect of federal oversight among Phoenix residents and their elected representatives.

After 29 months, the DOJ's investigation appears to be winding down, but with no specific information on when it will conclude.  Unfortunately, one constant of the investigation has been a lack of transparency by the DOJ.  The DOJ investigative team has declined to meaningfully share its observations, impressions, concerns, or tentative conclusions with the City of Phoenix, PPD, or their counsel despite numerous requests, and has rejected a specific request for a mid-investigation briefing.  In addition, the DOJ has also stated, on two separate occasions, that it will not share a draft of its findings report prior to its public release, most recently in a letter from Assistant Attorney General Clarke in late November.[4]  As a result, the City of Phoenix will not have a meaningful ability to respond to the report in a timely way, nor to demonstrate that ongoing reforms within the City and the PPD have the potential to effectively address and remediate any historical weaknesses and deficiencies that may be identified in the DOJ findings report.

Over the last 16 months, under Interim Chief (IC) Michael G. Sullivan, those reforms have touched virtually every aspect of the operations implicated by the DOJ investigation. Lacking the opportunity to respond to the DOJ's report before it is made public, we have prepared a detailed report, submitted along with this letter.  That report describes the various policies, programs, training, and other initiatives that have been developed and implemented in PPD under IC Sullivan, with the full support of the City, as well as those that pre-dated IC Sullivan's arrival.  These changes demonstrate a powerful commitment to reform, a commitment that warrants a different approach from the DOJ than has been the case over the past dozen years.

---

[3]  U.S. Dept. of Justice Civil Rights Division, *The Civil Rights Division's Pattern and Practice Reform Work: 1994 – Present* (Jan. 2017), https://www.justice.gov/crt/file/922421/download.

[4]  Letter from Assistant Attorney General Kristen Clarke to Michael R. Bromwich, November 29, 2023.



During that time period, the DOJ has insisted on negotiating a consent decree with the city and police department under investigation in every case in which it has found a pattern or practice of Constitutional and/or statutory violations. It has not varied the solutions according to the size, history, or culture of the individual city and law enforcement agency; in other words, the DOJ has developed a one-size-fits-all approach to police reform. Indeed, in its recent investigations of Minneapolis and Louisville, the DOJ demanded that those cities commit to negotiating a consent decree even before the DOJ's findings had been shared with the respective cities and their police departments.

Although consent decrees may be the appropriate remedy in some cases, the track record of the Civil Rights Division's pattern-or-practice consent decrees over the past decade strongly suggests the need to explore alternatives if the ultimate goal is—as it should be—efficient, effective, and durable law enforcement reforms. As the accompanying report describes in detail, there are currently 11 police law enforcement agency pattern-or-practice consent decrees still in force in which the DOJ is a party.[5] Those consent decrees have been in place for periods ranging from seven to fifteen years in duration, with an average duration of more than ten years. A review of the most recent court proceedings and monitoring reports in those jurisdictions demonstrates that most are not even approaching termination through compliance with the decree requirements. Whatever their virtues, consent decrees are lengthy, complicated, and expensive. They require actors not normally a part of the process of governing the operations of law enforcement agencies: the DOJ, a monitoring team, and a federal judge. Those additional actors slow the process of implementing reform and make the arc and speed of reform implementation dependent on: (i) the vagaries of a monitoring team, which has its own incentives, and (ii) a federal judge frequently selected at random who may have no expertise in local law enforcement. That structure may make sense for other cities. Given the reforms already developed and being implemented by PPD, which are described in substantial detail in the accompanying report, it does not make sense for Phoenix.

In the past, DOJ has used other means to resolve its pattern-or-practice investigations, including memoranda of agreement, which generally involve a monitor but not a judge, and technical assistance letters, which generally require neither. Technical assistance letters were widely used during the period 2001 to 2012, with approximately 20 different cities of various sizes. They appear to have been abruptly discontinued without any public explanation, even though it is an option that should be available to a city and police department that have demonstrated the willingness and ability to identify their weaknesses and work to address them.

Based on the circumstances in Phoenix, including the commitment to change and reform reflected in the accompanying report, we request that the Department of Justice commit to negotiating in good faith a technical assistance letter with the City of Phoenix and the Phoenix

---

[5]  In late 2015, the DOJ launched a pattern-or-practice investigation of the City of Chicago and the Chicago Police Department, which resulted in a findings report issued by DOJ in January 2017. However, the DOJ bowed out of the matter in the spring of 2017. A consent decree was subsequently negotiated with the city and its police department by the Illinois State Attorney General's Office based largely on the DOJ's investigation. Although that consent decree is similar to those in which the DOJ is a party, it is not included in this discussion as a consent decree involving the DOJ.

Letter to Ms. Gupta, Ms. Clarke, and Mr. Rosenbaum
January 11, 2024
Page 4

Steptoe

Police Department, with assurances sufficient to reassure the DOJ that the City and PPD will continue with the reforms they are in the process of implementing.

        We look forward to discussing the matters addressed in this letter and the accompanying report once we have had the opportunity to review and analyze the DOJ's findings report.


                                        Sincerely,


                                        Michael R. Bromwich

# EXHIBIT F



JEFFREY PHILLIPS *
NASSER ABUJBARAH *
JONATHAN JAMIESON*
SEAN DAVIS
"TREY" A.R. DAYES III §
AARON SHERRELL
TIMOTHY A. LeDuc III
MONICA MALHOTRA

PHILLIPS LAW GROUP, P.C.
3101 N. CENTRAL AVENUE SUITE 1500 PHOENIX, AZ 85012
TELEPHONE (800)706-3000
WWW.PHILLIPSLAW.COM
HABLAMOS ESPAÑOL

TIMOTHY G. TONKIN ~'§*
STEVEN J. JONES ~'*
M. MONTANA THOMPSON '§*
DENNIS EVANS +§§
RUTHANN JAMES
DONATO GIOVANATTO
ROBERT ROSS
MERAL KOCAK

**NOTICE OF CLAIM AGAINST CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ARIZONA ATTORNEY GENERAL'S OFFICE, ARIZONA DEPARTMENT OF TRANSPORTATION, CITY OF PHOENIX POLICE DEPARTMENT, CITY OF PHOENIX CHIEF OF POLICE JERI WILLIAMS AND PPD OFFICERS JENNIFER MALONE (#09687), TERRAN CAMPBELL (#09614), SERGEANT ROBERT PITTS (#05707), SERGEANT VASQUEZ (#07143), OFFICER FELICIA RUSSELL (#11200), OFFICER HITZEL (#10879), OFFICER TIEQUON SCROGGINS (#11215), OFFICER HYNES (#09029), OFFICER MIKAC (#09351), MARICOPA COUNTY OFFICE OF THE MEDICAL EXAMINER, MARICOPA COUNTY (VALLEYWISE) HOSPITAL, DR. MCCABE (MRN #0106355712), AND OTHER GOVERNMENT ENTITIES AND/OR EMPLOYEES CONNECTED TO THE CLAIM, TRANSACTION, OR OCCURRANCE AS IDENTIFIED THROUGH INVESTIGATION AND DISCOVERY**

For Damages to Persons or Personal Property

By submitting the following information the claimants herein *seek to* comply with the requirements of A.R.S. 12-821.01 *and Deer Valley Unified School District v. Pamela McDonald, Arizona Supreme Court, CV-06-0275-PR* regarding claims against a governmental entity and its employees. *In the event that additional information or documentation is deemed necessary to evaluate this Notice of Claim, please contact undersigned counsel immediately.*

**1.     Name of Claimant:** Beatrice Johnson, personal representative of the estate of Dorothy Jean Chambers-Dale

       **Date of Birth:** 05/1954
       **Gender:** Female
**a.     Address of Claimant:** c/o Nasser Abujbarah, Esq., Phillips Law Group, P.C., 3101 N. Central Ave., Suite 1300
       **City:** Phoenix **State:** AZ      **Zip:** 85012
       **Home Phone No:** 602-258-8900 ext. 104
**2.     Occurrence or event from which the claim arises:**
**a.     Date of Loss:** 04/26/22
**b.     Time of Loss:** Approximately 8:05 pm
**c.     Location of Incident:** N 32nd St near E. Yale St, Phoenix, AZ

d.    **Specify the particular occurrence, event, act or omission you claim caused the injury or damage:**

On April 26, 2022, at or around 8:00 PM, Nebojsa Petkovic struck and killed Dorothy Jean Chambers-Dale and her boyfriend, Joseph A. Gutierrez, as they crossed the street at an uncontrolled crosswalk with no pedestrian signal on N 32nd St and Yale St in Phoenix, Arizona.

### A.  **Witness Statements**

Petkovic testified to police officers that he was driving from work to his girlfriend's house at 35-40 miles per hour when he "suddenly noticed a shopping cart going up in the air near his passenger side front bumper." He indicated he "never saw the pedestrians prior to the impact" and that his first indication of the collision was "the shopping cart going up in the air." Supplement pg. 19. Witness testimony in the police report contradicts these statements and states that Petkovic was swerving between lanes and "zigzagging" through traffic while driving on the curb at 55-60 miles per hour. Witness Brittany Carter states that she saw him apply his brakes before the collision and attempt to swerve out of the way. Witness John Donenfeld-Peled stated to Officer Reed Raymond that "had the driver been going a normal speed, he would have seen [the pedestrians]."

### B.  **Preliminary Breath Test of Nabojsa Petkovic**

Phoenix Police Department officers responded to the scene where they interviewed Petkovic and gave him a preliminary breath test (PBT) conducted by Officer Bohatir (#6681), which indicated a blood alcohol content of 0.031. Petkovic told officers his BAC was due to him having taken two doses of DayQuil earlier that day.

Detective Raymond Reed and Officer Huntington Wood conducted two independent sobriety tests. During Detective Reed's sobriety test, Petkovic took the incorrect number of steps during the Walk and Turn Test and estimated the passage of time more slowly than expected in the Romberg Modified test. During Officer Wood's test, Petkovic was "extremely emotional" and had to stop the test, where he exhibited multiple signs of impairment. During the One Leg Stand test, Petkovic held his arms greater than 6 inches from his body and hopped once 15 seconds into the test. During the Walk and Turn test, he stepped off the line on the sixth step. Despite failing multiple parts of the sobriety test, the officers let Petkovic go.

### C.  **PPD's Identification of Plaintiff**

Emergency medical personnel transported Ms. Chambers-Dale to Valleywise Medical Center (formerly Maricopa County Hospital) where she was pronounced dead at 8:34 PM. Ms. Chambers-Dale was then transported to the morgue where she was examined and identified through a database search by Vehicular Crime Unit ("VCU") Detectives Malone and Campbell, under the supervisory authority of VCU Sergeant Pitts. Mr. Gutierrez was observed to have a pulse on scene and was transported to Banner University Medical Center (Good Samaritan) where he was also pronounced dead at 9.30 PM. The police report supplements #09, #12, and #14 describe the Phoenix Police Department's involvement in the procedures during and after Ms. Chambers-Dale's' death:

PPD Incident Report # 202200000630667-009 was prepared by Patrol Officer Tiequon Scroggins describing his involvement in the incident. Officer Scroggins was patrolling with Officer Hitzel when he responded to Valleywise Hospital to provide an update on Ms. Chambers-Dale's injuries. After she was pronounced dead at 8:34pm by Dr. McCabe, he advised his supervisor Sergeant Vasquez and went to Banner Hospital to check on Mr. Gutierrez. The police

report mentions that he "waited with the body [of Mr. Gutierrez] until it was transported to the morgue" but does not state anything about what happened to Ms. Chambers-Dale's body after she was pronounced dead or whether anyone in the VCU attempted to wait with her.

PPD Incident Report # 202200000630667-012 was prepared by VCU Detective Jennifer Malone describing her involvement in the incident. She arrived on scene at 9.30 PM and was assigned to assist VCU Detective Campbell as a Case Agent. The two detectives went to Maricopa County Hospital (Valleywise) to follow up. At Valleywise, she identified Ms. Chambers-Dale through a fingerprint scan and confirmed the ID through a search of known databases, including MVD records. She then went to Banner Hospital's morgue to identify Mr. Gutierrez. After identifying both pedestrians, the report states that, "we attempted to contact a next of kin. We went to Joseph's listed address but were unable to locate anyone. Using known databases I did a record search on Joseph. I located a possible next of kin and provided this information to Detective Campbell." However, there is no indication in the report that they attempted to find the next of kin for Ms. Chambers-Dale.

PPD Incident Report # 202200000630667-014 was prepared by Officer Terran Campbell describing his contact with Ms. Chambers-Dale's brother, Robert Dale, on May 6, 2022, who was notified of Ms. Chambers-Dale's death by other people at the park that she lived in, who knew her. Mr. Dale's contact information was forwarded to the Office of the Medical Examiner.

No other information is provided in the police report regarding the chain of custody of Ms. Chambers-Dale's body by the Phoenix Police Department or the Office of the Medical Examiner, and Plaintiff reserves the right to supplement their factual and legal claims as additional discovery comes to light.

### D. Location of Crash

Plaintiff was struck and killed at an intersection controlled, maintained, and operated by the City of Phoenix. The city's known since at least May 2020, two years before decedent's death, that 32nd Street between McDowell and Thomas Roads is considered a high density crash zone, according to the City's Key Corridor's Master Plan ("KCMP") from May 2020. Arizona Department of Transportation ("ADOT") data from 2018 to 2020 shows 208 car crashes with 67 injuries occurring from Yale Street to Thomas Road. ADOT data for wrecks from 2021 or 2022, when more people experiencing homelessness started staying by the park, is not available.

The location of the crash was at 32nd St. and Yale St. in Camelback East, designated a "most disadvantaged block group" by the City of Phoenix. (KCMP pg. 45). The crash occurred by Perry Park, a public park where a high number of Phoenix's unhoused population live. At the time of the crash, the Yale and 32nd St. intersection did not have any pedestrian lights or traffic signals necessary for pedestrian safety, particularly, the decedent's.

The 2020 KCMP Master Plan prioritized the intersection decedent was killed as one of the four highest in the entire city to install a HAWK light. Sometime after the death of decedent, between August and September 2022, a HAWK signal light was installed, despite the City having approved the plan for the HAWK light in 2019. In December 2020, Phoenix put out a call for bids to work for crosswalk project at the intersection at Yale and 32nd streets. The Phoenix City Council approved a contractor to do the work in April 2021. The contract specified that all the signal project were supposed to be completed by the end of May 2022. At the end of July 2022, the

contractor requested an extension to Sept. 12, 2022, blaming supply chain issues, and the city signed off on the extension on August 3, 2022.[1]

The nearest major intersection to Perry Park, 32nd and Thomas Rd., was designated a "High Priority Intersection" by the City of Phoenix in its Key Corridors Master Plan in 2020. (KCMP pg. 8). The intersection by the south of Perry Park, 32nd and McDowell St. is designated a Tier 1 category "High Injury Crash Segment" by the City of Phoenix. (KCMP pg. 36). Both of these major intersections, and the 32nd St corridor between them where Plaintiff was killed, are designated as "High Injury Locations in Disadvantaged Areas", which the City defines as "census block groups with high rates of disadvantaged population groups in relation to high injury intersections and corridors." (KCMP pg. 43). These intersections were also identified as top priority in the City for pedestrian and bike crashes. (KCMP pg. 44).

The City of Phoenix's Road Safety Action Plan: Moving to Vision Zero ("RSAP") states that 100% fatality rate for the pedestrian crashes that occurred on Thomas Rd from 28th to 32nd St. with 71% of these crashes occurring at nighttime. (RSAP pg. 71). The City identified this intersection as one of the 68 signalized intersections with the highest propensity of "killed or seriously injured" ("KSI") crashes, representing less than 6% of Phoenix's signalized intersections but involving twice the number of all KSI crashes. (RSAP Appendix pg. xcviii).

The 32nd and Yale intersection has an on-street transit stop right in front of the pedestrian crossing which the KCMP considers "a contributing risk factor considering all intersections experience high traffic volumes." (KCMP pg. 35). Even after the City's installation of the HAWK light as a remedial measure, in the northbound direction on Yale and 32nd St, there is a tree completely covering a white stop sign. In the southbound direction, there is a bus stop and a pole in front of a pedestrian sign, and a tree in front of a white stop sign.

The City's Street Safety Toolbox identifies and details 59 design interventions that directly address a full range of corridor safety issues and corridor safety goals. Some low cost solutions identified by the City of Phoenix for pedestrian crossings include ADA curb ramps, high visibility crosswalks, rectangular rapid flashing beacons, curb extensions, in-street pedestrian crosswalk signs, leading pedestrian intervals, pedestrian countdown timers, and to mark all crossings. (KCMP pg. 54). Despite having this range of low cost options, the City failed to act to prevent the foreseeable death of Dorothy Chambers Dale.

**e.**  **State how or wherein, The City of Phoenix and/or its officers were at fault:**

In *Wiggs v. City of Phoenix,* 198 Ariz. 367, 10 P.3d 625 (2000), the Supreme Court of Arizona held that a city has a non-delegable duty to maintain its streets in a reasonably safe condition. The court based its finding in part on Restatement (Second) of Agency § 214. In *Wiggs*, a mother of a minor pedestrian who was killed when she was struck by a vehicle while crossing the street, brought a wrongful death action against the City of Phoenix. One of the issues raised by plaintiff was whether a street light at the location of the accident was working at the time of the accident. The City of Phoenix designated as a non-party at fault Arizona Public Service, the company that the city had contracted with to maintain

---

[1] https://www.12news.com/article/news/investigations/i-team/phoenix-crossing-signal-projects-months-behind-schedule-family-mourns-couple-killed/75-bede8e18-27ba-4cae-801e-5d266d6278b8

the streetlights in question. In supporting its holding that the city had a non-delegable duty to the plaintiff to maintain its streets in a safe condition, the court stated:

> Where there is a non-delegable duty, the principal is "held liable for
> the negligence of his agent, whether his agent was an employee, or an
> independent contractor." (Cites omitted). See generally, Restatement (Second) of
> Agency § 214.... Here, because APS contracted to act on the city's behalf to
> maintain the streetlights, APS was the city's agent for the performance of that
> non-delegable duty. 198 Ariz. at 367.

It is still the Arizona law that in this type of case the Government must act as "an ordinarily prudent man" and is required to "act reasonably in light of the known and foreseeable risks" in keeping its roadways safe. *Glazer v. State*, 347 P.3d 1141, 1144 (Ariz. 2015); see also, *Beach v. City of Phoenix*, 136 Ariz. 601 (1983) (extending this duty to sidewalks.).

That duty includes the duty to "protect the public, in a non-negligent manner, against hazards that could be remedied through ordinary upkeep and repair." *Glazer v. State*, 237 Ariz. 160, 166 (2015), and to place proper barriers, railings, guards and/or warning signs at dangerous places on a roadway when necessary for travelers' safety. *Bach v. State* 152 Ariz. 145, 147, 730, P.2d 854, 856 (App. 1986). Once a municipality undertakes to control traffic at an intersection with signs or warning devices, or invites the public to rely upon its signs or warning devices, then it must do so non-negligently, taking care not to create a dangerous condition, and it must properly maintain the signs or warning devices which it erects. *Lake Havasu Irr. & Drainage Dist. v. Dubois*, 117 Ariz. 511, 515 (Ct. App. 1977); citing *Slavin v. City of Tucson*.

Under federal and Arizona statutory and common law, the liability of the City of Phoenix and/or its officers, agencies, and employees (hereinafter "Defendants") for the intentional and/or negligent acts, omissions and/or neglect to Plaintiff Beatrice Johnson, personal representative of the estate of Dorothy Chambers Dale (hereinafter "Plaintiff") include some or all of the following:

- Negligence and gross negligence
- Wrongful death
- Intentional infliction of emotional distress
- Negligent infliction of emotional distress
- Mishandling a dead body
- Reckless and callous indifference to Plaintiff's rights under color of law
- A pattern or practice of constitutional violations against Plaintiff under color of law
- Conspiracy to violate Plaintiff's constitutional rights under color of law
- Discriminating against Plaintiff's class under color of law
- Treating plaintiff differently than similarly situated entities under color of law
- Acting with deliberate indifference to the constitutional rights of Plaintiff
- Depriving Plaintiff of their constitutional rights to equal protection
- Depriving Plaintiff of their constitutional rights to substantive and procedural due process of law
- Depriving Plaintiff of their constitutional rights to family association and privacy
- Implementing and/or executing unconstitutional policy statements, ordinances, regulations, and/or decisions under color of law

Page **6** of **11**

- Implementing and/or executing an unofficial policy of inaction to Plaintiff's clearly established rights
- Unconstitutional decisions, acts, and practices so persistent and widespread as to practically have the force of law
- Respondeat superior and/or vicarious liability
- Negligent hiring
- Failure to properly supervise
- Failure to perform caretaking function
- Failure to enact traffic control plan
- Failure to properly train or modify its training to officers and/or employees
- Unconstitutional written and unwritten customs, patterns, practices, policies, and training programs
- Breach of duty to provide reasonably safe roadways, streets, and sidewalks
- Failure to act to fulfill duty to provide reasonably safe roadways, streets, and sidewalks
- Failure to act to remedy foreseeable danger to pedestrians
- Failure to take protective measures to guard against collisions between automobiles and pedestrians
- Substandard and dangerous roadway design and/or plan
- Failure to remedy the roadway's dangerous design
- Negligent design, selection and installation of traffic control devices related to pedestrian safety
- Negligent operation of roadway plan for construction
- Failure to adhere to operational standards for roadway construction
- Failure to enact considered decision to improve roadway
- Negligent and improper maintenance and improvement of roadway
- Failure to perform ordinary repair and upkeep as needed to keep the traveling public safe
- Unreasonably dangerous condition of public property
- Failure to warn of unreasonably dangerous condition
- Failure to post adequate warnings to alert travelers that they must stop for pedestrians
- Failure to post appropriate stop signs
- Failure to post appropriate warning signs
- Failure to post appropriate speed signs
- Failure to implement appropriate speed regulations for area
- Failure to address material changes in roadway travel that affect safety
- Failure to remove obvious obstructions to signs
- Failure to repair obvious obstructions in roadways
- Failure to appropriately light roadways
- Failure to maintain reasonably safe crosswalks and sidewalks
- Negligent repair or upkeep of city property

Per Ariz. Rev. Stat. Ann. § 28-7201, "roadway" includes all or part of a platted or designated public street, highway, alley, lane, parkway, avenue, road, sidewalk or other public way, whether or not it has been used as such. Plaintiff uses the term "roadway" to include

intersections, crosswalks, and any signage, traffic lights, illumination lights, markings, paint, or anything related to traffic safety operation.

Defendants may be liable in other ways, and Plaintiff reserves the right to supplement additional theories of liability based on receipt of discovery materials in this case. The acts and omissions by the City of Phoenix and its officers or agencies caused the death of Dorothy Chambers Dale and damages to her estate.

**3.** **Give the name(s) of the City of Phoenix employees having knowledge of or involved in the incident:**

| Department | Name | Badge # | Role |
|---|---|---|---|
| VCU | Detective Jennifer Malone | 09687 | Case Agent with Det. Campbell, went to Maricopa County Hospital morgue and ID'd Ms. Chambers through a fingerprint scan, MVD records search, and using known databases. ID's Mr. Gutierrez through records search of associates of Ms. Chambers. Attempted to locate next of kin of Mr. Gutierrez but not Ms. Chambers. |
| VCU | Detective Terran Campbell | 09614 | Spoke with Robert Dale on 5/6/22, Ms. Chambers' brother, and supplemented police report with next of kin |
| VCU | Sergeant Pitts | 05707 | VCU supervisor, contacted Det. Malone to assist |
| VCU | Detective Michael Davidson | 07038 | Reconstructed collision and impounded property |
| VCU | Detective Raymond Reed | 08859 | Audio recorded interview with D and gave field sobriety test, interviewed witnesses Carter and Donenfeld-Peled |
| VCU | Detective Gabriel Marquez | 10127 | Imaged airbag control module on site and impounded property |
| Patrol Officer | Sergeant Vasquez | 07143 | Supervisor |

| Patrol Officer | Officer Felicia Russell | 11200 | Officer in training, briefed Det. Malone on scene, interviewed witness Hebranr |
|---|---|---|---|
| Patrol Officer | Officer Aren Gallovich | 10151 | Patrolling with Off. Wood, interviewed witness Christine Jones and performed CPR on Ms. Chambers |
| Patrol Officer | Officer Huntington Wood | 11202 | Interviewed D and gave sobriety test |
| Unknown | Officer Hitzel | 10879 | Went to hospital |
| Unknown | Officer Benjamin Torngren | 11218 | Interviewed witnesses Brittany Carter and Alan Torres on scene |
| Unknown | Officer Zwemke | 10887 | Patrolling with Officer Torngren |
| Unknown | Officer Tiequon Scroggins | 11215 | Patrolling with Off. Hitzel, saw the bodies at hospital, advised supervisor Sgt. Vasquez, waited with Gutierrez body until transported to morgue |
| Unknown | Officer Francisco Garcia | 09705 | Patrolling with Off. Lara, responded to emergency call. Interviewed witness nurse Sanchez on scene. |
| Unknown | Officer Lara | 10101 | Mentioned in Off. Garcia's report |
| Unknown | Officer Andre Wesson | 09696 | Performed CPR on Ms. Chambers |
| Unknown | Officer Olmos | | Patrolling with Officer Russell |
| Unknown | Officer Hynes | 09029 | Present at Banner Good Samaritan with Gutierrez, mentioned in Officer Scroggins' police report |

| Unknown | Officer Mikac | 09351 | Present at Banner Good Samaritan with Gutierrez, mentioned in Officer Scroggins' police report |
| Valleywise | Dr. McCabe | MRN #: 0106355712 | Doctor at Valleywise Hospital who pronounced Ms. Chambers dead |
| Unknown | Officer Andre Wesson | 09696 | Performed CPR on Ms. Chambers |

**4.    Describe the injury, property damage or loss (include name and address of other persons injured):**

The injury suffered by the estate of Plaintiff includes but is not limited to the following: Ms. Dorothy Jean Chambers-Dale suffered deprivations of her constitutional rights to equal protection and substantive and procedural due process of law. The estate of Ms. Dorothy Jean Chambers-Dale and her family members suffered deprivations of their constitutional rights to family association, privacy, and sepulcher for the intentional and/or negligent acts, omissions and/or neglect of the municipality and its employees in the wrongful death of Ms. Chambers-Dale.

As a direct and proximate result of the negligence and carelessness of Defendants, and a direct and proximate result of the death of the decedent, the estate of Plaintiff has forever been deprived of the love, care, attention, companionship, guidance, counseling, services, common benefits of Decedent Ms. Chambers-Dale and have, thereby, been damaged in an amount to be proven at the time of trial.

As a further direct and proximate result of the death of decedent, the estate of Plaintiff has incurred expenses associated with decedent's death including, but not limited to, funeral and burial expenses and has, thereby, suffered special damages in an amount to be proven at the time of trial. The estate of Plaintiff, on behalf of all statutory claimants, pray for judgment against the Defendants, as follows:

a. For general damages, in an amount sufficient to compensate the estate of Plaintiff and all claimants for the wrongful death of Decedent Ms. Chambers-Dale in an amount to be proven at the time of trial together with interest thereon at the highest lawful rate from the date of judgment until paid in full;

b. For special damages in an amount sufficient to compensate the estate of Plaintiff and statutory claimant in an amount sufficient to compensate same for past, present and future economic losses together with interest thereon at the highest lawful rate from the date said expenses occurred or the date of judgment, whichever is sooner;

c. For special damages in an amount sufficient to compensate the estate of Plaintiff for funeral and burial expenses in an amount to be proven at the time of trial together with interest thereon from the date said expenses were incurred until paid in full;

d. For loss of consortium to the estate of Plaintiff;

Page **10** of **11**

     e. For interest at the highest legal rate on all damages and costs from the time incurred on the date of such judgment, whichever is sooner, until paid; and

     f. For such other and further relief as the Court deems just and proper.

     g. Reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest

**5.**     **Sum Certain Dollar amount requested to settle this incident**:   **$10,000,000**

**a.**     **Basis for computation of amounts claimed (include copies of all bills, invoices, estimates, receipts, etc.)**

     Will be supplemented.

**6.**     **Name and addresses of all witnesses, hospitals, doctors, etc.**

Witnesses listed in the police report include:

     1.     Amit Donenfeld-Peled

     2.     Brittany June Carter

     3.     Alan Torres

     4.     John Pace Hebranr

     5.     Christine Jones

     6.     Abryenna Desiree Sanchez

City of Phoenix Police Officers:

     7.     Officers Jennifer Malone (#09687)

     8.     Terran Campbell (#09614)

     9.     Sergeant Robert Pitts (#05707)

     10.     Sergeant Vasquez (#07143)

     11.     Officer Felicia Russell (#11200)

     12.     Officer Hitzel (#10879)

     13.     Officer Tiequon Scroggins (#11215)

     14.     Officer Hynes (#09029)

     15.     Officer Mikac (#09351)

Maricopa County Office of the Medical Examiner

     16.     Medical Examiner: *Unknown* – will supplement

Maricopa County (Valleywise) Hospital

     17.     Dr. Mccabe (MRN #0106355712)

**7.**     **Any additional information that might be helpful in considering claim:**

     Beatrice Johnson, personal representative of the estate of Dorothy Jean Chambers, is represented by Phillips Law Group attorney Nasser Abujbarah, Esq. of Phillips Law Group at 3101 North Central Avenue, Suite 1300, Phoenix, Arizona 85012.  His phone number is (602) 258-8900, ext.104.

     Attached please find the following exhibits:

     1.     Phoenix Police Department Crash Report # 202200000630667, dated April 26, 2022.

     2.     Photographs from Phoenix Police Department relating to Crash Report # 202200000630667

     3.     City of Phoenix: *Road Safety Action Plan – Vision Zero*

     4.     City of Phoenix: *Key Corridors Master Plan – Safety Analysis and Strategies Report*

Page **11** of **11**

**WARNING: IT IS A CRIMINAL OFFENSE TO FILE A FALSE CLAIM!!**
(See A.R.S. 13-2310 Insurance Code 44-1220)

I have read the matters and statements made in the above claim.  I know the same to be true of my own knowledge, except as to those matters stated upon information or belief and as to such matters I believe the same to be true.  I certify under penalty of perjury that the foregoing is true and correct.

Signed this_____day of October 2022.

Claimant's Representative Signature _____

**NOTE: Claims must be filed within 180 days after the cause of action accrues.**

# EXHIBIT G

Job:   7822737
Status:   Served (3 Day)

Client:   PHILLIPS LAW GROUP

Print

ARIZONA AZ PHX Certificate - SubServe

| | For Court Use Only |
|---|---|
| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>Telephone   602-258-8900<br>No: | |

Attorney For:   CLAIMANT   Ref. No. or File No.:   67103

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE
Defendant:   CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.   *At the time of service I was at least 21 years of age and not a party to this action.*

2.   I served copies of the
     NOTICE OF CLAIM

3.   *a.   Party served:*   ARIZONA ATTORNEY GENERALS OFFICE
     *b.   Person served:*   Lisa Fisher, lobby receptionist

4.   *Address where the party was served:*   2005 N. CENTRAL AVENUE, PHOENIX, AZ 85004

5.   *I served the party:*
     a. by substituted service.   On Tue, Oct 18 2022 at: 04:37 PM by leaving the copies with or in the presence of:
     Lisa Fisher, lobby receptionist , Caucasian , Female , Age: 50's , Hair: Gray , Eyes: Brown , Height: 5'5" , Weight: 155lbs .

     (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

I Declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

6.   *Person Executing:*
     a. Bill Bilyk MC-8749, Maricopa County
     b. FIRST LEGAL
        3737 North 7th. Street Suite 209
        PHOENIX, AZ 85014
     c. (602) 248-9700

10/19/2022
*(Date)*

B . Bl
*(Signature)*

CERTIFICATE OF SERVICE



7822737 (10487178)

ServeManager

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>  Telephone  602-258-8900<br>        No: | For Court Use Only |
|---|---|

| Attorney For:   CLAIMANT | Ref. No. or File No.:   67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY
              JEAN CHAMBERS-DALE
Defendant:  CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.   Party served:*    ARIZONA ATTORNEY GENERALS OFFICE
    *b.   Person served:*  Lisa Fisher, lobby receptionist

4.  *Address where the party was served:*    2005 N. CENTRAL AVENUE, PHOENIX, AZ 85004

5.  I served the party:
    a. by substituted service.    On: Tue, Oct 18 2022 at : 04:37 PM by leaving the copies with or in the presence of:
                        Lisa Fisher, lobby receptionist , Caucasian , Female , Age: 50's , Hair: Gray , Eyes: Brown , Height: 5'5" , Weight: 155lbs .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                    I Declare under penalty of perjury under the laws of the State of
                                    Arizona that the foregoing is true and correct.
6.  *Person Executing:*
    *a.* Bill Bilyk MC-8749, Maricopa County
    *b.* FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    *c.* (602) 248-9700

            10/19/2022                              *B. Bl*
            _____                    _____
               *(Date)*                                *(Signature)*

                            CERTIFICATE OF SERVICE

                                                        7822737 (10487178)

**FL** FIRST LEGAL

Job: **7794487**                                      Client:   PHILLIPS LAW GROUP
Status:   (3 Day) Served

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>  Telephone   602-258-8900<br>  No: | For Court Use Only |
|---|---|

| Attorney For: | Ref. No. or File No.:   67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY
            JEAN CHAMBERS-DALE
Defendant:  CITY OF PHOENIX

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.  Party served:*      ARIZONA ATTORNEY GENERALS OFFICE
    *b.  Person served:*    David Rosado - Admin II - Authorized to Accept

4.  *Address where the party was served:*   2005 N. CENTRAL AVENUE, PHOENIX, AZ 85004

5.  *I served the party:*
    a. by substituted service.    On: Wed, Oct 12 2022 at : 01:50 PM by leaving the copies with or in the presence of:
                                  David Rosado - Admin II - Authorized to Accept , Hispanic , Male , Age: 40 , Hair: Black , Eyes: Brown , Height: 5'10" , Weight: 200
                                  , Description: Glasses .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                              I Declare under penalty of perjury under the laws of the State of
                                              Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Eric Henningsen MC-7129, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

                                                              *Eric H~~~~*

                    _____            _____
                           (Date)                         (Signature)
                         10/12/2022

                         CERTIFICATE OF SERVICE



                                                              *7794487 (10486596)*

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>Telephone 602-258-8900<br>No: | For Court Use Only |
|---|---|

| Attorney For: | Ref. No. or File No.: 67103 |
|---|---|

| Insert name of Court, and Judicial District and Branch Court: |
|---|

| Plaintiff: BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY<br>JEAN CHAMBERS-DALE<br>Defendant: CITY OF PHOENIX |
|---|

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   NOTICE OF CLAIM

3. a. *Party served:*  ARIZONA ATTORNEY GENERALS OFFICE
   b. *Person served:*  David Rosado - Admin II - Authorized to Accept

4. *Address where the party was served:*  2005 N. CENTRAL AVENUE, PHOENIX, AZ 85004

5. *I served the party:*
   a. by substituted service.   On: Wed, Oct 12 2022 at : 01:50 PM by leaving the copies with or in the presence of:
   David Rosado - Admin II - Authorized to Accept , Hispanic , Male , Age: 40 , Hair: Black , Eyes: Brown , Height: 5'10" , Weight: 200
   , Description: Glasses .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

6. *Person Executing:*
   a. Eric Henningsen MC-7129, Maricopa County
   b. FIRST LEGAL
      3737 North 7th. Street Suite 209
      PHOENIX, AZ 85014
   c. (602) 248-9700

__10/12/2022__                    _Eric H_____
(Date)                              (Signature)

CERTIFICATE OF SERVICE



7794487 (10486596)

Job:    **7794491**
Status:   (3 Day) Served

Client:    PHILLIPS LAW GROUP

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>Telephone  602-258-8900<br>No: | |

Attorney For:          | Ref. No. or File No.:   67103

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY
JEAN CHAMBERS-DALE
Defendant:   CITY OF PHOENIX

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
NOTICE OF CLAIM

3.  *a.  Party served:*      CHIEF OF POLICE, PHOENIX POLICE DEPARTMENT
*b.  Person served:*    Jessica Castro - Special Deputy City Clerk - Authorized to Accept

4.  *Address where the party was served:*    200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
a. by substituted service.   On: Wed, Oct 12 2022 at: 02:08 PM by leaving the copies with or in the presence of:
Jessica Castro - Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
Height: 5'5" , Weight: 150 .

(a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

6.  *Person Executing:*
a. Eric Henningsen MC-7129, Maricopa County
b. FIRST LEGAL
3737 North 7th. Street Suite 209
PHOENIX, AZ 85014
c. (602) 248-9700

10/12/2022
*(Date)*

*Eric H_____*
*(Signature)*

CERTIFICATE OF SERVICE



7794491 (10486597)

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>Telephone   602-258-8900<br>No: | For Court Use Only |
|---|---|
| Attorney For: | Ref. No. or File No.:   67103 |

| Insert name of Court, and Judicial District and Branch Court: | |
|---|---|
| Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY JEAN CHAMBERS-DALE | |
| Defendant: CITY OF PHOENIX | |

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.  Party served:*     CHIEF OF POLICE, PHOENIX POLICE DEPARTMENT
    *b.  Person served:*   Jessica Castro - Special Deputy City Clerk - Authorized to Accept

4.  *Address where the party was served:*   200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  I served the party:
    a. by substituted service.    On: Wed, Oct 12 2022 at: 02:08 PM by leaving the copies with or in the presence of:
                                  Jessica Castro - Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
                                  Height: 5'5" , Weight: 150 .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                                            I Declare under penalty of perjury under the laws of the State of
                                                            Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Eric Henningsen MC-7129, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

                              _____        _____
                              10/12/2022                      *Eric H_____*
                              (Date)                          (Signature)


                              CERTIFICATE OF SERVICE


                                                                                7794491 (10486597)

**FL**
**FIRST LEGAL**

Job:   **7822718**

Client:   PHILLIPS LAW GROUP

Status:   Served (3 Day)

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>  Telephone   602-258-8900<br>  No: | |

| Attorney For:   CLAIMANT | Ref. No. or File No.:   67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

| Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE |
|---|
| Defendant:   CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL. |

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   NOTICE OF CLAIM

3. *a.   Party served:*   CHIEF OF OLICE, PHOENIX POLICE DEPARTMENT
   *b.   Person served:*   Jessica Castro, special deputy clerk

4. *Address where the party was served:*   200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5. *I served the party:*
   a. by substituted service.   On: Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
      Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

   I Declare under penalty of perjury under the laws of the State of
   Arizona that the foregoing is true and correct.

6. *Person Executing:*
   *a.* Bill Bilyk MC-8749, Maricopa County
   *b.* FIRST LEGAL
      3737 North 7th. Street Suite 209
      PHOENIX, AZ 85014
   *c.* (602) 248-9700

_____          B. Bl_____
10/19/2022
(Date)                              (Signature)

CERTIFICATE OF SERVICE



7822718 (10487180)

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>   Telephone  602-258-8900<br>      No: | For Court Use Only |
|---|---|
| Attorney For:  CLAIMANT | Ref. No. or File No.:  67103 |

| Insert name of Court, and Judicial District and Branch Court: |
|---|

| Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE<br>Defendant:  CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL. |
|---|

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   NOTICE OF CLAIM

3. *a. Party served:*    CHIEF OF OLICE, PHOENIX POLICE DEPARTMENT
   *b. Person served:*  Jessica Castro, special deputy clerk

4. *Address where the party was served:*  200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5. *I served the party:*
   a. by substituted service.  On Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
         Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

   I Declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

6. *Person Executing:*
   a. Bill Bilyk MC-8749, Maricopa County
   b. FIRST LEGAL
      3737 North 7th. Street Suite 209
      PHOENIX, AZ 85014
   c. (602) 248-9700

| 10/19/2022 | |
|---|---|
| (Date) | (Signature) |

CERTIFICATE OF SERVICE

*7822718 (10487180)*

Job:  **7822418**                                           Client:    PHILLIPS LAW GROUP
Status:  Served (3 Day)

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN ) PHILLIPS LAW GROUP 3101 N Central Avenue Suite 1500 Phoenix, AZ 85012 Telephone  602-258-8900 No: | |

| | Ref. No. or File No.:  67103 |
|---|---|
| *Attorney For:*  CLAIMANT | |

*Insert name of Court, and Judicial District and Branch Court:*

*Plaintiff:*  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY
JEAN CHAMBERS-DALE
*Defendant:*  CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.  Party served:*      CITY OF PHOENIX POLICE DEPARTMENT
    *b.  Person served:*    Jessica Castro, special deputy clerk

4.  *Address where the party was served:*    200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.    On: Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
                                  Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

                                                    I Declare under penalty of perjury under the laws of the State of
                                                    Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    *a.* Bill Bilyk MC-8749, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

                        _____10/19/2022_____              B. Bl_____
                              *(Date)*                              *(Signature)*

                              CERTIFICATE OF SERVICE



                                                                    7822418 (10487179)

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>   Telephone  602-258-8900<br>       No: | For Court Use Only |
|---|---|

| Attorney For:  CLAIMANT | Ref. No. or File No.:  67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE

Defendant:  CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
NOTICE OF CLAIM

3.  *a.  Party served:*    CITY OF PHOENIX POLICE DEPARTMENT
    *b.  Person served:*  Jessica Castro, special deputy clerk

4.  *Address where the party was served:*  200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.    On: Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
                Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Bill Bilyk MC-8749, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

| 10/19/2022 | B. Bl |
|---|---|
| (Date) | (Signature) |

CERTIFICATE OF SERVICE

7822418 (10487179)



Job: **7781982**                                                Client:   PHILLIPS LAW GROUP
Status:   (3 Day) Served

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN ) | |
| PHILLIPS LAW GROUP | |
| 3101 N Central Avenue Suite 1500 | |
| Phoenix, AZ 85012 | |
| Telephone   602-258-8900 | |
| No: | |

| Attorney For: | Ref. No. or File No.:   67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY
              JEAN CHAMBERS-DALE
Defendant:   CITY OF PHOENIX

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  a.  *Party served:*    CITY OF PHOENIX POLICE DEPARTMENT
    b.  *Person served:*   Jessica Castro - Special Deputy City Clerk - Authorized to Accept

4.  *Address where the party was served:*    200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.   On: Tue, Oct 11 2022 at: 10:36 AM by leaving the copies with or in the presence of:
    Jessica Castro - Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
    Height: 5'5" , Weight: 150 .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Eric Henningsen MC-7129, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

10/12/2022                                           *Eric H*

_____                    _____
(Date)                                               (Signature)

CERTIFICATE OF SERVICE

*7781982 (10486331)*



| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>　Telephone 602-258-8900<br>　　　No: | | For Court Use Only |
|---|---|---|
| Attorney For: | Ref. No. or File No.:　67103 | |
| Insert name of Court, and Judicial District and Branch Court: | | |

| Plaintiff:　BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY<br>　　　　　　JEAN CHAMBERS-DALE<br>Defendant:　CITY OF PHOENIX | | | | |
|---|---|---|---|---|
| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |

1.　*At the time of service I was at least 21 years of age and not a party to this action.*

2.　I served copies of the
　　NOTICE OF CLAIM

3.　*a.　Party served:*　　CITY OF PHOENIX POLICE DEPARTMENT
　　*b.　Person served:*　Jessica Castro - Special Deputy City Clerk - Authorized to Accept

4.　*Address where the party was served:*　　200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.　*I served the party:*
　　a. by substituted service.　　On Tue, Oct 11 2022 at: 10:36 AM by leaving the copies with or in the presence of:
　　　　　　　　　　　　　　　Jessica Castro - Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
　　　　　　　　　　　　　　　Height: 5'5" , Weight: 150 .

　　(a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

　　Service: $30.00, Mileage: $0.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $40.00

　　　　　　　　　　　　　　　　　　　　　I Declare under penalty of perjury under the laws of the State of
　　　　　　　　　　　　　　　　　　　　　Arizona that the foregoing is true and correct.

6.　*Person Executing:*
　　*a.* Eric Henningsen MC-7129, Maricopa County
　　b. FIRST LEGAL
　　　3737 North 7th. Street Suite 209
　　　PHOENIX, AZ 85014
　　c. (602) 248-9700

　　　　　　　　　　　　　　　　　　10/12/2022　　　　　　　　　　　　　　　　　_Eric H_____
　　　　　　　　　　　　　　　　　　_(Date)_　　　　　　　　　　　　　　　　　　　_(Signature)_

　　　　　　　　　　　　　　　　　　CERTIFICATE OF SERVICE

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*7781982 (10486331)*



| Job: | **7822748** | Client: | PHILLIPS LAW GROUP |
|---|---|---|---|
| Status: | Served (3 Day) | | |

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>   Telephone   602-258-8900<br>   No: | |

| *Attorney For:*   CLAIMANT | *Ref. No. or File No.:*   67103 |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*

*Plaintiff:*   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY
            JEAN CHAMBERS-DALE
*Defendant:*   CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.*   *Party served:*     CLERK OF MARICOPA COUNTY
    *b.*   *Person served:*    Michael Nimtz, Service Director

4.  *Address where the party was served:*   620 WEST JACKSON STREET, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.   On: Tue, Oct 18 2022 at : 04:15 PM by leaving the copies with or in the presence of:
                                 Michael Nimtz, Service Director , Caucasian , Male , Age: 40's , Hair: Bald , Eyes: Brown , Height: 6'2" , Weight: 220lbs ,
                                 Description: Glasses .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

6.  *Person Executing:*
    *a.* Bill Bilyk MC-8749, Maricopa County
    *b.* FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    *c.* (602) 248-9700

| I Declare under penalty of perjury under the laws of the State of<br>Arizona that the foregoing is true and correct. |
|---|

10/19/2022

_____                    _____
*(Date)*                                         *(Signature)*

CERTIFICATE OF SERVICE



7822748 (10487176)

ServeManager

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>　Telephone  602-258-8900<br>　　　No: | For Court Use Only |
|---|---|

| Attorney For:  CLAIMANT | Ref. No. or File No.:  67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE
Defendant:  CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   NOTICE OF CLAIM

3. a. *Party served:*    CLERK OF MARICOPA COUNTY
   b. *Person served:*  Michael Nimtz, Service Director

4. *Address where the party was served:*  620 WEST JACKSON STREET, PHOENIX, AZ 85003

5. *I served the party:*
   a. by substituted service.    On: Tue, Oct 18 2022 at : 04:15 PM by leaving the copies with or in the presence of:
   　　　　　　　　Michael Nimtz, Service Director , Caucasian , Male , Age: 40's , Hair: Bald , Eyes: Brown , Height: 6'2" , Weight: 220lbs ,
   　　　　　　　　Description: Glasses .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

   　　　　　　　　　　　　　　　　　　　　　　I Declare under penalty of perjury under the laws of the State of
   　　　　　　　　　　　　　　　　　　　　　　Arizona that the foregoing is true and correct.

6. *Person Executing:*
   a. Bill Bilyk MC-8749, Maricopa County
   b. FIRST LEGAL
   　 3737 North 7th. Street Suite 209
   　 PHOENIX, AZ 85014
   c. (602) 248-9700

| 10/19/2022 | *B . Bl* |
|---|---|
| *(Date)* | *(Signature)* |

CERTIFICATE OF SERVICE

*7822748 (10487176)*

FL
FIRSTLEGAL

Job:   **7801782**                                                      Client:   PHILLIPS LAW GROUP
Status:   (3 Day) Served

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>Telephone  602-258-8900<br>No: | |

| Attorney For: | Ref. No. or File No.:  67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY
                   JEAN CHAMBERS-DALE
Defendant:   CITY OF PHOENIX

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.   *At the time of service I was at least 21 years of age and not a party to this action.*

2.   I served copies of the
       NOTICE OF CLAIM

3.   *a.   Party served:*     CLERK OF MARICOPA COUNTY
      *b.   Person served:*   Theresa - H. R. Specialist - Authorized to Accept

4.   *Address where the party was served:*   620 WEST JACKSON STREET, PHOENIX, AZ 85003

5.   *I served the party:*
      a. by substituted service.   On: Fri, Oct 14 2022 at : 09:41 AM by leaving the copies with or in the presence of:
      Theresa - H. R. Specialist - Authorized to Accept , Hispanic , Female , Age: 45 , Hair: Black , Eyes: Brown , Height: 5'5" , Weight:
      160 , Description: Glasses .

      (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

      Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

6.   *Person Executing:*
      a. Eric Henningsen MC-7129, Maricopa County
      b. FIRST LEGAL
         3737 North 7th. Street Suite 209
         PHOENIX, AZ 85014
      c. (602) 248-9700

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

_____                    _____
10/14/2022                                                       *Eric H*
*(Date)*                                                                *(Signature)*

CERTIFICATE OF SERVICE



7801782 (10486750)

ServeManager

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>　　Telephone　602-258-8900<br>　　　　No: | For Court Use Only |
|---|---|
| Attorney For: | Ref. No. or File No.:　67103 |
| Insert name of Court, and Judicial District and Branch Court: | |

| Plaintiff:　BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY JEAN CHAMBERS-DALE<br>Defendant:　CITY OF PHOENIX | | | | |
|---|---|---|---|---|
| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |

1.　*At the time of service I was at least 21 years of age and not a party to this action.*

2.　I served copies of the
　　NOTICE OF CLAIM

3.　*a.　Party served:*　　CLERK OF MARICOPA COUNTY
　　*b.　Person served:*　Theresa - H. R. Specialist - Authorized to Accept

4.　*Address where the party was served:*　620 WEST JACKSON STREET, PHOENIX, AZ 85003

5.　*I served the party:*
　　a. by substituted service.　On: Fri, Oct 14 2022 at: 09:41 AM by leaving the copies with or in the presence of:
　　Theresa - H. R. Specialist - Authorized to Accept , Hispanic , Female , Age: 45 , Hair: Black , Eyes: Brown , Height: 5'5" , Weight:
　　160 , Description: Glasses .

　　(a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

I Declare under penalty of perjury under the laws of the State of
Arizona that the foregoing is true and correct.

6. *Person Executing:*
　a. Eric Henningsen MC-7129, Maricopa County
　b. FIRST LEGAL
　　3737 North 7th. Street Suite 209
　　PHOENIX, AZ 85014
　c. (602) 248-9700

_____10/14/2022_____　　　_____
*(Date)*　　　　　　　　　　　　　　　　*(Signature)*

CERTIFICATE OF SERVICE

FL
FIRST LEGAL

7801782 (10486750)

| Job: | **7781996** | Client: | PHILLIPS LAW GROUP |
| Status: | (3 Day) Served | | |

Print

ARIZONA AZ PHX Certificate - SubServe

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>  Telephone  602-258-8900<br>  No: | For Court Use Only |
|---|---|
| Attorney For: | Ref. No. or File No.:  67103 |

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY
JEAN CHAMBERS-DALE
Defendant:  CITY OF PHOENIX

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
NOTICE OF CLAIM

3.  *a.  Party served:*     PHOENIX POLICE DEPARTMENT C/O TERRAN CAMPBELL
    *b.  Person served:*    Jessica Castro -Special Deputy City Clerk - Authorized to Accept

4.  *Address where the party was served:*     200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.   On: Tue, Oct 11 2022 at: 10:36 AM by leaving the copies with or in the presence of:
    Jessica Castro -Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
    Height: 5'5" , Weight: 150 .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                                                      I Declare under penalty of perjury under the laws of the State of
                                                                      Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Eric Henningsen MC-7129, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

                                            _____          _____
                                                 10/12/2022
                                                   *(Date)*                        *(Signature)*

                              CERTIFICATE OF SERVICE

                                                                                        *7781996 (10486334)*



| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>    Telephone  602-258-8900<br>              No: | For Court Use Only |
|---|---|
| Attorney For: | Ref. No. or File No.:  67103 |

| Insert name of Court, and Judicial District and Branch Court: |
|---|

| Plaintiff:  BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE STATE OR DOROTHY JEAN CHAMBERS-DALE<br>Defendant:  CITY OF PHOENIX |
|---|

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.  *a.   Party served:*      PHOENIX POLICE DEPARTMENT C/O TERRAN CAMPBELL
    *b.   Person served:*   Jessica Castro -Special Deputy City Clerk - Authorized to Accept

4.  *Address where the party was served:*   200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.   On: Tue, Oct 11 2022 at: 10:36 AM by leaving the copies with or in the presence of:
                                 Jessica Castro -Special Deputy City Clerk - Authorized to Accept , Hispanic , Female , Age: 60 , Hair: Black , Eyes: Brown ,
                                 Height: 5'5" , Weight: 150 .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                                      I Declare under penalty of perjury under the laws of the State of
                                                      Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    *a.* Eric Henningsen MC-7129, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

        _____              _____
               10/12/2022
                (Date)                              (Signature)

                          CERTIFICATE OF SERVICE

                                                                        *7781996 (10486334)*

**FL**
FIRST LEGAL

Job:  **7822725**                                                          Client:   PHILLIPS LAW GROUP
Status:   Served (3 Day)

Print

ARIZONA AZ PHX Certificate - SubServe

| | For Court Use Only |
|---|---|
| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>    Telephone    602-258-8900<br>    No: | |

| Attorney For:   CLAIMANT | Ref. No. or File No.:   67103 |
|---|---|

Insert name of Court, and Judicial District and Branch Court:

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY
              JEAN CHAMBERS-DALE
Defendant:   CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    NOTICE OF CLAIM

3.   a.   *Party served:*     PHOENIX POLICE DEPARTMENT TERRAN CAMPBELL
     b.   *Person served:*    Jessica Castro, special deputy clerk

4.  *Address where the party was served:*    200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5.  *I served the party:*
    a. by substituted service.    On: Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
                                   Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

    Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

                                              I Declare under penalty of perjury under the laws of the State of
                                              Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Bill Bilyk MC-8749, Maricopa County
    b. FIRST LEGAL
       3737 North 7th. Street Suite 209
       PHOENIX, AZ 85014
    c. (602) 248-9700

                              _____          _____
                                   10/19/2022                         *(Signature)*
                                    *(Date)*

                                       CERTIFICATE OF SERVICE



                                                                      7822725 (10487181)

| Attorney or Party without Attorney:<br>NASSER ABUJBARAH (SBN )<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>   Telephone   602-258-8900<br>         No: | For Court Use Only |
|---|---|

| Attorney For:   CLAIMANT | Ref. No. or File No.:   67103 |
|---|---|

**Insert name of Court, and Judicial District and Branch Court:**

Plaintiff:   BEATRICE JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY JEAN CHAMBERS-DALE

Defendant:   CITY OF PHOENIX, CLERK OF MARICOPA COUNTY, PHOENIX CITY COUNCIL, ET. AL.

| CERTIFICATE OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   NOTICE OF CLAIM

3. *a.   Party served:*     PHOENIX POLICE DEPARTMENT TERRAN CAMPBELL
   *b.   Person served:*   Jessica Castro, special deputy clerk

4. *Address where the party was served:*     200 W. WASHINGTON STREET 15TH FLOOR, PHOENIX, AZ 85003

5. *I served the party:*
   a. by substituted service.     On: Tue, Oct 18 2022 at : 03:58 PM by leaving the copies with or in the presence of:
   Jessica Castro, special deputy clerk , Hispanic , Female , Age: 60's , Hair: Black , Eyes: Brown , Height: 7'5" , Weight: 160lbs .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $18.08, Mileage: $24.00, Certificate: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

   I Declare under penalty of perjury under the laws of the State of
   Arizona that the foregoing is true and correct.

6. *Person Executing:*
   *a.* Bill Bilyk MC-8749, Maricopa County
   b. FIRST LEGAL
      3737 North 7th. Street Suite 209
      PHOENIX, AZ 85014
   c. (602) 248-9700

| 10/19/2022 | *B. Bl* |
|---|---|
| (Date) | (Signature) |

CERTIFICATE OF SERVICE

**FL**
FIRST LEGAL

*7822725 (10487181)*