**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beatrice Johnson, | No. CV-23-00495-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Pending before the Court are the Motions to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Maricopa County (Doc. 49) and the City of Phoenix (Doc. 50). The Court heard oral argument on the motions to dismiss the Second Amended Complaint on February 9, 2024. In the resolution of this matter, the Court reviewed the motion papers and determined oral argument would not assist. For the reasons below, the Court grants both Motions to Dismiss.

## BACKGROUND

Pursuant to the facts pleaded in the Third Amended Complaint, which the Court accepts as true, a car struck and killed Plaintiff's sister, Dorothy Dale-Chambers, as she crossed a street in Phoenix, Arizona on April 26, 2022. (Doc. 48 at 4). Dale-Chambers was unhoused, and she was killed in an area with many other similarly unhoused persons. (*Id.* at 5-6). Plaintiff alleges that the intersection of the accident did not have a traffic signal or pedestrian lights, which the City's Key Corridors Master Plan called for two years prior. (*Id*. at 5). Plaintiff further alleges that the same Master Plan considered the intersection of

the accident to be a "high-density crash zone." (*Id.* at 4).

Following the accident, Plaintiff alleges that emergency medical personnel transported Dale-Chambers to Valleywise Medical Center, where she was pronounced dead. (*Id.* at 4). At the Medical Center, a Victims Crime Unit Detective identified Dale-Chambers using a fingerprint scan and a search through known databases. (*Id.*). Dale-Chambers was then transported to the Maricopa County Examiner's office, where her identification was confirmed. (*Id.*). Plaintiff alleges that Defendants knew who the family members and associates of Dale-Chambers were when the City of Phoenix police ran Dale-Chambers' fingerprints but that Defendants did not notify Plaintiff, who was next of kin, within a reasonable time frame. (*Id.* at 6).

Plaintiff brings three federal, civil-rights claims. In Count One, Plaintiff alleges she is a "member of a suspect class" and that Defendants discriminated against her and her sister due to their race "by failing to notify her that her sister had been killed within a reasonable time frame." (Doc. 48 at 5-6). In Count Two, Plaintiff makes a class-of-one equal protection claim and alleges that Defendants "engaged in disparate treatment directed at [Plaintiff] based on the fact [that] she was the known family member of a homeless person." (Doc. 48 at 8). Finally, in Count Three, Plaintiff alleges Defendants intentionally violated her "procedural due process rights" and right of sepulcher by failing to promptly notify Plaintiff of the whereabouts and condition of her sister's body. (Doc. 48 at 9). The Court reads Plaintiff's allegation as a *Monell* claim because she asserts that the violation of her rights was "the result of an official policy." (*Id.*). Each claim will be addressed in turn below.

In addition to the federal, civil-rights claims, Plaintiff brings a state law negligence claim. (Doc. 48 at 10). The Court will not address the merits of that fourth claim, because, as detailed in this Order, the Court grants Defendants' Motions to Dismiss for the three federal claims. The Court will not exercise supplemental jurisdiction over the remaining state law claim. *See Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012) (A "district court retains discretion over whether to exercise supplemental jurisdiction over

1  state law claims even after all federal claims are dismissed.").

2  <center>**DISCUSSION**</center>

3  **I.     Legal Standard**

4  Defendants may prevail on their motions to dismiss if Plaintiff "fail[ed] to state a

5  claim upon which relief can be granted." *Whitaker v. Tesla Motors, Inc*., 985 F.3d 1173,

6  1175 (9th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  Plaintiff's complaint must "contain

7  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

8  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

9  550 U.S. 544, 570 (2007)).  Even if the complaint has a cognizable legal claim, the factual

10  content must "allow[] the court to draw the reasonable inference that the defendant is liable

11  for the misconduct alleged."  *Id*.; *see also Robertson v. Dean Witter Reynolds, Inc*, 749

12  F.2d 530, 534 (9th Cir. 1984) ("A complaint may be dismissed as a matter of law for one

13  of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a

14  cognizable legal claim.").

15  **II.     § 1983 Claims**

16  The Equal Protection Clause of the Fourteenth Amendment provides that "no State

17  shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S.

18  CONST. amend. XIV, § 1.  "To establish an Equal Protection claim, [P]laintiff[] must

19  demonstrate that a class that is similarly situated has been treated disparately." *Olson v.*

20  *California*, 104 F.4th 66, 77 (9th Cir. 2024) (internal citation omitted).  "The first step in

21  an equal protection analysis is to identify the defendants' classification of groups."

22  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (internal citation

23  omitted).   Plaintiff may accomplish this by showing "that the law is applied in a

24  discriminatory manner or imposes different burdens on different classes of people."  *Id*.

25  **A. Count One**

26  "[T] he Civil Rights Act, 42 U.S.C. § 1983 . . . does not provide a cause of action

27  on behalf of a deceased based upon alleged violation of the deceased's civil rights which

28  occurred after h[er] death."  *Guyton v. Phillips,* 606 F.2d 248, 250 (9th Cir. 1979).  Thus,

<center>- 3 -</center>

as the Court has previously explained, no such claims can be brought on behalf of the decedent or her estate, and Plaintiff seeks, apparently to assert only her own civil rights claims. The Court thus construes Count One to assert Plaintiff's right to equal protection only.

Count One may be read to assert both disparate treatment and/or disparate impact claims against the Defendants. Regardless, "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Accordingly, an equal protection claim requires that Defendant allege plausible facts demonstrating intentional discrimination resulting in disparate treatment and/or disparate impact. There is no distinction in this regard between a disparate treatment and disparate impact claim. In the disparate treatment context, "[s]tating a claim for disparate treatment requires pleading facts giving rise to an inference that [the government entity] *intended* to discriminate against the protected group." *Liu v. Uber Tech. Inc.,* 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021) (emphasis in original); *see also Lam v. City and Cnty. of S.F.*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012) ("In the equal protection context, just as in a Title VII disparate treatment case, the fundamental question revolves around the plaintiff's ability to demonstrate a discriminatory 'purpose' or intent.") (citing *Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 n.1 (1993) (applying Title VII law regarding employment discrimination to § 1983 claims)). In a disparate impact context, "plaintiffs must show that actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." *The Comm. Concerning Cnty. Improvement v. City of Modesto,* 583 F.3d 690, 703 (9th Cir. 2009). There are no allegations in Plaintiff's Third Amended Complaint that plausibly suggest that Defendants intended to discriminate against Plaintiff.

While "'gross statistical disparities' alone may constitute proof of a practice of discrimination and relieve plaintiffs from their burden of showing intent to discriminate . . . it is the rare case where impact alone will be sufficient to invalidate a challenged

government action." *Id.*  But, Plaintiff alleges no minimally adequate "gross disparities" here.  Plaintiff has alleged that the unhoused are disproportionality black nationwide, but, as the Court has already noted, the homeless are not a suspect class under the constitution. *Sanchez v. City of Fresno,* 914 F.Supp.2d 1079, 1108 (E.D. Cal. 2012) ("No court has ever held the homeless to be a suspect class under this standard.").  Nor does Plaintiff allege that she is homeless.  Thus, the racial makeup of the homeless in Maricopa County is not relevant to Plaintiff's equal protection claim.  If it were, Plaintiff merely alleges that a "significant percentage" are black.  This, however, is not an allegation of a "gross statistical disparity" and again, homelessness is not a protected class for purposes of equal protection claims.

Nor are there any facts alleged in Plaintiff's Third Amended Complaint which support Plaintiff's unsupported allegation that she was discriminated against *because she is black.*  The policy challenged by Plaintiff is a "policy, statement, ordinance, regulation, or decision by Defendants to not take necessary steps to correctly notify the family member of homeless persons" within Maricopa County of the death of such persons.  (Doc. 48 at 36).  But, there is no allegation that the policy itself distinguishes whom it will timely notify based on race.

Plaintiff thus pleads no plausible facts, other than a bare allegation, to suggest that the Defendants have intentionally discriminated against her or her family members because they are black.  Bare assertions of racial discrimination are insufficient to state a plausible claim." *See Ashcroft*, 556 U.S. at 680-81 ("Plead[ing] that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement 'as a matter of policy, solely on account of his religion, race, and/or national origin' . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim.") (quoting *Twombly*, 550 U.S. at 555)).  These "bare assertions" are not entitled to the assumption of truth.  *See id.*  Thus, Plaintiff, after three tries, does not state an equal protection claim.

**B.  Count Two**

In Count Two, Plaintiff alleges that she is "a member of a class of one and thereby entitled to equal protection and treatment by government officials as other similarly situated persons."  (Doc. 48 at 7).  "An equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"  *Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 601 (2008).  But, even in such claims, the Plaintiff must show that defendants (1) intentionally (2) treated plaintiff differently from others similarly situated and (3) without a rational basis.  *Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

As is the case for Plaintiff's equal protection claim, Plaintiff offers no allegations that plausibly suggest that the Defendants' intentionally targeted her for untimely notification of her sister's death.  For this reason alone, Plaintiff's "class of one" claim fails.

But Plaintiff also tries to spin a "class of one" claim into a claim for a class of relatives of homeless people when the Courts have declined to extend the protections of a suspect class to homeless people themselves.  Logically, if she was asserting that she was a class of one, she would compare the timeliness with which she received notice of her sister's death, with the timeliness that relatives of other homeless decedents received of their family member's death.  But, this is not what she does.  Rather, the Third Amended Complaint, under the rubric of a "class of one" claim, attempts to sue on behalf of a numerous class of relatives of the homeless and claim that they are entitled to the same timeliness of notification of those victims who are killed as a result of criminal acts.  "While homeless persons are not a part of a suspect class, their family members are still entitled to equal protection of the law as similarly situated individuals, in this case individuals who have family members discovered by the police to have been killed during a crime."  Doc. 48 at ¶ 46.

"[A] class-of-one plaintiff must be similarly situated to the proposed comparator in

all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022). Plaintiff does not allege that she has been treated differently than others who have received notice of the decease of their unhoused relatives. Rather she claims she is "similarly situated [to] . . . individuals who have family members discovered by the police to have been killed during a crime." (Doc. 48 at 8). Yet, Plaintiff fails to provide any facts showing how the comparators are similarly situated. (*Id*.); *See Evans Creek*, No. 21-16620, 2022 WL 14955145, at *2 (9th Cir. Oct. 26, 2022) ("Because [plaintiff's] complaint provides virtually none of the material facts on which this determination must be made, it falls far short of plausibly pleading the demanding 'similarly situated' requirement articulated in *SmileDirectClub*."). Count Two of the Third Amended Complaint alleges insufficient facts to plausibly suggest that Defendants intended to discriminate against Plaintiff, or that she was in fact treated differently than others who received notification of the decease of a homeless relative from the Defendants. She does not even allege the time that it took for her to receive such notification, as would be necessary to demonstrate that the proposed comparators are notified sooner. Nor does Plaintiff offer facts suggesting that she should be compared, not to others who received notice of the decease of a homeless relative, but to others who received notice of the decease of a victim of a crime. Plaintiff makes the conclusory allegation that Defendants "intentionally treated [her] differently," but the Complaint lacks any facts to support this assertion. (Doc. 48 at 8).

Accordingly, because Plaintiff has not plausibly pleaded intentional discrimination, actual discrimination or "the similarly situated element of [her] class-of-one claim, [her] equal-protection claim as a whole fails." *See Evans Creek*, 2022 WL 14955145, at *2.

### C. Count Three

In Count Three, Plaintiff makes two claims. First, Plaintiff alleges Defendants violated her "procedural due process rights by failing to comply with the requirements outlined" in two Arizona statutes. (Doc. 48 at 9). Second, Plaintiff alleges Defendants violated Plaintiff's right of sepulcher, as "the result of an official policy"—a *Monell* Claim. (Doc. 48 at 9). Neither claim is supported by factual content that "allows the court to draw

1    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*,

2    556 U.S. at 678.

3                    **i.      Procedural Due Process Claim**

4            A Section 1983 claim based upon procedural due process has three elements: "(1) a

5    liberty or property interest protected by the Constitution; (2) a deprivation of the interest

6    by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995

7    F.2d 898, 904 (9th Cir. 1993).

8            Plaintiff alleges that she holds a "quasi-property right to the body of the Decedent"

9    and that Defendants "intentionally violated Plaintiff's procedural due process rights by

10   failing to comply with the requirements outlined in A.R.S. § 11-593 and A.R.S. § 11-

11   597.01." (Doc. 48 at 8-9).  These allegations fail to state a claim upon which relief may be

12   granted.  Plaintiff did not present any factual allegations to support her assertion that

13   Defendants "failed to comply with the [statutory] requirements." (Doc. 48 at 9).  A.R.S. §

14   11-593 requires officers to promptly notify the county medical examiner, make or cause to

15   be made an investigation of the facts surrounding the death, and report the results to the

16   medical examiner.  A.R.S. § 11-593(C).  As Defendants point out, the statute only requires

17   a peace officer to notify the county medical examiner of a death, which Plaintiff, in her

18   Complaint, admits occurred.  (Doc. 48 at 4).  Plaintiff alleges no additional facts that

19   suggest Defendants violated the statute.  The other statute Plaintiff alleges Defendants

20   failed to comply with, A.R.S. § 11-597.01, concerns the medical examiner's identification

21   of unidentified decedents.  Plaintiff did not make any allegations about the relevance of

22   this statute given that Plaintiff, in her Complaint, acknowledged that her sister was an

23   identified decedent.  (Doc. 48 at 4).

24           Even if the complaint has a cognizable legal claim, the factual content must "allow[]

25   the court to draw the reasonable inference that the defendant is liable for the misconduct

26   alleged." *Ashcroft*, 556 U.S. at 678 (2009).  Because Plaintiff did not plead facts that would

27   enable the Court to draw a reasonable inference that there was misconduct, let alone that

28   Defendants are liable, the Court dismisses this claim.

### ii. *Monell* Claim

A government entity may be held liable under 42 U.S.C. § 1983 if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Plaintiff alleges that Defendants' "violation of Plaintiff's right of sepulcher was the result of an official policy, statement, ordinance, regulation, or decision by Defendants." (Doc. 48 at 9). To establish liability under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotations omitted). Plaintiff does not allege any facts that indicate that her alleged injuries were caused by Defendant City of Phoenix or Defendant Maricopa County policies, beyond her conclusory statement that the alleged violation was "the result of an official policy." (Doc. 48 at 9). This is insufficient, and therefore, the *Monell* claim against Defendants is dismissed.

## CONCLUSION

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As such, "rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotations omitted). However, courts may dismiss without leave where "amendment would be futile." *Id*. at 188. Here, Plaintiff's Third Amended Complaint repeated many of the same deficiencies as the previous complaints. As such, the Court is exercising its discretion to dismiss with prejudice. *See Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (dismissing a case with prejudice where the second complaint "was equally as verbose, confusing and conclusory as the initial complaint").

Accordingly,

**IT IS ORDERED** granting Defendants' Motions to Dismiss (Docs. 49, 50).

**IT IS FURTHER ORDERED** that Plaintiff's Third Amended Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this matter.

Dated this 18th day of October, 2024.

G. Murray Snow
Chief United States District Judge